J&J Chemical conducted Gitto Global's affairs through a "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. § 1961(5).

93.    During the relevant period described herein, Gary Gitto, Frank Miller, John Tersigni, Kathleen Carland, Janice Chaisson, Helen Kozak, William Deakin, and J&J Chemical were "persons" within the meaning of RICO, 18 U.S.C. § 1961(3).

94.    As alleged above, Gary Gitto, Frank Miller, John Tersigni, Kathleen Carland, Janice Chaisson, Helen Kozak, William Deakin, and J&J Chemical engaged in fraudulent schemes and artifices for the purpose of obtaining funds owned by, or under the custody or control of LaSalle by means of false pretenses and representations.

95.    LaSalle is owned by a financial institution insured by the FDIC.

**Bank Fraud/Check Kite Scheme**

96.    In the course of and in furtherance of their fraudulent schemes, Gary Gitto, John Tersigni, Janice Chaisson, Helen Kozak, William Deakin, and J&J Chemical used, or caused to be used, in connection with conducting the affairs of Gitto Global, a check-kiting scheme as a part of Gitto Global's regular business operations between July 2002 and September 2004.

97.    Between July 2002 and September 15, 2004, John Tersigni knowingly participated in the scheme by regularly signing or allowing his signature to be affixed on checks made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, at the direction of Gary Gitto, Frank Miller and Helen Kozak, for the purpose of obtaining funds from LaSalle under false pretenses and causing those checks to be deposited into the Fleet Blocked Account.

> (a)    John Tersigni signed or allowed his signature to be affixed to hundreds of checks knowing that there was insufficient funds in J&J Chemical's account at Clinton Bank to satisfy the checks and knowing that J&J Chemical did not owe any money to Gitto Global.

(b)     John Tersigni caused these checks to be deposited in the Fleet Blocked Account knowing that the amounts of the checks would be used on borrowing base certificates to represent Gitto Global collections, knowing that the borrowing base certificates would be sent to LaSalle, and knowing that the LaSalle would rely on the funds in the Fleet Blocked Account and the borrowing base certificates in continuing its lending relationship with Gitto Global.

98.     Between July of 2002 and September of 2004, Gary Gitto knowingly participated

in the scheme by directing the check-kiting activities between J&J Chemical's account at Clinton

Bank, the Fleet Blocked Account and the LaSalle Account.

(a)     Gary Gitto regularly directed that checks be made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, knowing that there was insufficient funds in J&J Chemical's account at Clinton Bank to satisfy the checks.

(b)     Gary Gitto on a daily basis, directed the J&J Chemical checks to be deposited in the Blocked Account.

(c)     Gary Gitto directed that the amount of the J&J Chemical deposits be reflected on the borrowing base certificates representing Gitto Global's Collections.

(d)     Gary Gitto regularly directed the transfer of funds from the LaSalle disbursement account, advanced by LaSalle in reliance on the borrowing base certificates and the deposits in the Fleet Blocked Account, (i) to J&J Chemical's account at Clinton Bank, thereby completing the check-kite and (ii) directly to him and companies in which he was doing business.

(e)     Gary Gitto directed the check-kiting scheme continuously for two years for the purpose of obtaining funds from LaSalle under false pretenses.

99.     Between July of 2002 and September of 2004, Frank Miller knowingly

participated in the scheme by directing the check-kiting activities between J&J Chemical's

account at Clinton Bank, the Fleet Blocked Account and the LaSalle Account.

(a)     Frank Miller regularly directed that checks be made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, knowing that there was insufficient funds in J&J Chemical's account at Clinton Bank to satisfy the checks.

(b)  Frank Miller on a daily basis, directed the J&J Chemical checks to be deposited in the Blocked Account.

(c)  Frank Miller directed that the amount of the J&J Chemical deposits be reflected on the borrowing base certificates representing Gitto Global's Collections.

(d)  Frank Miller regularly directed the transfer of funds from the LaSalle disbursement account, advanced by LaSalle in reliance on the borrowing base certificates and the deposits in the Fleet Blocked Account, (i) to J&J Chemical's account at Clinton Bank, thereby completing the check-kite and (ii) directly to him.

(e)  Frank Miller directed the check-kiting scheme continuously for two years for the purpose of obtaining funds from LaSalle under false pretenses.

100.  Between July of 2002 and September of 2004, Helen Kozak knowingly participated in the scheme by directing the check-kiting activities between J&J Chemical's account at Clinton Bank, the Fleet Blocked Account and the LaSalle Account.

(a)  Helen Kozak regularly directed that checks be made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, knowing that there was insufficient funds in J&J Chemical's account at Clinton Bank to satisfy the checks.

(b)  Helen Kozak, on a daily basis, directed the J&J Chemical checks to be deposited in the Blocked Account.

(c)  Helen Kozak directed that the amount of the J&J Chemical deposits be reflected on the borrowing base certificates representing Gitto Global's Collections.

(d)  Helen Kozak directed the check-kiting scheme continuously for two years for the purpose of obtaining funds from LaSalle under false pretenses.

101.  Between July of 2002 and September of 2004, William Deakin knowingly participated in the scheme by directing the check-kiting activities between J&J Chemical's account at Clinton Bank, the Fleet Blocked Account and the LaSalle Account, at the direction of Frank Miller.

(a)  William Deakin regularly directed that checks be made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, knowing

- 23 -

that there was insufficient funds in J&J Chemical's account at Clinton Bank to satisfy the checks.

(b)    William Deakin, on a daily basis, directed the J&J Chemical checks to be deposited in the Blocked Account.

(c)    William Deakin ensured that the amount of the J&J Chemical deposits were reflected on the borrowing base certificates representing Gitto Global's Collections.

102.    Between July of 2002 and September of 2004, Janice Chaisson knowingly participated in the scheme by affixing the signature of John Tersigni on the J&J Chemical checks and keeping track of the fictitious sales and collections of Gitto Global.

(a)    At the direction of William Deakin, Frank Miller and Helen Kozak, Janice Chaisson regularly created checks made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, knowing that the checks were not for the payment of goods.

(b)    At the direction of William Deakin, Frank Miller and Helen Kozak, Janice Chaisson regularly created checks made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, knowing that there was insufficient funds in J&J Chemical's account at Clinton Bank to satisfy the checks.

(c)    At the direction of William Deakin, Frank Miller and Helen Kozak, Janice Chaisson regularly affixed the signature of John Tersigni, using a signature stamp, to the checks made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, knowing the checks were being used to further a check-kiting scheme.

(d)    Janice Chaisson kept track of the check-kiting scheme by keeping two sets of Accounts Receivable Aging Details.  One set contained fictitious sales and receipts, including the J&J Chemical checks.   The second set contained the actual sales and receipts.

103.    Between July of 2002 and September of 2004, J&J Chemical knowingly participated in the scheme by (i) allowing its checks to be deposited in the Fleet account, while knowing these checks were not for payment of goods and (ii) allowing Gitto Global checks payable to J&J Chemical to be deposited in its account at Clinton Bank, knowing the checks were being used to further a check-kiting scheme.

- 24 -

104.    Each of the aforesaid activities was made or caused to be made by Gary Gitto, John Tersigni, Frank Miller, Helen Kozak, William Deakin, Janice Chaisson and J&J Chemical as part of and in furtherance of the scheme of Gitto Global to defraud LaSalle.

105.    Each of the aforesaid violations by Gary Gitto, John Tersigni, Frank Miller, Helen Kozak, William Deakin, Janice Chaisson and J&J Chemical of the bank fraud statute, 18 U.S.C. §§ 1344(2), constitute an instance of racketeering activity as defined in 18 U.S.C. § 1761(1).

**Bank Fraud/False Borrowing Base Certificates**

106.    In the course of and in furtherance of their fraudulent schemes, Gary Gitto, Frank Miller, William Deakin and Janice Chaisson used, or caused to be used, in connection with conducting the affairs of Gitto Global, falsified borrowing base certificates between July 2002 and September 2004.

107.    Frank Miller knowingly participated in the scheme by providing false information to LaSalle, for the purpose of obtaining funds from LaSalle under false pretenses. Between July 25, 2002 and January 16, 2004, borrowing base certificates with Frank Miller's signature affixed were sent to LaSalle on a daily basis seeking fund advances, while Frank Miller knew that the sales information contained therein was false, that the inventory information contained therein was false, that the collections information contained therein was false and that LaSalle would rely on the information contained therein in advancing funds under the LaSalle revolving loan.

108.    Janice Chaisson knowingly participated in the scheme by providing false information to LaSalle for the purpose of obtaining funds from LaSalle under false pretenses. Between January 17, 2004 and September 15, 2004, Janice Chaisson at the direction of Gary Gitto sent borrowing base certificates to LaSalle on a daily basis seeking fund advances, while Janice Chaisson knew that the sales information contained therein was false, that the collections

- 25 -

information contained therein was false and that LaSalle would rely on the information contained therein in advancing funds under the LaSalle revolving loan.

109.    Gary Gitto, William Deakin and Helen Kozak knowingly participated in the scheme by directing Janice Chaisson to provide false information to LaSalle for the purpose of obtaining funds from LaSalle under false pretenses. Between January 17, 2004 and September 15, 2004, Gary Gitto, William Deakin and Helen Kozak knew that the daily borrowing base certificates contained false sales information and collection information and LaSalle would rely on this information to advance funds under the LaSalle revolving loan.

110.    Each of the aforesaid activities, as well as others, was made or caused to be made by Gary Gitto, Frank Miller, Janice Chaisson and William Deakin as part of and in furtherance of the scheme of Gitto Global to defraud LaSalle.

111.    Each of the aforesaid violations by Gary Gitto, Frank Miller, Helen Kozak, Janice Chaisson, and William Deakin of the bank fraud statute, 18 U.S.C. §§ 1344(2), constitute an instance of racketeering activity as defined in 18 U.S.C. § 1761(1).

**Mail/Wire Fraud**

112.    In the course of and in furtherance of their fraudulent schemes, Frank Miller, John Tersigni, and Kathleen Carland used, or caused to be used, in connection with conducting the affairs of Gitto Global, mail delivered by the United States Postal Service two or more times, including, the two requests for confirmation sent on July 2, 2002 by Frank Miller, the five requests for confirmation sent on January 15, 2004 by Frank Miller, the confirmation sent on February 3, 2004 by Kathleen Carland and the confirmation sent on January 23, 2004 by John Tersigni.

113.    In the course of and in furtherance of their fraudulent schemes, Frank Miller, and Janice Chaisson also communicated, or caused communications to be made, in connection with

- 26 -

conducting the affairs of the enterprises, by wire and interstate commerce two or more times, including, the facsimile sent on July 25, 2002 from Louis Pellegrine, at the direction of Frank Miller, to LaSalle containing the July 11, 2002 confirmations of Zebulon and Hitachi; the facsimile sent on February 12, 2004 from Louis Pellegrine, at the direction of Frank Miller, to LaSalle containing the January and February confirmations of J-Tan, Hemisphere, Zebulon, Hitachi and CCC; and the daily borrowing base certificates sent via e-mail by Janice Chaisson from January 17, 2004 to September 15, 2004 in furtherance of their efforts to defraud LaSalle.

114.    Frank Miller knowingly participated in the scheme by using the mail, wire and telephone communications to further the fraud by sending requests for fictitious confirmations of invoices by mail using the United States Postal Service to J-Tan, Hitachi, Velco, Hemisphere and Zebulon to give the appearance of legitimacy and to lessen the appearance of deception. Frank Miller sent these requests for fictitious confirmations at the request or under the direction of Gary Gitto, knowing that the companies had not purchased any goods from Gitto Global, knowing the invoices prepared by Gitto Global by or at the direction of Frank Miller, Gary Gitto or Helen Kozak were false, knowing that none of the companies owed money to Gitto Global, knowing that the fictitious confirmations would be sent to LaSalle, and knowing that LaSalle would rely on the information contained therein in advancing funds under the LaSalle revolving loan.

115.    Frank Miller and Gary Gitto knowingly participated in the scheme using the mail, wire and telephone communications to further the fraud by directing Louis Pellegrine to send confirmations to LaSalle by facsimile transmission on July 25, 2002 and to LaSalle by facsimile transmission in February 2004, knowing that the confirmations were false, that the companies had not purchased any goods from Gitto Global, knowing the invoices prepared by Gitto Global

- 27 -

by or at the direction of Frank Miller, Gary Gitto or Helen Kozak were false, knowing that none of the companies owed money to Gitto Global and knowing that LaSalle would rely on the information contained therein in advancing funds under the LaSalle revolving loan.

116.    Kathleen Carland knowingly participated in the scheme by using the mail, wire and telephone communications to further the fraud by sending a fictitious confirmation of invoices by mail using the United States Postal Service Gitto Global confirming that Hemisphere owed $2,415,032.35 to Gitto Global as of December 31, 2003 in order to give the appearance of legitimacy and to lessen the appearance of deception. Kathleen Carland sent the fictitious confirmation knowing that Hemisphere had not purchased any goods from Gitto Global, knowing the invoices prepared by Gitto Global by or at the direction of Frank Miller, Gary Gitto or Helen Kozak were false, knowing that Hemisphere did not owe any money to Gitto Global, and knowing that LaSalle would rely on the information contained therein in advancing funds under the LaSalle revolving loan.

117.    John Tersigni knowingly participated in the scheme by using the mail, wire and telephone communications to further the fraud by sending a fictitious confirmation of invoices by mail using the United States Postal Service Gitto Global confirming that J-Tan owed $3,115,811.10 to Gitto Global as of December 31, 2003 in order to give the appearance of legitimacy and to lessen the appearance of deception. John Tersigni sent the fictitious confirmation knowing that J-Tan had not purchased any goods from Gitto Global, knowing the invoices prepared by Gitto Global by or at the direction of Frank Miller, Gary Gitto or Helen Kozak were false, knowing that J-Tan did not owe any money to Gitto Global, and knowing that LaSalle would rely on the information contained therein in advancing funds under the LaSalle revolving loan.

270381.1 042314-34311

118.    Janice Chaisson knowingly participated in the scheme by using the mail, wire and telephone communications to further the fraud by sending borrowing base certificates seeking fund advances to LaSalle by email on a daily basis between January 17, 2004 and September 15, 2004 knowing that the sales information contained therein was false, knowing that the collections information contained therein was false and knowing that LaSalle would rely on the information contained therein in advancing funds under the LaSalle revolving loan.

119.    Each of the aforesaid communications, as well as others, was made or caused to be made by Frank Miller, John Tersigni, Janice Chaisson and Kathleen Carland as part of and in furtherance of the scheme of Gitto Global to defraud LaSalle.

120.    Each of the aforesaid violations by Frank Miller, John Tersigni, Janice Chaisson and Kathleen Carland of the mail and wire fraud statutes, 11 U.S.C. §§ 1341 and 1343, constitute an instance of racketeering activity as defined in 18 U.S.C. § 1761(1).

121.    The acts of racketeering activity performed, engaged in, and committed by Gary Gitto, Frank Miller, John Tersigni, Helen Kozak, Kathleen Carland, Janice Chaisson, William Deakin and J&J Chemical number two or more, and have caused substantial injury to LaSalle and others. As a result, said racketeering activity constitutes a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

122.    Gary Gitto, Frank Miller, John Tersigni, Helen Kozak, Kathleen Carland, Janice Chaisson William Deakin and J&J Chemical conducted and participated, directly or indirectly, in the conduct of Gitto Global's affairs through the above-described pattern of racketeering, in violation of 18 U.S.C. § 1962(c).

123.    As evidenced by their acts and omissions set forth above, Gary Gitto, Frank Miller, John Tersigni, Helen Kozak, Kathleen Carland, Janice Chaisson, William Deakin and

- 29 -

J&J Chemical agreed and conspired to participate in conduct of an enterprise's affairs through a pattern of activity, in violation of 18 U.S.C. § 1962(d).

124.    By reason of the foregoing violations of 18 U.S.C. § 1962, LaSalle has been damaged in an amount in excess of $30,000,000.00, before trebling, the exact amount of which shall be proved at trial.

WHEREFORE, Plaintiff, LaSalle Business Credit, LLC, prays for the following relief with regard to Count I against Defendants, Gary C. Gitto, Frank Miller, John D. Tersigni, Helen Kozak, Kathleen M. Carland, Janice Chaisson, William Deakin and Kingsdale Corp. d/b/a J&J Chemical Distributors:

A.    Compensatory damages in an amount exceeding $30,000,000.00, together with interest thereon;

B.    Treble damages for violation of RICO, together with interest thereon;

C.    Punitive damages;

D.    An award of attorneys' fees;

E.    An award of costs and disbursement herein; and

F.    Such and further relief as may be just and equitable under the circumstances.

## COUNT II
## BANK FRAUD
(Against Gary C. Gitto, Frank Miller, John D. Tersigni,
Kathleen M. Carland, William Deakin, Janice Chaisson,
Helen Kozak, and Kingsdale Corp. d/b/a J&J Chemical Distributors)

125.    LaSalle restates and incorporates by reference the allegations contained in Paragraphs 1 through 90 as the allegations of Paragraph 125.

126.    LaSalle is owned by a financial institution insured by the FDIC.

127.    Beginning in July of 2002, and continuing through September of 2004, Gary Gitto, Frank Miller, John Tersigni, Kathleen Carland, Janice Chaisson, Helen Kozak, William Deakin and J&J Chemical knowingly made false representations regarding Gitto Global's finances to LaSalle with the purpose of inducing LaSalle to enter into a Loan and Security Agreement with Gitto Global and to advance funds under the LaSalle revolving loan.

128.    Between July of 2002, and September of 2004, Gary Gitto knowingly and falsely represented or caused to be represented to LaSalle information regarding Gitto Global's finances for the purpose of inducing LaSalle to enter into a Loan and Security Agreement with Gitto Global and to advance funds under the LaSalle revolving loan as follows:

(a)    Gary Gitto directed a check-kiting scheme between J&J Chemical's account at Clinton Bank, the Fleet Blocked Account and the LaSalle Account for two years for the purpose of obtaining funds from LaSalle under false pretenses.

(b)    Gary Gitto regularly directed that checks be made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, knowing that there was insufficient funds in J&J Chemical's account at Clinton Bank to satisfy the checks.

(c)    Gary Gitto, on a daily basis, directed the J&J Chemical checks to be deposited in the Blocked Account.

(d)    Gary Gitto directed that the amount of the J&J Chemical deposits be reflected on the borrowing base certificates representing Gitto Global's collections knowing that the deposits did not, in fact, represent collections.

(e)    Gary Gitto regularly directed the transfer of funds from the LaSalle disbursement account, advanced by LaSalle in reliance on the borrowing base certificates and the deposits in the Fleet Blocked Account, to J&J Chemical's account at Clinton Bank, thereby completing the check kite.

(f)    Gary Gitto regularly directed that funds obtained by false pretenses from LaSalle be paid to him directly or companies in which he was doing business.

(g)    Gary Gitto directed Louis Pellegrine to send fictitious confirmations to LaSalle knowing that the companies contained therein had not purchased any goods from Gitto Global, knowing the invoices prepared by Gitto

Global, at the direction of Frank Miller or Gary Gitto were false, knowing that none of the companies owed money to Gitto Global and knowing that LaSalle would rely on the information contained therein in auditing the financial situation of Gitto Global.

129. Between July of 2002 and September of 2004, Frank Miller knowingly and falsely represented or caused to be represented to LaSalle information regarding Gitto Global's finances for the purpose of inducing LaSalle to enter into a Loan and Security Agreement with Gitto Global and to advance funds under the LaSalle revolving loan as follows:

(a) Frank Miller directed check-kiting activities between J&J Chemical's account at Clinton Bank, the Fleet Blocked Account and the LaSalle Account. Frank Miller directed the check-kiting activities continuously for two years for the purpose of obtaining funds from LaSalle under false pretenses.

(b) Frank Miller regularly directed that checks be made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, knowing that there was insufficient funds in J&J Chemical's account at Clinton Bank to satisfy the checks.

(c) Frank Miller, on a daily basis, directed the J&J Chemical checks to be deposited in the Blocked Account.

(d) Frank Miller directed that the amount of the J&J Chemical deposits be reflected on the borrowing base certificates representing Gitto Global's collections knowing that the deposits did not, in fact, represent collections.

(e) Frank Miller regularly directed the transfer of funds from the LaSalle disbursement account, advanced by LaSalle in reliance on the borrowing base certificates and the deposits in the Fleet Blocked Account, to J&J Chemical's account at Clinton Bank, thereby completing the check kite.

(f) Frank Miller regularly directed that funds obtained from LaSalle by false pretenses be paid to him directly.

(g) Frank Miller sent borrowing base certificates to LaSalle on a daily basis from July 25, 2002 to January 16, 2004 seeking fund advances, while knowing that the sales information contained therein was false, knowing the that the inventory information contained therein was false, knowing that the collections information contained therein was false and knowing that LaSalle would rely on the information contained therein in auditing the financial situation of Gitto Global.

- 32 -

(h)    Frank Miller knowingly sent requests for fictitious confirmations of invoices to J-Tan, Hitachi, Velco, Hemisphere and Zebulon, while knowing that LaSalle would rely on the confirmations in determining whether to advance funds to Gitto Global.

(i)    Frank Miller sent these requests for fictitious confirmations, while knowing that the companies had not purchased any goods from Gitto Global, knowing the invoices prepared by Gitto Global at the direction of Frank Miller or Gary Gitto were false, knowing that none of the companies owed money to Gitto Global, knowing that the fictitious confirmations would be sent to LaSalle, and knowing that LaSalle would rely on the information contained therein in auditing the financial situation of Gitto Global.

(j)    Frank Miller directed Louis Pellegrine to send fictitious confirmations to LaSalle knowing that the companies contained therein had not purchased any goods from Gitto Global, knowing the invoices prepared by Gitto Global, at the direction of Frank Miller or Gary Gitto were false, knowing that none of the companies owed money to Gitto Global and knowing that LaSalle would rely on the information contained therein in auditing the financial situation of Gitto Global.

130.    Between July 2002 and September 15, 2004, John Tersigni knowingly and falsely represented to LaSalle information regarding Gitto Global's finances for the purpose of inducing LaSalle to enter into a Loan and Security Agreement with Gitto Global and to advance funds under the LaSalle revolving loan as follows:

(a)    John Tersigni on behalf of J&J Chemical signed or allowed his signature to be affixed to hundreds of checks purportedly as payment for goods, while knowing that there was insufficient funds in J&J Chemical's account at Clinton Bank to satisfy the checks and knowing that J&J Chemical did not purchase any goods from Gitto Global.

(b)    John Tersigni caused these checks to be deposited in the Fleet Blocked Account knowing that the amounts of the checks would be used on borrowing base certificates to represent Gitto Global collections, knowing that the borrowing base certificates would be sent to LaSalle, knowing that LaSalle would rely on the funds in the Fleet Blocked Account and in the borrowing base certificates in continuing its lending relationship with Gitto Global.

(c)    John Tersigni knowingly sent a fictitious confirmation of invoices confirming that J-Tan owed $3,115,811.10 to Gitto Global as of December

31, 2003 in order to give the appearance of legitimacy and to lessen the appearance of deception.

(d)    John Tersigni sent the fictitious confirmation knowing that J-Tan had not purchased any goods from Gitto Global, knowing the invoices prepared by Gitto Global at the direction of Frank Miller or Gary Gitto were false, knowing that J-Tan did not owe any money to Gitto Global, and knowing that LaSalle would rely on the information contained therein in auditing the financial situation of Gitto Global.

131.    Kathleen Carland knowingly and falsely represented to LaSalle information regarding Gitto Global's finances for the purpose of inducing LaSalle to enter into a Loan and Security Agreement with Gitto Global and to advance funds under the LaSalle revolving loan as follows:

(a)    Kathleen Carland sent a letter to Louis Pellegrine confirming that Hemisphere owed $2,415,032.35 to Gitto Global as of December 31, 2003 in order to give the appearance of legitimacy and to lessen the appearance of deception.

(b)    Kathleen Carland sent the fictitious confirmation knowing that Hemisphere had not purchased any goods from Gitto Global, knowing the invoices prepared by Gitto Global at the direction of Frank Miller or Gary Gitto were false, knowing that Hemisphere did not owe any money to Gitto Global, and knowing that LaSalle would rely on the information contained therein in auditing the financial situation of Gitto Global.

132.    Between July of 2002 and September of 2004, Janice Chaisson knowingly and falsely represented to LaSalle information regarding Gitto Global's finances for the purpose of inducing LaSalle to enter into a Loan and Security Agreement with Gitto Global and to advance funds under the LaSalle revolving loan as follows:

(a)    Janice Chaisson regularly created checks made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, knowing that the checks were not for the payment of goods.

(b)    Janice Chaisson regularly created checks made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, knowing that there was insufficient funds in J&J Chemical's account at Clinton Bank to satisfy the checks.

- 34 -

(c)    Janice Chaisson regularly affixed the signature of John Tersigni, using a signature stamp, to the checks made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, knowing the checks were being used to further a check-kiting scheme.

(d)    Janice Chaisson kept track of the check-kiting scheme by keeping two sets of Accounts Receivable Aging Details. One set contained fictitious sales and receipts, including the J&J Chemical checks. The second set contained the actual sales and receipts.

(e)    Between January 17, 2004 and September 15, 2004, Janice Chaisson sent borrowing base certificates to LaSalle on a daily basis seeking fund advances, while knowing that the sales information contained therein was false, knowing the that the inventory information contained therein was false, knowing that the collections information contained therein was false and knowing that LaSalle would rely on the information contained therein in continuing its lending relationship with Gitto Global.

133.    Between July of 2002 and September of 2004, Helen Kozak knowingly and falsely represented to LaSalle information regarding Gitto Global's finances for the purpose of inducing LaSalle to enter into a Loan and Security Agreement with Gitto Global and to advance funds under the LaSalle revolving loan as follows:

(a)    Helen Kozak, on a regular basis and under the direction of Frank Miller, created fictitious checks to evidence payments from Hemisphere, Velco, Zebulon, J-Tan, Hitachi and CCC that were never received.

(b)    Helen Kozak, on a regular basis and under the direction of Frank Miller, created fictitious invoices and bills of lading to evidence sales of goods to Hemisphere, Velco, Zebulon, J-Tan, Hitachi and CCC that never occurred.

134.    Between July of 2002 and September of 2004, William Deakin knowingly and falsely represented to LaSalle information regarding Gitto Global's finances for the purpose of inducing LaSalle to enter into a Loan and Security Agreement with Gitto Global and to advance funds under the LaSalle revolving loan as follows:

(a)    William Deakin, under the direction of Frank Miller, directed the check-kiting activities between J&J Chemical's account at Clinton Bank, the Fleet Blocked Account and the LaSalle Account.

(b)   William Deakin regularly directed that checks be made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, knowing that there was insufficient funds in J&J Chemical's account at Clinton Bank to satisfy the checks.

(c)   William Deakin, on a daily basis, directed the J&J Chemical checks to be deposited in the Blocked Account.

(d)   William Deakin ensured that the amount of the J&J Chemical deposits were reflected on the borrowing base certificates representing Gitto Global's Collections.

(e)   William Deakin, on a regular basis, created or caused to be created fictitious checks to evidence payments from Hemisphere, Velco, Zebulon, J-Tan, Hitachi and CCC that were never received.

(f)   William Deakin, on a regular basis, created or caused to be created fictitious invoices to evidence sales of goods to Hemisphere, Velco, Zebulon, J-Tan, Hitachi and CCC that never occurred.

135.   Between July of 2002 and September of 2004, J&J Chemical knowingly participated in the scheme by (i) allowing its checks to be deposited in the Fleet account, while knowing these checks were not for payment of goods and (ii) allowing Gitto Global checks payable to J&J Chemical to be deposited in its account at Clinton Bank, knowing the checks were being used to further a check-kiting scheme.

136.   In reliance on the representations made to LaSalle by Gary Gitto, Frank Miller, Louis Pellegrine, John Tersigni, Kathleen Carland, Janice Chaisson, Helen Kozak, William Deakin and J&J Chemical entered into a Loan and Security Agreement with Gitto Global and LaSalle continued to advance funds to Gitto Global on a regular basis.

137.   Gitto Global has not repaid LaSalle the amount LaSalle loaned to Gitto Global.

138.   As of October 13, 2004, there is due and owing (a) under the LaSalle revolving loan, principal of $18,803,353.61, interest of $34,062.77 and interest continues to accrue at the per diem rate of $2,611.58, (b) under the LaSalle term loan, principal of $833,333.42, interest of

- 36 -

$1,984.39 and interest continues to accrue at the per diem rate of $156.25 and (3) overdraft of $11,890,588.

WHEREFORE, Plaintiff, LaSalle Business Credit, LLC, prays for the following relief with regard to Count II against Defendants, Gary C. Gitto, Frank Miller, John D. Tersigni, Kathleen M. Carland, William Deakin, Janice Chaisson, Helen Kozak, and Kingsdale Corp. d/b/a J&J Chemical Distributors:

    A.    Compensatory damages in an amount exceeding $30,000,000, together with interest thereon;

    B.    Punitive damages;

    C.    An award of attorneys' fees;

    D.    An award of costs and disbursement herein; and

    E.    Such and further relief as may be just and equitable under the circumstances.

**COUNT III**
**USE OF DECEPTIVE TRADE PRACTICES**
**IN VIOLATION OF ALM GL CH. 93 A, §§ 2, 11**
(Against Gary C. Gitto, Frank Miller, John D. Tersigni,
Kathleen M. Carland, William Deakin, Janice Chaisson,
Helen Kozak, and Kingsdale Corp. d/b/a J&J Chemical Distributors)

139.    LaSalle restates and incorporates by reference the allegations contained in Paragraphs 1 through 90 as the allegations of Paragraph 139.

140.    Beginning in July of 2002, and continuing through September of 2004, Gary Gitto, Frank Miller, John Tersigni, Kathleen Carland, Janice Chaisson, Helen Kozak, William Deakin and J&J Chemical used deceptive trade practices, in violation of ALM GL CH. 93 A, §§2, 11, to induce LaSalle to enter into a Loan and Security Agreement with Gitto Global and to advance funds under the LaSalle revolving loan.

- 37 -

141.    LaSalle engages in the conduct of trade and commerce as a lending institution.

142.    Gary Gitto, Frank Miller, John Tersigni, Kathleen Carland, Janice Chaisson, Helen Kozak, William Deakin and J&J Chemical are persons under the Deceptive Trade Practices Act, ALM GL CH. 93 A, §§2, 11.

143.    Gary Gitto, Frank Miller, John Tersigni, Kathleen Carland, Janice Chaisson, Helen Kozak, William Deakin and J&J Chemical were engaged in trade or commerce in that they acted in connection with and to further a commercial loan arrangement between LaSalle and Gitto Global.

144.    Gary Gitto, Frank Miller, John Tersigni, Kathleen Carland, Janice Chaisson, Helen Kozak, William Deakin and J&J Chemical used unfair or deceptive acts or practices declared unlawful under Section 2 of the Deceptive Trade Practices Act.

145.    Between July of 2002, and September of 2004, Gary Gitto knowingly used deceptive acts and practices for the purpose of inducing LaSalle to enter into a Loan and Security Agreement with Gitto Global and to advance funds under the LaSalle revolving loan as follows:

(a)    Gary Gitto directed the check-kiting activities between J&J Chemical's account at Clinton Bank, the Fleet Blocked Account and the LaSalle Account for two years for the purpose of obtaining funds from LaSalle under false pretenses.

(b)    Gary Gitto regularly directed that checks be made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, knowing that there was insufficient funds in J&J Chemical's account at Clinton Bank to satisfy the checks.

(c)    Gary Gitto, on a daily basis, directed the J&J Chemical checks to be deposited in the Blocked Account.

(d)    Gary Gitto directed that the amount of the J&J Chemical deposits be reflected on the borrowing base certificates representing Gitto Global's collections knowing that the deposits did not, in fact, represent collections.

(e)    Gary Gitto regularly directed the transfer of funds from the LaSalle disbursement account, advanced by LaSalle in reliance on the borrowing

- 38 -

base certificates and the deposits in the Fleet Blocked Account, to J&J Chemical's account at Clinton Bank, thereby completing the check kite.

(f)     Gary Gitto regularly directed that funds obtained by false pretenses from LaSalle be paid to him directly or companies in which he was doing business.

(g)     Gary Gitto directed Louis Pellegrine to send fictitious confirmations to LaSalle knowing that the companies contained therein had not purchased any goods from Gitto Global, knowing the invoices prepared by Gitto Global, at the direction of Frank Miller or Gary Gitto were false, knowing that none of the companies owed money to Gitto Global and knowing that LaSalle would rely on the information contained therein in auditing the financial situation of Gitto Global.

146.    Between July of 2002 and September of 2004, Frank Miller knowingly used deceptive acts and practices for the purpose of inducing LaSalle to enter into a Loan and Security Agreement with Gitto Global and to advance funds under the LaSalle revolving loan as follows:

(a)     Frank Miller directed the check-kiting activities between J&J Chemical's account at Clinton Bank, the Fleet Blocked Account and the LaSalle Account.

(b)     Frank Miller regularly directed that checks be made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, knowing that there was insufficient funds in J&J Chemical's account at Clinton Bank to satisfy the checks.

(c)     Frank Miller on a daily basis, directed the J&J Chemical checks to be deposited in the Blocked Account.

(d)     Frank Miller directed that the amount of the J&J Chemical deposits be reflected on the borrowing base certificates representing Gitto Global's collections knowing that the deposits did not, in fact, represent collections.

(e)     Frank Miller regularly directed the transfer of funds from the LaSalle disbursement account, advanced by LaSalle in reliance on the borrowing base certificates and the deposits in the Fleet Blocked Account, to J&J Chemical's account at Clinton Bank, thereby completing the check kite.

(f)     Frank Miller regularly directed that funds obtained from LaSalle by false pretenses be paid to him directly.

(g)     Frank Miller directed the check-kiting scheme continuously for two years for the purpose of obtaining funds from LaSalle under false pretenses.

- 39 -

(h)    Frank Miller sent borrowing base certificates to LaSalle on a daily basis from July 25, 2002 to January 16, 2004 seeking fund advances, while knowing that the sales information contained therein was false, knowing the that the inventory information contained therein was false, knowing that the collections information contained therein was false and knowing that LaSalle would rely on the information contained therein in auditing the financial situation of Gitto Global.

(i)    Frank Miller knowingly sent requests for fictitious confirmations of invoices to J-Tan, Hitachi, Velco, Hemisphere and Zebulon knowing that LaSalle would rely on the confirmations in determining whether to advance funds to Gitto Global.

(j)    Frank Miller sent these requests for fictitious confirmations knowing that the companies had not purchased any goods from Gitto Global, knowing the invoices prepared by Gitto Global at the direction of Frank Miller or Gary Gitto were false, knowing that none of the companies owed money to Gitto Global, knowing that the fictitious confirmations would be sent to LaSalle, and knowing that LaSalle would rely on the information contained therein in auditing the financial situation of Gitto Global.

(k)    Frank Miller directed Louis Pellegrine to send fictitious confirmations to LaSalle knowing that the companies contained therein had not purchased any goods from Gitto Global, knowing the invoices prepared by Gitto Global, at the direction of Frank Miller or Gary Gitto were false, knowing that none of the companies owed money to Gitto Global and knowing that LaSalle would rely on the information contained therein in auditing the financial situation of Gitto Global.

147.    Between July 2002 and September 15, 2004, John Tersigni knowingly used deceptive acts and practices for the purpose of inducing LaSalle to enter into a Loan and Security Agreement with Gitto Global and to advance funds under the LaSalle revolving loan as follows:

(a)    John Tersigni on behalf of J&J Chemical signed or allowed his signature to be affixed to hundreds of checks purportedly as payment for goods, while knowing that there was insufficient funds in J&J Chemical's account at Clinton Bank to satisfy the checks and knowing that J&J Chemical did not purchase any goods from Gitto Global.

(b)    John Tersigni caused these checks to be deposited in the Fleet Blocked Account knowing that the amounts of the checks would be used on borrowing base certificates to represent Gitto Global collections, knowing that the borrowing base certificates would be sent to LaSalle, knowing that LaSalle would rely on the funds in the Fleet Blocked Account and the

borrowing base certificates in continuing its lending relationship with Gitto Global.

(c)     John Tersigni knowingly sent a fictitious confirmation of invoices confirming that J-Tan owed $3,115,811.10 to Gitto Global as of December 31, 2003 in order to give the appearance of legitimacy and to lessen the appearance of deception.

(d)     John Tersigni sent the fictitious confirmation knowing that J-Tan had not purchased any goods from Gitto Global, knowing the invoices prepared by Gitto Global at the direction of Frank Miller or Gary Gitto were false, knowing that J-Tan did not owe any money to Gitto Global, and knowing that LaSalle would rely on the information contained therein in auditing the financial situation of Gitto Global.

148.    Kathleen Carland knowingly used deceptive acts and practices for the purpose of inducing LaSalle to enter into a Loan and Security Agreement with Gitto Global and to advance funds under the LaSalle revolving loan as follows:

(a)     Kathleen Carland sent a letter to Louis Pellegrine confirming that Hemisphere owed $2,415,032.35 to Gitto Global as of December 31, 2003 in order to give the appearance of legitimacy and to lessen the appearance of deception.

(b)     Kathleen Carland sent the fictitious confirmation knowing that Hemisphere had not purchased any goods from Gitto Global, knowing the invoices prepared by Gitto Global at the direction of Frank Miller or Gary Gitto were false, knowing that Hemisphere did not owe any money to Gitto Global, and knowing that LaSalle would rely on the information contained therein in auditing the financial situation of Gitto Global.

149.    Between July of 2002 and September of 2004, Janice Chaisson knowingly used deceptive acts and practices for the purpose of inducing LaSalle to enter into a Loan and Security Agreement with Gitto Global and to advance funds under the LaSalle revolving loan as follows:

(a)     Janice Chaisson regularly created checks made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, knowing that the checks were not for the payment of goods.

(b)     Janice Chaisson regularly created checks made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, knowing that there was insufficient funds in J&J Chemical's account at Clinton Bank to satisfy the checks.