(c)     Janice Chaisson regularly affixed the signature of John Tersigni, using a signature stamp, to the checks made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, knowing the checks were being used to further a check-kiting scheme.

(d)     Janice Chaisson kept track of the check-kiting scheme by keeping two sets of Accounts Receivable Aging Details. One set contained fictitious sales and receipts, including the J&J Chemical checks. The second set contained the actual sales and receipts.

(e)     Between January 17, 2004 and September 15, 2004, Janice Chaisson sent borrowing base certificates to LaSalle on a daily basis seeking fund advances, while knowing that the sales information contained therein was false, knowing the that the inventory information contained therein was false, knowing that the collections information contained therein was false and knowing that LaSalle would rely on the information contained therein in auditing the financial situation of Gitto Global.

150.    Between July of 2002 and September of 2004, Helen Kozak knowingly used deceptive acts and practices for the purpose of inducing LaSalle to enter into a Loan and Security Agreement with Gitto Global and to advance funds under the LaSalle revolving loan as follows:

(a)     Helen Kozak, on a regular basis and under the direction of Frank Miller, created fictitious checks to evidence payments from Hemisphere, Velco, Zebulon, J-Tan, Hitachi and CCC that were never received.

(b)     Helen Kozak, on a regular basis and under the direction of Frank Miller, created fictitious invoices and bills of lading to evidence sales of goods to Hemisphere, Velco, Zebulon, J-Tan, Hitachi and CCC that never occurred.

151.    Between July of 2002 and September of 2004, William Deakin knowingly used deceptive acts and practices for the purpose of inducing LaSalle to enter into a Loan and Security Agreement with Gitto Global and to advance funds under the LaSalle revolving loan as follows:

(a)     William Deakin, under the direction of Frank Miller, directed the check-kiting activities between J&J Chemical's account at Clinton Bank, the Fleet Blocked Account and the LaSalle Account.

(b)     William Deakin regularly directed that checks be made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, while knowing that there was insufficient funds in J&J Chemical's account at Clinton Bank to satisfy the checks.

(c)    William Deakin, on a daily basis, directed the J&J Chemical checks to be deposited in the Blocked Account.

(d)    William Deakin ensured that the amount of the J&J Chemical deposits were reflected on the borrowing base certificates representing Gitto Global's collections.

(e)    William Deakin, on a regular basis, created or caused to be created fictitious checks to evidence payments from Hemisphere, Velco, Zebulon, J-Tan, Hitachi and CCC that were never received.

(f)    William Deakin, on a regular basis, created or caused to be created fictitious invoices to evidence sales of goods to Hemisphere, Velco, Zebulon, J-Tan, Hitachi and CCC that never occurred.

152.    Between July of 2002 and September of 2004, J&J Chemical knowingly participated in the scheme by (i) allowing its checks to be deposited in the Fleet account, while knowing these checks were not for payment of goods and (ii) allowing Gitto Global checks payable to J&J Chemical to be deposited in its account at Clinton Bank, knowing the checks were being used to further a check-kiting scheme.

153.    In reliance on the representations made to LaSalle by Gary Gitto, Frank Miller, John Tersigni, Kathleen Carland, Janice Chaisson, Helen Kozak, William Deakin and J&J Chemical, LaSalle entered into a Loan and Security Agreement with Gitto Global and LaSalle continued to advance funds to Gitto Global on a regular basis.

154.    As a result of the unfair or deceptive act or practices used by Gary Gitto, Frank Miller, John Tersigni, Kathleen Carland, Janice Chaisson, Helen Kozak, William Deakin and J&J Chemical, LaSalle entered into a Loan and Security Agreement with Gitto Global and to advance funds under the LaSalle revolving loan.

155.    Gitto Global has not repaid LaSalle the amount LaSalle loaned to Gitto Global.

156.    As of October 13, 2004, there is due and owing (a) under the LaSalle revolving loan, principal of $18,803,353.61, interest of $34,062.77 and interest continues to accrue at the

- 43 -

per diem rate of $2,611.58, (b) under the LaSalle term loan, principal of $833,333.42, interest of $1,984.39 and interest continues to accrue at the per diem rate of $156.25 (c) and overdraft of $11,890,588.

WHEREFORE, Plaintiff, LaSalle Business Credit, LLC, prays for the following relief with regard to Count III against Defendants, Gary C. Gitto, Frank Miller, John D. Tersigni, Kathleen M. Carland, William Deakin, Janice Chaisson, Helen Kozak, and Kingsdale Corp. d/b/a J&J Chemical Distributors:

A.    Compensatory damages in an amount exceeding $30,000,000, together with interest thereon;

B.    Treble damages for knowing violation of ALM GL Ch. 93A §2.

C.    An award of attorneys' fees;

D.    An award of costs and disbursement herein; and

E.    Such and further relief as may be just and equitable under the circumstances.

**COUNT IV**
**COMMON LAW CONSPIRACY TO DEFRAUD**
(Against Gary C. Gitto, Frank Miller, John D. Tersigni,
Kathleen M. Carland, William Deakin, Janice Chaisson,
Helen Kozak, and Kingsdale Corp. d/b/a J&J Chemical Distributors)

157.    LaSalle restates and incorporates by reference the allegations contained in Paragraphs 1 through 90 as the allegations of Paragraph 157.

158.    Beginning in July of 2002, and continuing through September of 2004, Gary Gitto, Frank Miller, John Tersigni, Kathleen Carland, Janice Chaisson, Helen Kozak, William Deakin and J&J Chemical conspired to defraud LaSalle by misrepresenting and giving financial information of Gitto Global to LaSalle to induce LaSalle to enter into a Loan and Security Agreement with Gitto Global and to advance funds under the LaSalle revolving loan.

- 44 -

159.    Between July of 2002 and September of 2004, Gary Gitto, Frank Miller, John Tersigni, Janice Chaisson, Helen Kozak, William Deakin and J&J Chemical directed and/or actively participated in a check-kiting scheme between J&J Chemical's account at Clinton Bank, the Fleet Blocked Account and the LaSalle Account in order to obtain funds from LaSalle to which they were not entitled.

160.    To further this check-kiting scheme, Gary Gitto, Frank Miller, John Tersigni, Janice Chaisson, Helen Kozak and William Deakin were involved in the creation of checks made payable to Gitto Global from the J&J Chemical account at Clinton Bank knowing there were insufficient funds to satisfy the checks in the J&J Chemical account.

161.    Gary Gitto, Frank Miller, John Tersigni, Janice Chaisson, Helen Kozak and William Deakin caused the J&J Chemical checks to be deposited in the Fleet Blocked Account.

162.    Gary Gitto, Frank Miller, John Tersigni, Janice Chaisson, Helen Kozak and William Deakin represented to LaSalle that these funds deposited in the Fleet Blocked Account were from various customers as payment for invoices. Gary Gitto, Frank Miller, John Tersigni, Janice Chaisson, Helen Kozak and William Deakin were involved in the creation of fictitious invoices, bills of lading and checks to support the representations to LaSalle, which were furnished to LaSalle's examiners at field examinations and audits. In addition, Kathleen Carland and John Tersigni knowingly created letters confirming the fictitious sales, which were furnished to LaSalle in connection with those examinations and audits.

163.    Between July of 2002 and September of 2004, Frank Miller and later at the direction of Gary Gitto and Frank Miller, Janice Chaisson sent borrowing base certificates to LaSalle on a daily basis. These borrowing base certificates contained fictitious sales, collections

- 45 -

and inventory figures for the purpose of inducing LaSalle to advance funds to Gitto Global under

the LaSalle revolving loan

164.    Between July of 2002, and September of 2004, Gary Gitto knowingly participated

in the conspiracy to defraud LaSalle as follows:

(a)    Gary Gitto directed the check-kiting activities between J&J Chemical's account at Clinton Bank, the Fleet Blocked Account and the LaSalle Account for two years for the purpose of obtaining funds from LaSalle under false pretenses.

(b)    Gary Gitto regularly directed that checks be made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, knowing that there was insufficient funds in J&J Chemical's account at Clinton Bank to satisfy the checks.

(c)    Gary Gitto, on a daily basis, directed the J&J Chemical checks to be deposited in the Blocked Account.

(d)    Gary Gitto directed that the amount of the J&J Chemical deposits be reflected on the borrowing base certificates representing Gitto Global's Collections.

(e)    Gary Gitto regularly directed the transfer of funds from the LaSalle disbursement account, advanced by LaSalle in reliance on the borrowing base certificates and the deposits in the Fleet Blocked Account, to J&J Chemical's account at Clinton Bank, thereby completing the check kite.

(f)    Gary Gitto regularly directed that funds obtained by false pretenses from LaSalle be paid to him directly or companies in which he was doing business.

165.    Between July of 2002 and September of 2004, Frank Miller knowingly

participated in the conspiracy to defraud LaSalle as follows:

(a)    Frank Miller, with Gary Gitto, directed the check-kiting activities between J&J Chemical's account at Clinton Bank, the Fleet Blocked Account and the LaSalle Account.

(b)    Frank Miller regularly directed that checks be made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, knowing that there was insufficient funds in J&J Chemical's account at Clinton Bank to satisfy the checks.

- 46 -

(c)    Frank Miller, on a daily basis, directed the J&J Chemical checks to be deposited in the Blocked Account.

(d)    Frank Miller directed that the amount of the J&J Chemical deposits be reflected on the borrowing base certificates representing Gitto Global's Collections.

(e)    Frank Miller regularly directed the transfer of funds from the LaSalle disbursement account, advanced by LaSalle in reliance on the borrowing base certificates and the deposits in the Fleet Blocked Account, to J&J Chemical's account at Clinton Bank, thereby completing the check kite.

(f)    Frank Miller regularly directed that funds obtained from LaSalle by false pretenses be paid to him directly.

(g)    Frank Miller directed the check-kiting scheme continuously for two years for the purpose of obtaining funds from LaSalle under false pretenses.

(h)    Frank Miller sent borrowing base certificates to LaSalle on a daily basis from July 25, 2002 to January 16, 2004 seeking fund advances, while knowing that the sales information contained therein was false, knowing the that the inventory information contained therein was false, knowing that the collections information contained therein was false and knowing that LaSalle would rely on the information contained therein in auditing the financial situation of Gitto Global.

(i)    Frank Miller, at the request of Gary Gitto, knowingly sent requests for fictitious confirmations of invoices to J-Tan, Hitachi, Velco, Hemisphere and Zebulon to give the appearance of legitimacy and to lessen the appearance of deception.

(j)    Frank Miller sent these requests for fictitious confirmations knowing that the companies had not purchased any goods from Gitto Global, knowing the invoices prepared by Gitto Global at the direction of Frank Miller or Gary Gitto were false, knowing that none of the companies owed money to Gitto Global, knowing that the fictitious confirmations would be sent to LaSalle, and knowing that LaSalle would rely on the information contained therein in auditing the financial situation of Gitto Global.

166.    Between July 2002 and September 15, 2004, John Tersigni knowingly participated in the conspiracy to defraud LaSalle as follows:

(a)    John Tersigni on behalf of J&J Chemical signed or allowed his signature to be affixed to hundreds of checks knowing that there was insufficient funds in J&J Chemical's account at Clinton Bank to satisfy the checks and knowing that J&J Chemical did not owe any money to Gitto Global.

- 47 -

(b)     John Tersigni caused these checks to be deposited in the Fleet Blocked Account knowing that the amounts of the checks would be used on borrowing base certificates to represent Gitto Global collections, knowing that the borrowing base certificates would be sent to LaSalle, knowing that LaSalle would rely on the funds in the Fleet Blocked Account and in the borrowing base certificates in continuing its lending relationship with Gitto Global.

(c)     John Tersigni knowingly sent a fictitious confirmation of invoices confirming that J-Tan owed $3,115,811.10 to Gitto Global as of December 31, 2003 in order to give the appearance of legitimacy and to lessen the appearance of deception.

(d)     John Tersigni sent the fictitious confirmation knowing that J-Tan had not purchased any goods from Gitto Global, knowing the invoices prepared by Gitto Global at the direction of Frank Miller or Gary Gitto were false, knowing that J-Tan did not owe any money to Gitto Global, and knowing that LaSalle would rely on the information contained therein in auditing the financial situation of Gitto Global.

167.    Kathleen Carland knowingly participated in the conspiracy to defraud LaSalle as follows:

(a)     Kathleen Carland sent a letter to Louis Pellegrine confirming that Hemisphere owed $2,415,032.35 to Gitto Global as of December 31, 2003 in order to give the appearance of legitimacy and to lessen the appearance of deception.

(b)     Kathleen Carland sent the fictitious confirmation knowing that Hemisphere had not purchased any goods from Gitto Global, knowing the invoices prepared by Gitto Global at the direction of Frank Miller or Gary Gitto were false, knowing that Hemisphere did not owe any money to Gitto Global, and knowing that LaSalle would rely on the information contained therein in auditing the financial situation of Gitto Global.

168.    Between July of 2002 and September of 2004, Janice Chaisson knowingly participated in the conspiracy to defraud LaSalle as follows:

(a)     At the direction of William Deakin and Frank Miller, Janice Chaisson regularly created checks made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, knowing that the checks were not for the payment of goods.

(b)     At the direction of William Deakin and Frank Miller, Janice Chaisson regularly created checks made payable to Gitto Global, drawn from J&J

- 48 -

Chemical's account at Clinton Bank, knowing that there was insufficient funds in J&J Chemical's account at Clinton Bank to satisfy the checks.

(c)     At the direction of William Deakin and Frank Miller, Janice Chaisson regularly affixed the signature of John Tersigni, using a signature stamp, to the checks made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, knowing the checks were being used to further a check-kiting scheme.

(d)     Janice Chaisson kept track of the check-kite by keeping two sets of Accounts Receivable Aging Details. One set contained fictitious sales and receipts, including the J&J Chemical checks. The second set contained the actual sales and receipts.

(e)     Between January 17, 2004 and September 15, 2004, Janice Chaisson, at the direction of William Deakin and Gary Gitto, sent borrowing base certificates to LaSalle on a daily basis seeking fund advances knowing that the sales information contained therein was false, knowing the that the inventory information contained therein was false, knowing that the collections information contained therein was false and knowing that LaSalle would rely on the information contained therein in auditing the financial situation of Gitto Global.

169.     Between July of 2002 and September of 2004, Helen Kozak knowingly participated in the conspiracy to defraud LaSalle as follows:

(a)     Helen Kozak, on a regular basis and under the direction of Frank Miller, created fictitious checks to evidence payments from Hemisphere, Velco, Zebulon, J-Tan, Hitachi and CCC that were never received.

(b)     Helen Kozak, on a regular basis and under the direction of Frank Miller, created fictitious invoices and bills of lading to evidence sales of goods to Hemisphere, Velco, Zebulon, J-Tan, Hitachi and CCC that never occurred.

170.     Between July of 2002 and September of 2004, William Deakin knowingly participated in the conspiracy to defraud LaSalle as follows:

(a)     William Deakin, under the direction of Frank Miller, directed the check-kiting activities between J&J Chemical's account at Clinton Bank, the Fleet Blocked Account and the LaSalle Account.

(b)     William Deakin regularly directed that checks be made payable to Gitto Global, drawn from J&J Chemical's account at Clinton Bank, knowing that there was insufficient funds in J&J Chemical's account at Clinton Bank to satisfy the checks.

- 49 -

(c)    William Deakin, on a daily basis, directed the J&J Chemical checks to be deposited in the Blocked Account.

(d)    William Deakin ensured that the amount of the J&J Chemical deposits were reflected on the borrowing base certificates representing Gitto Global's Collections.

(e)    William Deakin, on a regular basis and under the direction of Frank Miller, created fictitious checks to evidence payments from Hemisphere, Velco, Zebulon, J-Tan, Hitachi and CCC that were never received.

(f)    William Deakin, on a regular basis and under the direction of Frank Miller, created fictitious invoices and bills of lading to evidence sales of goods to Hemisphere, Velco, Zebulon, J-Tan, Hitachi and CCC that never occurred.

171.    Between July of 2002 and September of 2004, J&J Chemical knowingly participated in the scheme by (i) allowing its checks to be deposited in the Fleet account, while knowing these checks were not for payment of goods and (ii) allowing Gitto Global checks payable to J&J Chemical to be deposited in its account at Clinton Bank, knowing the checks were being used to further a check-kiting scheme.

172.    LaSalle entered into a Loan and Security Agreement with Gitto Global and LaSalle continued to advance funds to Gitto Global on a regular basis in reliance upon the representations made in the confirmations and the borrowing base certificates.

173.    Gitto Global has not repaid LaSalle the amount LaSalle loaned to Gitto Global.

174.    As of October 13, 2004, there is due and owing (a) under the LaSalle revolving loan, principal of $18,803,353.61, interest of $34,062.77 and interest continues to accrue at the per diem rate of $2,611.58 (b) under the LaSalle term loan, principal of $833,333.42, interest of $1,984.39 and interest continues to accrue at the per diem rate of $156.25 and (c) overdraft of $11,890,588.

WHEREFORE, Plaintiff, LaSalle Business Credit, LLC, prays for the following relief with regard to Count IV against Defendants, Gary C. Gitto, Frank Miller, John D. Tersigni,

Kathleen M. Carland, William Deakin, Janice Chaisson, Helen Kozak, and Kingsdale Corp. d/b/a

J&J Chemical Distributors:

      A.      Compensatory damages in an amount exceeding $20,000,000, together

with interest thereon;

      B.      Punitive damages;

      C.      An award of attorneys' fees;

      D.      An award of costs and disbursement herein; and

      E.      Such and further relief as may be just and equitable under the

circumstances.

**COUNT V**
**CIVIL CONSPIRACY**
(Against Gary C. Gitto, Frank Miller, John D. Tersigni,
Kathleen M. Carland, William Deakin, Janice Chaisson,
Helen Kozak, Charles N. Gitto, Nancy Gitto Panagiotes,
Kingsdale Corp. d/b/a J&J Chemical Distributors, and Tradex Corporation)

175.    LaSalle restates and incorporates by reference the allegations contained in

Paragraphs 1 through 90 as the allegations of Paragraph 175.

176.    Beginning in July of 2002, and continuing through September of 2004, Gary

Gitto, Frank Miller, John Tersigni, Kathleen Carland, Janice Chaisson, Helen Kozak, Charles

Gitto, Nancy Gitto Panagiotes, William Deakin, J&J Chemical and Tradex had a common design

to obtain money from LaSalle through a revolving credit loan made under false pretenses to

Gitto Global.

177.    In furtherance of the civil conspiracy, Gary Gitto and Frank Miller directed a

check-kiting scheme between the Fleet Blocked Account, the LaSalle Account and J&J

Chemical's account at Clinton Bank.

178.    Between July of 2002 and September of 2004, on a daily basis and in furtherance of the check-kiting scheme, checks were issued from J&J Chemical payable to Gitto Global by or at the direction of Helen Kozak, John Tersigni, J&J Chemical and Janice Chaisson; checks were issued from Gitto Global payable to J&J Chemical by or at the direction of Frank Miller, Helen Kozak and William Deakin; fictitious invoices and bills of lading were created to conceal the check-kite by or at the direction of Frank Miller, Helen Kozak and William Deakin; and fictitious checks, purportedly issued by customers, were created in the Secret Garden to conceal the check-kiting scheme by or at the direction of Frank Miller, Helen Kozak and William Deakin.

179.    Between July of 2002 and September of 2004, on a daily basis and in furtherance of the conspiracy, Frank Miller and Janice Chaisson, at the direction of Gary Gitto and Frank Miller, prepared borrowing base certificates on behalf of Gitto Global, which they knew contained misrepresentations, seeking an advance of funds from LaSalle. The borrowing base certificates contained misrepresentations regarding Gitto Global's collections, sales and inventory.

180.    In furtherance of the civil conspiracy and at the direction of Gary Gitto, Frank Miller, Helen Kozak, William Deakin, Kathleen Carland, and John Tersigni created a fictitious customer, Hemisphere; represented that Hemisphere, Zebulon, CCC, J-Tan, Velco and Hitachi were the largest customers of Gitto Global; created invoices and bills of lading purporting to evidence sales to these alleged customers; created false confirmations of accounts receivable balances from the purported customers; and created checks purporting to evidence payments from the alleged customers. The checks, invoices and bills of lading were prepared in the Secret Garden at Gitto Global.

181.    In furtherance of the civil conspiracy and at the direction of Gary Gitto, Frank Miller, and William Deakin, Janice Chaisson kept two sets of books to keep track of the real corporate activity versus the fictitious activity of the civil conspiracy.

182.    Nancy Gitto Panagiotes benefited from the conspiracy by receiving proceeds of the conspiracy. Nancy Gitto Panagiotes received interest payments totaling $37,623, knowing that she was not entitled to those interest payments and knowing that the funds derived from the proceeds of the civil conspiracy.

183.    Charles Gitto benefited from the conspiracy by receiving proceeds of the conspiracy, directly and through Tradex. Charles Gitto directly received interest payments totaling $10,000, consulting fees of $44,300 and unaccounted for disbursements of $320,948, knowing that he was not entitled to those payments and knowing that the funds derived from the proceeds of the civil conspiracy.

184.    Tradex, owned and operated solely by Charles Gitto, benefited from the conspiracy by receiving proceeds of the conspiracy. Tradex received interest payments of $230,090, prepaid rent of $217,061, consulting fees of $34,000 and unaccounted for disbursements of $134,546, knowing that it was not entitled to those payments and knowing that the funds derived from the proceeds of the civil conspiracy.

WHEREFORE, Plaintiff, LaSalle Business Credit, LLC, prays for the following relief with regard to Count V against Defendants, Gary C. Gitto, Frank Miller, John D. Tersigni, Kathleen M. Carland, William Deakin, Janice Chaisson, Helen Kozak, Charles N. Gitto, Jr., Nancy Gitto Panagiotes, Kingsdale Corp. d/b/a J&J Chemical Distributors and Tradex Corporation:

- 53 -

A.      Compensatory damages in an amount exceeding $30,000,000, together with interest thereon;

B.      Punitive damages;

C.      An award of attorneys' fees;

D.      An award of costs and disbursement herein; and

E.      Such and further relief as may be just and equitable under the circumstances.

**COUNT VI**
**BREACH OF GUARANTY**
(Against Gary C. Gitto)

185.    LaSalle restates and incorporates by reference the allegations contained in Paragraphs 1 through 90 as the allegations of Paragraph 185.

186.    As alleged above, on or about July 25, 2002, LaSalle and Gitto Global entered into a Loan and Security Agreement, wherein LaSalle made a revolving loan to Gitto Global.

187.    As part of the Loan and Security Agreement, Gitto Global executed and delivered to LaSalle a Revolving Note in the original principal sum of $27,000,000, and a Term Note in the original principal sum of $3,000,000.

188.    In consideration of the credit being extended by LaSalle to Gitto Global, Gary Gitto executed and delivered to LaSalle a Limited Guaranty in the amount of $3,000,000, plus all court costs and reasonable attorneys' and paralegals' fees paid or incurred by LaSalle in collecting Gitto Global's liabilities.

189.    On September 26, 2004, Gitto Global declared bankruptcy.

190.    As of October 13, 2004, there is due and owing (a) under the LaSalle revolving loan, principal of $18,803,353.61, interest of $34,062.77 and interest continues to accrue at the per diem rate of $2,611.58, (b) under the LaSalle term loan, principal of $833,333.42, interest of

- 54 -

$1,984.39 and interest continues to accrue at the per diem rate of $156.25 and (c) overdraft of $11,890,588.

191.    LaSalle is the owner and holder of the Revolving Note, the Term Note, Loan and Security Agreement, the Gary Gitto Limited Guaranty and all rights thereunder.

WHEREFORE, Plaintiff, LaSalle Business Credit, LLC, prays for the following relief with regard to Count VI against Defendant, Gary C. Gitto:

> A.    Judgment in the amount of $3,000,000 against Gary C. Gitto;
>
> B.    An award of attorneys' fees;
>
> C.    An award of costs and disbursement herein; and
>
> D.    Such and further relief as may be just and equitable under the circumstances

## COUNT VII
## BREACH OF GUARANTEES
(Against Frank Miller)

192.    LaSalle restates and incorporates by reference the allegations contained in Paragraphs 1 through 90 as the allegations of Paragraph 192.

193.    As alleged above, on or about July 25, 2002, LaSalle and Gitto Global entered into a Loan and Security Agreement, wherein LaSalle made a revolving loan to Gitto Global.

194.    As part of the Loan and Security Agreement, Gitto Global executed and delivered to LaSalle a Revolving Note in the original principal sum of $27,000,000, and a Term Note in the original principal sum of $3,000,000.

195.    In consideration of the credit being extended by LaSalle to Gitto Global, Frank Miller executed and delivered to LaSalle a Limited Guaranty in the amount of $3,000,000, plus all court costs and reasonable attorneys' and paralegals' fees paid or incurred by LaSalle in collecting Gitto Global's liabilities.

- 55 -

196.    On September 26, 2004, Gitto Global declared bankruptcy.

197.    As of October 13, 2004, there is due and owing (a) under the LaSalle revolving loan, principal of $18,803,353.61, interest of $34,062.77 and interest continues to accrue at the per diem rate of $2,611.58, (b) under the LaSalle term loan, principal of $833,333.42, interest of $1,984.39 and interest continues to accrue at the per diem rate of $156.25 and (c) overdraft of $11,890,588.

198.    LaSalle is the owner and holder of the Revolving Note, the Term Note, Loan and Security Agreement, and the Frank Miller Limited Guaranty and all rights thereunder.

WHEREFORE, Plaintiff, LaSalle Business Credit, LLC, prays for the following relief with regard to Count VII against Defendant, Frank Miller:

        A.    Judgment in the amount of $3,000,000 against Frank Miller;

        B.    An award of attorneys' fees;

        C.    An award of costs and disbursement herein; and

        D.    Such and further relief as may be just and equitable under the circumstances.

## COUNT VIII
## TRUSTEE PROCESS
(Against Fleet National Bank – Gary Gitto)

199.    LaSalle restates and incorporates by reference the allegations contained in Paragraphs 1 through 90 as the allegations of Paragraph 199.

200.    On information and belief, Fleet National Bank possesses or controls goods, effect or credits of defendant Gary Gitto.

201.    LaSalle requests this Court enter judgment adjudging Fleet National Bank a trustee of the goods, effects and credits of defendant Gary Gitto in an amount to be determined

270381.1 042314-34311

by the Court and charging the trustee in such amount to be applied towards any judgment obtained against Gary Gitto in this action.

## COUNT IX
## TRUSTEE PROCESS
(Against Fleet National Bank – Frank Miller)

202.   LaSalle restates and incorporates by reference the allegations contained in Paragraphs 1 through 90 as the allegations of Paragraph 202.

203.   On information and belief, Fleet National Bank possesses or controls goods, effect or credits of defendant Frank Miller.

204.   LaSalle requests this Court enter judgment adjudging Fleet National Bank a trustee of the goods, effects and credits of defendant Frank Miller in an amount to be determined by the Court and charging the trustee in such amount to be applied towards any judgment obtained against Frank Miller in this action.

## COUNT X
## TRUSTEE PROCESS
(Against Fleet National Bank – Nancy Gitto Panagiotes)

205.   LaSalle restates and incorporates by reference the allegations contained in Paragraphs 1 through 90 as the allegations of Paragraph 205.

206.   On information and belief, Fleet National Bank possesses or controls goods, effect or credits of defendant Nancy Gitto Panagiotes.

207.   LaSalle requests this Court enter judgment adjudging Fleet National Bank a trustee of the goods, effects and credits of defendant Nancy Gitto Panagiotes in an amount to be determined by the Court and charging the trustee in such amount to be applied towards any judgment obtained against Nancy Gitto Panagiotes in this action.

- 57 -

## COUNT XI
## TRUSTEE PROCESS
(Against Fleet National Bank – Charles Gitto)

208.    LaSalle restates and incorporates by reference the allegations contained in Paragraphs 1 through 90 as the allegations of Paragraph 208.

209.    On information and belief, Fleet National Bank possesses or controls goods, effect or credits of defendant Charles Gitto.

210.    LaSalle requests this Court enter judgment adjudging Fleet National Bank a trustee of the goods, effects and credits of defendant Charles Gitto in an amount to be determined by the Court and charging the trustee in such amount to be applied towards any judgment obtained against Charles Gitto in this action.

## COUNT XII
## TRUSTEE PROCESS
(Against Fleet National Bank – Helen Kozak)

211.    LaSalle restates and incorporates by reference the allegations contained in Paragraphs 1 through 90 as the allegations of Paragraph 211.

212.    On information and belief, Fleet National Bank possesses or controls goods, effect or credits of defendant Helen Kozak.

213.    LaSalle requests this Court enter judgment adjudging Fleet National Bank a trustee of the goods, effects and credits of defendant Helen Kozak in an amount to be determined by the Court and charging the trustee in such amount to be applied towards any judgment obtained against Helen Kozak in this action.

- 58 -

**COUNT XIII**
**TRUSTEE PROCESS**
(Against Sovereign Bank – William Deakin)

214.    LaSalle restates and incorporates by reference the allegations contained in Paragraphs 1 through 90 as the allegations of Paragraph 214.

215.    On information and belief, Sovereign Bank possesses or controls goods, effect or credits of defendant William Deakin.

216.    LaSalle requests this Court enter judgment adjudging Sovereign Bank a trustee of the goods, effects and credits of defendant William Deakin in an amount to be determined by the Court and charging the trustee in such amount to be applied towards any judgment obtained against William Deakin in this action.

**COUNT XIV**
**TRUSTEE PROCESS**
(Against Clinton Savings Bank – Gary Gitto)

217.    LaSalle restates and incorporates by reference the allegations contained in Paragraphs 1 through 90 as the allegations of Paragraph 217.

218.    On information and belief, Clinton Savings Bank possesses or controls goods, effect or credits of defendant Gary Gitto.

219.    LaSalle requests this Court enter judgment adjudging Clinton Savings Bank a trustee of the goods, effects and credits of defendant Gary Gitto in an amount to be determined by the Court and charging the trustee in such amount to be applied towards any judgment obtained against Gary Gitto in this action.

270381.1 042314-34311

## COUNT XV
## TRUSTEE PROCESS
(Against Clinton Savings Bank – Frank Miller)

220.    LaSalle restates and incorporates by reference the allegations contained in Paragraphs 1 through 90 as the allegations of Paragraph 220.

221.    On information and belief, Clinton Savings Bank possesses or controls goods, effect or credits of defendant Frank Miller.

222.    LaSalle requests this Court enter judgment adjudging Clinton Savings Bank a trustee of the goods, effects and credits of defendant Frank Miller in an amount to be determined by the Court and charging the trustee in such amount to be applied towards any judgment obtained against Frank Miller in this action.

## COUNT XVI
## TRUSTEE PROCESS
(Against Clinton Savings Bank – Charles Gitto)

223.    LaSalle restates and incorporates by reference the allegations contained in Paragraphs 1 through 90 as the allegations of Paragraph 223.

224.    On information and belief, Clinton Savings Bank possesses or controls goods, effect or credits of defendant Charles Gitto.

225.    LaSalle requests this Court enter judgment adjudging Clinton Savings Bank a trustee of the goods, effects and credits of defendant Charles Gitto in an amount to be determined by the Court and charging the trustee in such amount to be applied towards any judgment obtained against Charles Gitto in this action.

270381.1 042314-34311

**COUNT XVII**
**TRUSTEE PROCESS**
(Against BankNorth, N.A. – Kathleen Carland)

226.    LaSalle restates and incorporates by reference the allegations contained in Paragraphs 1 through 90 as the allegations of Paragraph 226.

227.    On information and belief, BankNorth, N.A. possesses or controls goods, effect or credits of defendant Kathleen Carland.

228.    LaSalle requests this Court enter judgment adjudging BankNorth, N.A. a trustee of the goods, effects and credits of defendant Kathleen Carland in an amount to be determined by the Court and charging the trustee in such amount to be applied towards any judgment obtained against Kathleen Carland in this action.

**COUNT XVIII**
**TRUSTEE PROCESS**
(Against Sovereign Bank – Nancy Gitto Panagiotes)

229.    LaSalle restates and incorporates by reference the allegations contained in Paragraphs 1 through 90 as the allegations of Paragraph 229.

230.    On information and belief, Sovereign Bank possesses or controls goods, effect or credits of defendant Nancy Gitto Panagiotes.

231.    LaSalle requests this Court enter judgment adjudging Sovereign Bank a trustee of the goods, effects and credits of defendant Nancy Gitto Panagiotes in an amount to be determined by the Court and charging the trustee in such amount to be applied towards any judgment obtained against Nancy Gitto Panagiotes in this action.

**COUNT XIX**
**TRUSTEE PROCESS**
(Against Commerce Bank & Trust Company – Gary Gitto)

232.    LaSalle restates and incorporates by reference the allegations contained in Paragraphs 1 through 90 as the allegations of Paragraph 232.

- 61 -

270381.1 042314-34311