IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LASALLE BUSINESS CREDIT, LLC f/k/a<br>LASALLE BUSINESS CREDIT, INC.,<br><br>      Plaintiff,<br><br>      v.<br><br>GARY C. GITTO, FRANK MILLER, CHARLES N. GITTO, JR., NANCY GITTO-PANAGIOTES, JOHN D. TERSIGNI, KATHLEEN M. CARLAND, WILLIAM DEAKIN, JANICE CHAISSON, HELEN KOZAK, KINGSDALE CORP. d/b/a J&J CHEMICAL DISTRIBUTORS, and TRADEX CORPORATION,<br><br>      Defendants,<br><br>   and<br><br>FLEET NATIONAL BANK, CLINTON SAVINGS BANK, SOVEREIGN BANK, COMMERCE BANK & TRUST COMPANY, FIDELITY COOPERATIVE BANK, BANKNORTH, N.A., FIDELITY INVESTMENTS, INC., LEOMINSTER CREDIT UNION, and LEHMAN BROTHERS, INC.,<br><br>      Trustee Process Defendants,<br><br>   and<br><br>FIDELITY INVESTMENTS, INC., DIRECT WOOD & PAPER PRODUCTS, INC., GITTO SALES CORPORATION, J-TAN SALES & MARKETING, INC., HEMISPHERE DISTRIBUTION CORPORATION, LEHMAN BROTHERS, INC., and AWG, LLC,<br><br>      Reach-and-Apply Defendants. | Case No. 04-12227 DPW |

**MEMORANDUM OF LAW OF NANCY GITTO-PANAGIOTES IN OPPOSITION TO PRELIMINARY INJUNCTIONS PRESERVING THE STATUS QUO AND IN THE FORM OF REACH-AND-APPLY ATTACHMENTS AND IN SUPPORT OF MOTION TO DISSOLVE ATTACHMENTS OF REAL PROPERTY AND ON TRUSTEE PROCESS**

Defendant Nancy Gitto-Panagiotes files this memorandum of law to oppose the entry of two separate preliminary injunctions requested by Plaintiff and to move for the dissolution of two separate attachments of her assets which Plaintiff obtained *ex parte* in the amount of $30 million each. Specifically, on October 25, 2004, Plaintiff filed four (4) separate *ex parte* motions which sought the following relief against Ms. Gitto-Panagiotes and the other Defendants: (1) a Temporary Restraining Order, and After Hearing, a Preliminary Injunction Preserving the Status Quo; (2) Equitable Attachments in the Form of Reach-and-Apply Injunctions; (3) Attachments on Trustee Process (in the amount of $30,000,000); and (4) an Attachment of Real Property (in the amount of $30,000,000). The Court granted all of the requested relief as to each of the Defendants, including Ms. Gitto-Panagiotes, despite the fact that, as to her, Plaintiff offered nothing more than the bare allegation (completely unsupported by any evidence whatsoever) that she knew of a civil conspiracy and knowingly accepted the proceeds of that conspiracy in the form of $37,623 in interest payments.

This Court should now decline to enter the Plaintiff's two requested preliminary injunctions pertaining to Ms. Gitto-Panagiotes because (1) Plaintiff cannot establish a likelihood of success on the merits against Ms. Gitto-Panagiotes; (2) Plaintiff cannot show it will suffer irreparable harm if the injunctions are not granted against Ms. Gitto-Panagiotes; and (3) the balance of the harms weighs against granting the injunctions. Similarly, after hearing, this Court should dissolve the attachments which it previously

2

entered against Ms. Gitto-Panagiotes' assets because (1) Plaintiff cannot establish a likelihood of succeeding on the merits of its case against Ms. Gitto-Panagiotes; and (2) Plaintiff cannot show it has a likelihood of recovering any judgment against Ms. Gitto-Panagiotes, let alone a judgment of $30,000,000.

I.      **RELEVANT BACKGROUND**

Ms. Gitto-Panagiotes is a former employee of Gitto Global Corporation ("Gitto Global") and currently owns 110 shares of the Company. See Affidavit of Nancy Gitto-Panagiotes at ¶ 14. As an employee, Ms. Gitto-Panagiotes' sole responsibility was to coordinate the marketing efforts of the company. See id. at ¶ 12. Although she had the title of "vice president," it was a title only and she had absolutely no role whatsoever in the management of the company or management decisions. See id. at ¶¶12-13. In addition, despite her ownership of shares amounting to approximately 10% of the Company, all of these shares are actually held and voted by her brother, Gary C. Gitto, as trustee subject to the terms of a Voting Trust Agreement. See id. at ¶ 14 and Exhibits B and C, thereto. Under the Voting Trust Agreement, she has neither a vote nor a voice in the Company. See id. She is not aware of any shareholder meetings that have taken place nor, even, has she read any minutes of such meetings. See id. at ¶ 15.

In 2002, Ms. Gitto-Panagiotes made $450,000 in loans to her brother, Gary, and to Frank Miller – both officers of Gitto Global. See id. at ¶¶ 5, 8. Specifically, in May 2002, Gary Gitto called Ms. Gitto-Panagiotes and told her that Gitto Global was doing poorly financially. See id. at ¶ 5. He asked Ms. Gitto-Panagiotes if she would make a $150,000 loan to him. See id. He called her again in June 2002 to tell her that the company was still doing poorly and, this time, asked her to loan $300,000 to Mr. Miller

3

and his wife. See id. at ¶ 8. In both instances, Ms. Gitto-Panagiotes agreed to make the loans because it was her brother who asked for them. See id. at ¶¶ 5, 8. She was never told the purposes of these loans. See id. at ¶¶ 5, 8.

Mr. Gitto prepared and sent her demand notes memorializing these loans. See id. at ¶¶ 6, 9. The demand notes provided that a demand for payment by Ms. Gitto-Panagiotes could be made at any time, but while the note was outstanding, she would be paid monthly interest payments of 8% on the unpaid balance of the loan. See id. at ¶¶ 6, 9. Ms. Gitto-Panagiotes sent amortization schedules prepared by her accountant to each of Mr. Gitto and Mr. Miller showing that the monthly payments due averaged $1,033.33 and $2,066.67 per month, respectively. See id. at ¶¶ 7, 9.

Mr. Gitto and Mr. Miller made their monthly payments through October 15, 2003 and May 2004, respectively. See id. at ¶ 10. Ultimately, Ms. Gitto-Panagiotes had to make demands for payment in full through her attorney on both loans as authorized by the demand notes. See id. While Mr. Gitto repaid the loan, Ms. Gitto-Panagiotes had to initiate litigation to collect on the demand note from Mr. Miller. See id. and Exhibit A, thereto.

Plaintiff filed its Complaint in this action on October 25, 2004. The 69-page, 277-paragraph, 21-count Complaint contains only a single, substantive allegation of wrongdoing against Ms. Gitto-Panagiotes, personally. Specifically, in support of a count for civil conspiracy, paragraph 182 alleges that:

> Nancy Gitto-Panagiotes benefited from the conspiracy by receiving proceeds of the conspiracy. Nancy Gitto-Panagiotes received interest payments totaling $37,623, knowing that she was not entitled to those interest payments and knowing that the funds derived from the proceeds of the civil conspiracy.

4

Complaint at ¶ 182.[1]  This same, essential allegation is reiterated in each of the four (4) motions which Plaintiff filed to obtain its *ex parte* relief from the Court.  See, e.g., *Ex Parte* Motion for Attachments on Trustee Process at ¶ 5 (alleging that Defendants, including Nancy Gitto Panagiotes, "engaged in a scheme to have Gitto Global improperly obtain money from LaSalle through the LaSalle Revolving Loan").  Plaintiff has offered no evidence, let alone admissible evidence, to support the allegation that Ms. Gitto-Panagiotes was part of or aware of a civil conspiracy.

## II. STANDARDS FOR PRELIMINARY INJUNCTION AND FOR DISSOLUTION OF EX PARTE ATTACHMENT

This memorandum supports both Ms. Gitto-Panagiotes' opposition to Plaintiff's request for preliminary injunctive relief as well as her motion to dissolve the two *ex parte* attachments which entered against her assets.  The standards for a preliminary injunction and for dissolving an *ex parte* attachment, while similar, are slightly different.

### A.   Standard for Preliminary Injunction

"'A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" Mazurek v. Armstrong, 520 U.S. 968, 978 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed. 1995) (emphasis added; footnotes omitted)).  In evaluating a motion for a preliminary injunction, the Court must assess "(1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; [and] (3) the balance of relevant impositions, *i.e.*, the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no

---

[1] Paragraph 176 also alleges that all of the named Defendants, including Ms. Gitto-Panagiotes, "had a common design to obtain money from LaSalle through a revolving credit loan made under false pretenses to Gitto Global," but this allegation merely recites the count for civil conspiracy and contains no substance with respect to Ms. Gitto-Panagiotes personally.

5

injunction issues[.]"[2] Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004).

    B.    Standard for Dissolution of *Ex Parte* Attachment

Prejudgment attachments are governed "by the law of the state in which the district court is held[.]" Fed. R. Civ. P. 64; see also Aetna Cas. & Sur. Co. v. Rodco Autobody, 138 F.R.D. 328, 331 (D. Mass. 1991). At any hearing on a motion to dissolve an attachment, "the *plaintiff* shall have the burden of justifying any finding in the *ex parte* order which the defendant has challenged by affidavit." Mass. R. Civ. P. 4.1(g) and 4.2(h) (emphasis supplied). In other words, Plaintiff must demonstrate to the court it has a reasonable likelihood of succeeding on the merits and recovering a judgment against the defendant "in an amount equal to or greater than the amount of the attachment[.]" Aetna Cas., 138 F.R.D. at 331-32. Moreover, it is well-established that an attachment "may not exceed the amount likely to be recovered in the action in which the attachment is approved." Opolski v. Michaud, 1995 U.S. Dist. LEXIS 11204, at *3 (D. Mass. 1994). Accordingly, under M.G.L. c. 223, § 114, if:

> it is found that the action is one to recover for an amount which is liquidated or ascertainable by calculation, and the attachment is for a larger sum than the amount of the claim and such additional amount as is reasonably necessary to include interest thereon and costs likely to be taxed in the action, . . . the court shall reduce or dissolve the attachment . . . .

M.G.L. c. 223, § 114 (emphasis added).

Here, where Plaintiff cannot offer any evidence to support its allegation that Ms. Gitto-Panagiotes received "$37,623, knowing that she was not entitled to those interest payments and knowing that the funds derived from the proceeds of the civil conspiracy," Plaintiff cannot show it is likely to succeed on the merits of this claim. Moreover, where

---

[2] A fourth consideration, the effect of entry of the injunction on the public interest, is not relevant here.

Plaintiff's only claim against Ms. Gitto-Panagiotes is for money damages in the amount of $37,623, Plaintiff can neither establish irreparable harm, nor can it have any hope of showing that it is likely to recover a judgment against Ms. Gitto-Panagiotes of $30,000,000. Thus, as set forth more fully below, this Court should refuse to grant Plaintiff any preliminary relief against Ms. Gitto-Panagiotes and should dissolve all attachments against her assets.

### III. PLAINTIFF CANNOT ESTABLISH ANY LIKELIHOOD THAT IT WILL SUCCEED ON THE MERITS OF ITS CLAIM AGAINST MS. GITTO-PANAGIOTES

As set forth above, establishing that it is likely to succeed on the merits is essential both to Plaintiff's efforts to obtain preliminary injunctions against Ms. Gitto-Panagiotes as well as for it to ensure the *ex parte* attachments it secured are not dissolved. Plaintiff, however, has failed even to address the merits of its case against Ms. Gitto-Panagiotes, let alone made a case that it will succeed upon them.

Here, the only count alleged against Ms. Gitto-Panagiotes is that she had knowledge of a civil conspiracy and knowingly received the proceeds of that conspiracy in the form of interest payments. See, e.g., Complaint ¶ 182. "Civil conspiracy is recognized as a 'very limited cause of action in Massachusetts.'" Brown v. Armstrong, 957 F. Supp. 1293, 1305 (D. Mass. 1996) (quoting Aetna Cas. & Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1563 (1st Cir. 1994)). The elements of civil conspiracy are (1) an agreement to commit a tortious act with reference to the plaintiff; and (2) the commission of the tortious act. See, e.g., Aetna Cas., 43 F.3d at 1564. A mere allegation that a party conspired with another with respect to the plaintiff is not sufficient to make

7

out a claim for civil conspiracy. See, e.g., Allandale Farm v. Koch, 8 Mass. L. Rep. 196; 1997 Mass. Super. LEXIS 12, *8 (Mass. Super. Ct. Nov. 3, 1997).

Plaintiff has advanced nothing more than an allegation that Ms. Gitto-Panagiotes had knowledge of a conspiracy and accepted proceeds from that conspiracy. There is no evidence that she had such knowledge nor, even, that she was in a position to have had such knowledge if such a conspiracy existed. There certainly is no evidence that Ms. Gitto-Panagiotes had an agreement to commit a tortious act in furtherance of a conspiracy or that she actually committed any tort with respect to the Plaintiff. Even if Plaintiff had such evidence, its claim against Ms. Gitto-Panagiotes is only for accepting $37,623 in interest payments, see Complaint at ¶ 182, so Plaintiff certainly cannot legitimately claim that it has a hope of recovering a $30,000,000 judgment against her.

By contrast, Ms. Gitto-Panagiotes' affidavit establishes that the interest payments she received from Gitto-Global were pursuant to loans evidenced by valid demand notes. Her affidavit also establishes that she had no management authority at Gitto Global or any voice or vote in the running of the company. She had no knowledge of any conspiracy let alone an agreement to participate in one. Thus, Plaintiff cannot establish a likelihood of success on the merits, and this Court should not give Plaintiff any prejudgment injunction or attachment concerning Ms. Gitto-Panagiotes based on Plaintiff's bare and unsupported allegation.

### IV. PLAINTIFF CANNOT ESTABLISH IT WILL SUFFER IRREPARABLE HARM

Establishing that irreparable harm will result if a preliminary injunction is not granted is "an essential prerequisite" to obtaining such relief. Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 217 F.3d 8, 13 (1st Cir. 2000). The burden of making this showing

is on the party seeking the relief. See id. at 18. Irreparable harm "exists where a party has no adequate remedy at law." Charlesbank Equity, 370 F.3d at 162. Thus, where a party's claim is for money damages, injunctive relief is not appropriate. See id. Moreover, "speculation or unsubstantiated fears of what may happen in the future cannot provide the basis for a preliminary injunction." In re Rare Coin Galleries of America, Inc., 862 F.2d 896, 902 (1st Cir. 1988). Therefore, a party's concern that it may not be able to recover the full amount of a judgment is insufficient to meet the irreparable harm requirement. See id.

Here, as set forth above, Plaintiff's only claim against Ms. Gitto-Panagiotes appears to be for money damages in the amount of $37,623. Not only does the fact that Plaintiff seeks money damages preclude a showing of irreparable harm, but the irrefutable evidence offered by Ms. Gitto-Panagiotes in her affidavit is that, in the unlikely event that Plaintiff recovers a judgment against her, she has sufficient assets to satisfy such a judgment. See Gitto-Panagiotes Affidavit at ¶ 17. Accordingly, Plaintiff cannot establish irreparable harm and is not entitled to a preliminary injunction.

## V.     THE BALANCE OF THE HARMS WEIGHS AGAINST GRANTING INJUNCTIVE RELIEF

The third criteria this Court must assess in determining whether to grant injunctive relief is whether the harm to the defendant in granting the injunctive relief outweighs the harm to the plaintiff in denying the relief. See In re Rare Coin Galleries, Inc., 862 F.2d at 903. In this case, the *ex parte* relief obtained by Plaintiff has already tied up all of Ms. Gitto-Panagiotes' assets because the $30,000,000 amount of each of the *ex parte* attachments dramatically exceeds her total assets. In addition, by virtue of the fact that she is listed as a co-signer on a bank account belonging to her mother, the relief

obtained by Plaintiff has also frozen her mother's assets as well. See Gitto-Panagiotes Affidavit at ¶ 18. Ms. Gitto-Panagiotes' mother is 70 years old, has not been married to Mr. Charles Gitto – a defendant in this case – for nearly 20 years, and is not even referenced in any of the allegations in the Complaint. See id. Thus, maintaining injunctive relief and attachments against Ms. Gitto-Panagiotes will freeze all of her assets and a substantial portion of her mother's as well, solely based upon a solitary, unsupported allegation against Ms. Gitto-Panagiotes.

As for Plaintiff's side of the balance of the harms analysis, as stated above, the claim that Plaintiff has against Ms. Gitto-Panagiotes is for a tiny fraction of the $30,000,000 claim Plaintiff is alleging in this case. Plaintiff has offered no facts to suggest that Ms. Gitto-Panagiotes will not be able to satisfy a judgment in the range of $37,000 if Plaintiff prevails on the merits. Accordingly, Plaintiff cannot reasonably claim that it will suffer any harm whatsoever if it is not granted its requested preliminary injunctions.

## VI.     CONCLUSION

For the foregoing reasons – most importantly, that Plaintiff has offered no evidence to support its contention that it will succeed on the merits of its claim against Ms. Gitto-Panagiotes – Ms. Gitto-Panagiotes requests that this Court deny the preliminary injunctions requested by Plaintiff against her and dissolve the two attachments which Plaintiff obtained *ex parte*. A form of order is attached.

Respectfully submitted,

NANCY GITTO-PANAGIOTES

By her attorneys,

_/s/ Ian Crawford_
Ian Crawford (BBO#544475)
Tyler E. Chapman (BBO#637852)
Todd & Weld LLP
28 State Street
Boston, MA 02109
(617) 720-2626

DATED: November 1, 2004

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand)/(mail) on 11/1/04 and 11/2/04

_/s/ Ian Crawford_

11