IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

LASALLE BUSINESS CREDIT, LLC f/k/a )
LASALLE BUSINESS CREDIT, INC., )
)
   Plaintiff, )
)
v. )
) Case No. 04-12227 DPW
GARY C. GITTO, FRANK MILLER, CHARLES )
N. GITTO, JR., NANCY GITTO-PANAGIOTES, )
JOHN D. TERSIGNI, KATHLEEN M. CARLAND, )
WILLIAM DEAKIN, JANICE CHAISSON, HELEN )
KOZAK, KINGSDALE CORP. d/b/a J&J CHEMICAL )
DISTRIBUTORS, and TRADEX CORPORATION, )
)
   Defendants, )
)
and )
)
FLEET NATIONAL BANK, CLINTON SAVINGS )
BANK, SOVEREIGN BANK, COMMERCE BANK )
& TRUST COMPANY, FIDELITY COOPERATIVE )
BANK, BANKNORTH, N.A., FIDELITY )
INVESTMENTS, INC., LEOMINSTER CREDIT )
UNION, and LEHMAN BROTHERS, INC., )
)
   Trustee Process Defendants, )
)
and )
)
FIDELITY INVESTMENTS, INC., DIRECT WOOD )
& PAPER PRODUCTS, INC., GITTO SALES )
CORPORATION, J-TAN SALES & MARKETING, )
INC., HEMISPHERE DISTRIBUTION )
CORPORATION, LEHMAN BROTHERS, INC., and )
AWG, LLC, )
)
   Reach-and-Apply Defendants. )
)

**AFFIDAVIT OF NANCY GITTO-PANAGIOTES**

I, Nancy Gitto-Panagiotes, under oath depose and state as follows:

1. I make this affidavit in support of the *Motion of Nancy Gitto-Panagiotes to Dissolve Temporary Restraining Order and Equitable and Real Property Attachments and Opposition to Plaintiff's Motion for Preliminary Injunction*.

2. Only one paragraph in the 277-paragraph Complaint in this action contains a substantive allegation against me personally. Specifically, paragraph 182 alleges that:

Nancy Gitto-Panagiotes benefited from the conspiracy by receiving proceeds of the conspiracy. Nancy Gitto-Panagiotes received interest payments totaling $37,623, knowing that she was not entitled to those interest payments and knowing that the funds derived from the proceeds of the civil conspiracy.

3. While it is true that I received interest payments relating to loans I made to my brother, Gary Gitto, and Frank Miller, the allegation that I was not entitled to those payments and that I supposedly knew that the funds I received derived from an alleged conspiracy are false. I know of no evidence that would support these allegations.

4. The interest payments I received relate to loans I made to my bother, Gary Gitto, and to Maria and Frank Miller in 2002. These loans are evidenced by demand notes.

5. Specifically, in May 2002, my brother – an officer of Gitto Global Corporation ("Gitto Global") – called me and told me that Gitto Global was doing poorly financially. He asked me if I would make a personal loan to him of $150,000. I agreed to make this loan because it was my brother who asked me for it. I was never told the purpose of the loan.

6. After I agreed to make this loan, my brother Gary prepared and sent me a signed demand note memorializing the loan. The demand note provided that a demand

2

for payment by me could be made at any time, but while the note was outstanding, I would be paid monthly interest payments of 8% on the unpaid balance of the loans.

7. I then sent Gary an amortization schedule which my accountant prepared to reflect the interest due on the loan. The monthly interest payments due according to this schedule averaged $1,033.33 per month.

8. Approximately a month later, in June 2002, Gary once again told me that Gitto Global was doing poorly and asked me to make another loan – this time to Maria and Frank Miller in the amount of $300,000. Mr. Miller is also an officer of Gitto Global. Once again, because it was my brother who asked me, I agreed to make the loan. I was never told the purpose of this loan.

9. After agreeing to make the loan to the Millers, I again received a demand note evidencing the loan with the same terms as the note for the loan to Gary. I again had my accountant prepare an amortization schedule which I sent to the Millers that set forth the monthly interest payments due on the loan. The interest payments on this loan averaged about $2,066.67 per month.

10. The monthly interest payments for my brother's loan were made to me through October 15, 2003 and monthly payments for the Millers' loan were made through May 2004. Both loans were repaid in full only after my attorney made demand for payment. Gary responded to the demand by paying off the loan. The Millers, however, continued to refuse to pay, and I initiated litigation in Worcester Superior Court to collect on the demand note. A copy of the Complaint from that action is attached as <u>Exhibit A</u>, hereto.

11. As to the allegation that I received these payments "knowing that the funds derived from the proceeds of the civil conspiracy," not only do I have no knowledge of any civil conspiracy involving any of the other defendants to this action, I was never in any position to know about any such civil conspiracy if it existed.

12. While, as the Complaint alleges at paragraph 7, I was a vice president at Gitto Global, my sole responsibility was to coordinate the marketing initiatives of the company.

13. At no time during my employment did I function as an officer of the company nor did I participate in the management decisions of the company.

14. It is also true that, as the Complaint alleges at paragraph 31, I am a part owner of Gitto Global, but this ownership gives me no voting voice in or right to control Gitto Global. Specifically, I own 110 shares of the Company (approximately 10%), but my acquisition of these shares was pursuant to a 1994 Voting Trust Agreement. Under the Voting Trust Agreement, I have no voting rights or active voice in the running of Gitto Global. A copy of the Voting Trust Agreement is attached hereto as <u>Exhibit B</u>, hereto. A copy of the Stock Assignment whereby I transferred my 110 shares to my brother Gary as Trustee is attached as <u>Exhibit C</u>, hereto.

15. I am not aware of any shareholder meetings that have ever taken place for Gitto Global and I certainly have not attended or even seen minutes for such meetings.

16. In short, my involvement with the company was as an employee and was limited to the marketing sphere. Since leaving Gitto Global in late 2003, I have not even been employed at Gitto Global.

17. In the unlikely event the Plaintiffs recover a judgment against me for the amount of the interest payments I received (as set forth at paragraph 182 in the Complaint) of $37,623, I have sufficient assets to satisfy such a judgment.

18. The attachment by trustee process entered by this Court has also affected my 70-year old mother, Barbara A. Gitto. Because I am a joint signer on her checking account at Fleet Bank, Fleet has frozen her account and she is unable to write checks or withdraw any money from her account with the bank. My mother has been divorced from my father, Charles N. Gitto, for nearly 20 years, is not the subject of any allegations in the Complaint, and has nothing to do with this matter.

Signed under the pains and penalties of perjury this 29 day of October, 2004.

_Nancy M. Gitto-Panagiotes_
Nancy Gitto-Panagiotes

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand)/(mail) on 11/1/04 and 11/2/04
_Ian CurtY_

**EXHIBIT A**

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                          SUPERIOR COURT
                                        CIVIL ACTION NO.
                                        04-0846 B

NANCY GITTO-PANAGIOTES         )
                               )
        Plaintiff,             )
                               )
v.                             )
                               )
FRANK MILLER AND MARIA C.      )
MILLER                         )
                               )        RECEIVED
        Defendants.            )
                               )        MAY 0 3 2004
                               )
and                            )        CLERK OF COURTS
                               )        WORCESTER COUNTY
CLINTON SAVINGS BANK,          )
                               )
        Trustee Defendant.     )

## COMPLAINT AND JURY DEMAND

1. The plaintiff Nancy Gitto-Panagiotes is an individual who resides at 656 Strawberry Hill Road, Concord, Massachusetts.

2. The defendant Frank Miller is an individual who resides at 95 Kettlehole Road, Bolton, Massachusetts.

3. The defendant Maria C. Miller is the wife of Frank Miller and also resides at 95 Kettlehole Road, Bolton, Massachusetts.

4. On information and belief the trustee defendant Clinton Savings Bank is a banking institution located at 200 Church Street, Clinton, Massachusetts.

5. On June 4, 2002, the plaintiff lent Mr. and Mrs. Miller $300,000 by wire transferring that amount into Clinton Savings Bank Account No. 133053050 (the "Loan").

6. The Loan was evidenced by a Demand Note dated June 4, 2002. The Demand Note provided that a demand for payment can be made at any time but while the Note was outstanding that the defendants would pay monthly interest payments of 8% on the unpaid balance of the Loan.

7. The defendants have made all monthly interest payments, and many of the checks that were sent to the plaintiff in payment of interest refer to "Int/FM-MM."

8. On April 6, 2004, the plaintiff made written demand on the defendants for repayment of the Demand Note. Attached as Exhibit A is the demand letter. Defendants have failed and refused to repay the Loan as required.

9. The Demand Note also provides that the defendants agreed to pay all reasonable costs and expenses, including attorneys' fees and costs of collection which the plaintiff would incur in connection with the enforcement or collection of the Demand Note.

## COUNT I
### (Breach of Contract)

10. The plaintiff repeats and realleges Paragraph 1 through 9 as if fully set forth herein.

11. The parties entered into a binding contract whereby the plaintiff lent the Millers $300,000 and the Millers agreed to pay interest on the unpaid balance and repay the amount of the loan upon demand.

12. While the Millers have paid interest as required, they have failed and refused to repay the loan principal despite demand by the plaintiff.

13. As a result of the defendants' actions, the plaintiff has been damaged, including the reasonable attorney's fees in collecting the Loan in an amount to be determined at trial.

## COUNT II
### (Quantum Meriut)

14. Plaintiff restates and realleges Paragraphs 1 through 13 as if fully set forth herein.

15. Plaintiff lent the defendants $300,000, and the defendants had been making monthly interest payments on the Loan since 2002.

16. The defendants have enjoyed the benefit of the loan proceeds and have failed and refused to repay the Loan despite demand.

17. As a result, the plaintiff has been damaged in an amount to be determined at trial.

WHEREFORE, the plaintiff prays that this Court:

A. Enter judgment in her favor on Counts I and II and award her damages in an amount to be determined at trial;

B. Grant a Writ of Attachment by Trustee Process in the amount of $300,000 held in Clinton Savings Bank Account No. 133053050;

C. Award the plaintiff her costs and reasonable attorneys' fees in bringing this action; and

D. Award such other relief as is necessary and proper.

<u>PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE</u>

NANCY GITTO-PANAGIOTES

By her attorney,

_____
Ian Crawford (BBO#544475)
Todd & Weld LLP
28 State Street
Boston, MA  02109
(617) 720-2626

DATED: May 3, 2004

4

**EXHIBIT A**

# TODD & WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

IAN CRAWFORD
Email: icrawford@toddweld.com

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

April 6, 2004

**VIA CERTIFIED MAIL**
**RETURN RECEIPT NO. 7003 1010 0001 0803 9049**
**AND REGULAR MAIL**

Mr. Frank Miller
Mrs. Maria C. Miller
95 Kettlehole Road
Bolton, MA   01740

Dear Mr. and Mrs. Miller:

This firm represents Nancy Gitto-Panagiotes. Reference is made to a certain Demand Note dated June 4, 2002 in the amount of $300,000.00.

At your request and pursuant to the Demand Note, my client lent you $300,000 by transferring that amount to an account at Clinton Savings Bank on June 4, 2002. To date, you have failed and refused to repay any portion of that Note. Accordingly, demand is hereby made that you repay the Demand Note, plus the 8% interest called for in the Note, no later than April 30, 2004. Should my client not receive payment in full by April 30, she intends to pursue all legal remedies to enforce the terms of the Note.

Very truly yours,

Ian Crawford

IC:klp
Cc:  Michael P. Angelini, Esquire

**EXHIBIT B**

## VOTING TRUST AGREEMENT

AGREEMENT made this ____ day of November, 1994, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, by and between Nancy M. Gitto-Panagiotes (the "Shareholder"), an individual residing at Concord, Massachusetts, and Gary C. Gitto (the "Trustee"), an individual residing at Leominster, Massachusetts.

1. <u>Background of Agreement</u>. The Shareholder is holder of record of 110 shares of the common stock, no par value, of the Company (collectively, the "Shares"). Subject to the terms and conditions of this Agreement, the Shareholder desires to grant to the Trustee the power to vote and act as record owner of the Shares in order to integrate better the responsibilities of management and ownership of the Company, and the Trustee has agreed to act as voting trustee of the Shares.

2. <u>Transfer of the Shares to the Trustee</u>. Simultaneously with the execution of this Agreement, the Shareholder shall convey, assign, transfer and deliver legal title to all of the Shares and the certificates representing the Shares to the Trustee, duly endorsed in blank for transfer on the books and records of the Company, to be held subject to the terms of this Agreement until this Agreement terminates in accordance with its terms. The Trustee immediately shall cause record ownership of the Shares to be transferred to himself, as Trustee, on the books and records of the Company, and shall endorse across the reverse of all certificates held by him hereunder the following legend:

> The shares represented by this certificate are held subject to a Voting Trust Agreement dated November __, 1994, a copy of which shall be kept in the possession of the Company and a copy of which shall be kept in the possession of the Trustee identified therein.

3. <u>Voting</u>. At all meetings of shareholders of the Company, and in all proceedings affecting the Company, the Trustee may vote and act with respect to the Shares in such manner as he may determine in his discretion. The Trustee's powers shall include all of the powers that he would have if he held an irrevocable proxy for the deposited Shares, including without limitation the power to appear for the purpose of composing a quorum at any meeting of shareholders.

4. <u>Liability of Trustee</u>. The Trustee shall not be liable for the consequences of any vote cast in good faith.

5. <u>Assignment of Shares</u>. Any provisions of this Agreement to the contrary notwithstanding, and subject to the provisions of the Shareholders' Agreement dated September 18, 1992 among the Company, the Shareholder and the shareholders of the Company named therein (the "Shareholders' Agreement"), and that Stock Acquisition Agreement of even date herewith between the Trustee (in his

capacity as a shareholder of the Company) and the Shareholder (the "Stock Acquisition Agreement"), the Shareholder may assign her beneficial interest hereunder in the Shares. Any such assignment shall be effected by an instrument of assignment, referring to the terms of this Agreement, the Shareholders' Agreement and the Stock Acquisition Agreement and stating the number of Shares so assigned, a copy of which shall be delivered to the Trustee. Any such assignee may make further assignments in like manner. Upon delivery of such notice to the Trustee, the assignee shall be deemed the beneficial owner of the Shares so assigned for all purposes of this Agreement, provided that the Shares so assigned shall remain subject to the terms and conditions of this Agreement, the Shareholders' Agreement and the Stock Acquisition Agreement.

6. <u>Dividends</u>. The Shareholder shall be entitled to receive payments from the Trustee equal to the cash dividends, if any, received by the Trustee on the Shares. If dividends are declared in voting stock of the Company, the Trustee shall retain such stock, which shall be deemed to have been deposited under the terms of this Agreement, and the Trustee shall notify the Shareholder of the declaration of such dividends. Dividends declared in stock or other securities without voting power and not convertible into or exercisable for the purchase of securities with voting power, if any, shall be assigned immediately to the Shareholder by the Trustee. If securities of another corporation are received with respect to, or in whole or partial exchange for, the Shares, they shall be treated as if same were cash dividends paid with respect to the Shares.

7. <u>Waiver of Certain Rights</u>. The Shareholder hereby waives the right to receive notices, reports, and the like distributed by the Company to its shareholders and any right or offer to subscribe for additional common stock or other securities of the Company and any notice thereof, and the Trustee shall have no duties hereunder to transmit to the Shareholder any such notice, report, subscription rights or offers.

8. <u>Dissolution of the Company</u>. Payments in whole or partial liquidation or by reason of the merger or other reorganization of the Company shall be treated for the purposes of this Agreement as if same were cash dividends under Section 6 above.

9. <u>Termination</u>. This Agreement shall terminate and the Trustee (or his successor or legal representative) shall assign and deliver to the Shareholder legal title to the Shares and the certificates representing such Shares delivered by such Shareholder to the Trustee hereunder upon the purchase, conveyance, and assignment of the beneficial interest therein to the Trustee in his individual capacity pursuant to the Stock Acquisition Agreement.

10. <u>General</u>.  This Agreement sets forth the entire agreement of the parties with respect to the subject matter hereof, shall be governed under the laws of The Commonwealth of Massachusetts, and shall inure to the benefit of and be binding upon the Shareholder and the Trustee and their successors, representatives and assigns.

IN WITNESS WHEREOF, the parties have executed this Agreement under seal as of the day and year first set forth above.

_____
Gary C. Gitto, Trustee


_____
Nancy M. Gitto-Panagiotes,
Shareholder

**EXHIBIT C**

(STOCK ASSIGNMENT SEPARATE FROM CERTIFICATE 358)

(Please furnish taxpayer identification number for each assignee)

**For Value Received,** .......I....... hereby sell, assign and transfer unto Gary C. Gitto as Trustee and not individually, under that Voting Trust Agreement dated ............ , 1994, legal title to

one hundred ten ( 110 ) shares of the Common Stock, no par value Capital Stock

of the ............ Gitto Global Corporation ............

standing in ...my... name on the books of said ...Company...

............ represented by Certificate(s) No. ...6...

herewith, and do hereby irrevocably constitute and appoint ............

attorney to transfer the said stock on the books of the within named Company with full power of substitution in the premises.

DATED ............

IN PRESENCE OF

............ Nancy M. Gitto-Panagiotes

NOTICE: The signature(s) to this assignment must correspond with the name as written upon the face of the certificate, in every particular, without alteration or enlargement, or any change whatever and must be guaranteed by a commercial bank, trust company or member firm of the Boston, New York or Midwest Stock Exchange.