IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LASALLE BUSINESS CREDIT, LLC f/k/a )<br>LASALLE BUSINESS CREDIT, INC., )<br>    )<br>              Plaintiff,          )<br>    v.                             )<br>    )<br>GARY C. GITTO, FRANK MILLER,     )<br>CHARLES N. GITTO, JR., NANCY      )<br>GITTO PANAGIOTES, JOHN D.         )<br>TERSIGNI, KATHLEEN M. CARLAND,    )<br>WILLIAM DEAKIN, JANICE CHAISSON,)<br>HELEN KOZAK, KINGSDALE CORP.      )<br>d/b/a J&J CHEMICAL DISTRIBUTORS,  )<br>and TRADEX CORPORATION,           )<br>    )<br>              Defendants,         )<br>         and                      )<br>    )<br>FLEET NATIONAL BANK, CLINTON      )<br>SAVINGS BANK, SOVEREIGN BANK,     )<br>COMMERCE BANK & TRUST             )<br>COMPANY, FIDELITY COOPERATIVE     )<br>BANK, BANKNORTH, N.A.,            )<br>FIDELITY INVESTMENTS, INC.,       )<br>LEOMINSTER CREDIT UNION, and      )<br>LEHMAN BROTHERS, INC.,            )<br>    )<br>    Trustee Process Defendants,    )<br>    )<br>         and                      )<br>    )<br>FIDELITY INVESTMENTS, INC.,       )<br>DIRECT WOOD & PAPER PRODUCTS,     )<br>INC., GITTO SALES CORPORATION     )<br>J-TAN SALES & MARKETING, INC.,    )<br>HEMISPHERE DISTRIBUTION           )<br>CORPORATION, LEHMAN BROTHERS,     )<br>INC., and AWG, LLC,               )<br>    )<br>    Reach-and-Apply Defendants.    ) | Case No. 04-12227 DPW |

**MEMORANDUM IN SUPPORT OF MOTION BY NON-PARTIES
CHARLES L. GLERUM AND CHOATE, HALL & STEWART TO QUASH
SUBPOENAS AND FOR THE ENTRY OF A PROTECTIVE ORDER**

The Bankruptcy Court appointed Charles L. Glerum, Esq. and the law firm of Choate, Hall & Stewart as Examiner charged with investigating the affairs of Gitto Global Corporation. On the day before Thanksgiving Defendant Gary Gitto served two third party subpoenas purporting to demand discovery from the Examiner. As the courts have explained in similar cases, discovery of a bankruptcy examiner should not be permitted. See In re Baldwin United Corporation, 46 B.R. 314, 316 (Bankr. S.D. Ohio 1985) (a copy of which is attached to the Examiner's Motion as Exhibit A); Vietnam Veterans Foundation v. Erdman, 1987 WL 9033 at *2 (D.D.C. Mar. 19, 1987) (a copy of which is attached to the Examiner's Motion as Exhibit B). Accordingly, this Court should grant the Examiner's motion to quash the two subpoenas and for entry of a protective order.

## FACTS AND PROCEDURAL HISTORY:  THE EXAMINER IS CHARGED TO CONDUCT AN INVESTIGATION ON BEHALF OF THE BANKRUPTCY COURT.

1.      On September 16, 2004, the Board of Directors of Gitto Global Corp. (the "Debtor" or "Gitto Global"), including Gary C. Gitto, appointed Thomas Doherty of Argus Management to serve as the Chief Restructuring Officer of Gitto Global Corporation. Shortly thereafter, the directors and officers of Gitto Global resigned. On September 24, 2004 (the "Petition Date"), Gitto Global filed a petition for relief commencing a case under Chapter 11 of Title 11 of the United States Code (the "Chapter 11 Case"). The case is pending as In re Gitto Global Corporation, United States Bankruptcy Court, District of Massachusetts, Western Division, 04-45386-JBR.

2.      On October 7, 2004, the United States Trustee (the "U.S. Trustee") filed in the Chapter 11 Case the *Motion of United States Trustee to Appoint Chapter 11 Trustee* (the "Trustee Motion," a copy of which is attached to the Examiner's Motion as Exhibit C), which Trustee Motion sought, in the alternative, appointment of an Examiner. As grounds for the

Trustee Motion, the U.S. Trustee cited certain factual allegations set forth in an *Affidavit of Thomas Doherty, CRO of the Debtor* (the "Doherty Affidavit"). In particular, the U.S. Trustee cited Mr. Doherty's allegations that Gitto Global had likely engaged in questionable business practices and accounting irregularities and likely had overstated its annual sales by a significant amount. The U.S. Trustee argued that the appointment of a Chapter 11 Trustee or Examiner would be in the best interests of creditors, as the Chapter 11 Trustee or Examiner could investigate the allegations of fraud and determine whether there is a possible source of recovery for Gitto Global's creditors. A copy of the Trustee Motion was served on David M. Nickless, bankruptcy counsel for Gary Gitto. <u>See</u> Exhibit C to the Examiner's Motion.

     3.     The Court held a hearing on the Trustee Motion on October 14, 2004, at which hearing several parties, including the Debtor and the Official Committee of Unsecured Creditors (the "Committee"), responded to the Trustee Motion. Following the hearing on the Trustee Motion, the Court determined not to appoint a Chapter 11 Trustee, but rather entered an order (the "Appointment Order," a copy of which is attached to the Examiner's Motion as Exhibit D) directing the U.S. Trustee to appoint a Chapter 11 Examiner.

     4.     The U.S. Trustee consulted with counsel to various parties in the Chapter 11 Case, including counsel to the Debtor, the Committee, LaSalle Business Credit, LLC ("LaSalle") and ORIX Financial Services, Inc. ("Orix"). Following such consultation, the U.S. Trustee appointed Charles L. Glerum ("Glerum") and the law firm of Choate, Hall & Stewart (CH&S, and together with Glerum, the "Examiner") to serve as the Chapter 11 Examiner of the Debtor. On October 19, 2004, the Court entered the Order Allowing Application for and Certifying Application of Chapter 11 Examiner (the "Examiner Order," a copy of which is attached to the Examiner's Motion as Exhibit E). Pursuant to the Examiner Order, the Examiner was directed, by reference

-3-

to the Appointment Order, to investigate "the existence of any prepetition fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management and business affairs of" Gitto Global. The Examiner was further ordered to file a report of the investigation with the Bankruptcy Court.[1]

5.    On October 25, 2004, LaSalle commenced the instant lawsuit against a number of parties involved in the management and the business affairs of Gitto Global, including Gary Gitto, and seeking a preliminary injunction. A hearing on that preliminary injunction is currently scheduled for December 10, 2004. In connection with that hearing, this Court has entered one or more orders establishing an expedited discovery schedule.

6.    At the same time, the Examiner has been conducting the examination on behalf of the Bankruptcy Court. The bulk of the Examiner's investigation has been undertaken by James A. Ring. From 1965 to 1990 Mr. Ring served as a Special Agent and Supervisory Special Agent of the Federal Bureau of Investigation responsible for the conducting and/or managing of criminal investigations. From 1990 to the present Mr. Ring has been employed by the law firm of Choate, Hall & Stewart and currently serves as Director of Business Information and Investigative Services at Choate, Hall & Stewart. In conducting the investigation Mr. Ring has done the following: (a) Mr. Ring has reviewed substantial records (all of which were produced from persons who are subject to discovery by Gary Gitto and his counsel); (b) Mr. Ring has interviewed numerous witnesses (all of whom are subject to discovery by Gary Gitto and his counsel); (c) Mr. Ring has taken at least one examination pursuant to Federal Rule of Bankruptcy Procedure 2004; and (d) Mr. Ring has exchanged information and documents with various

---

[1] The Examiner Order directed the Examiner to filed the instant report within 45 days after entry of the Examiner Order, *i.e.* December 3, 2004. The deadline for the Examiner to file an interim report has since been extended by the Bankruptcy Court to December 10, 2004.

parties, including the Federal Bureau of Investigation, the United States Attorney's Office, the Office of the United States Trustee, the Committee, and LaSalle.

7.      On November 24, 2004, Max Stern, Esq., counsel for Gary Gitto, caused a process server to come to the offices of Choate, Hall & Stewart seeking to serve subpoenas on each of Charles L. Glerum and James A. Ring. The subpoena on Mr. Ring seeks to take his deposition at Mr. Stern's office at 2 p.m. on December 2, 2004 and demands production of the following documents:

> All documents, communication, memorandum, notes and the like containing and/or relating to interviews of witnesses concerning the Gitto-Global bankruptcy BNAKR 3 04-45386-JBR.

A copy of the subpoena directed to Mr. Ring is attached as Exhibit F to the Examiner's Motion.

8.      The subpoena for Mr. Glerum was for documents only and requested production by 9:30 a.m. on December 2, 2004 of the following:

> Any and all documents produced or to be produced and/or filed or to be filed with the Bankruptcy court by Frank Miller pursuant to the Bankruptcy Court Rule 2004 examination subpoena in in re Gitto Global Corporation BNAKR # 04-45386 – JBR.

A copy of the subpoena directed to Mr. Glerum is attached as Exhibit G to the Examiner's Motion. The Examiner understands that subpoenas similar to that of Mr. Glerum's were served on the Committee and the Debtor.

## ARGUMENT: THE COURT SHOULD QUASH THE SUBPOENAS AND SHOULD ENTER A PROTECTIVE ORDER.

Gary Gitto's desire to take a shortcut in civil discovery should not be permitted to jeopardize the integrity of the Bankruptcy Court's process and the Examiner's work product. Accordingly, this Court should quash the subpoenas that Gary Gitto served upon Messrs. Glerum and Ring.

## I.    THE BANKRUPTCY EXAMINER IS NOT SUBJECT TO CIVIL DISCOVERY.

### A.    This Court Should Protect The Integrity Of The Bankruptcy Court Investigation.

The Bankruptcy Court Examiner is a unique creation of the law. As the Court explained in Baldwin United, 46 B.R. at 316:

> An Examiner's legal status is unlike that of any other court-appointed officer which comes to mind. He is first and foremost disinterested and nonadversarial. The benefits of his investigative efforts flow solely to the debtor and to its creditors and shareholders, but he answers solely to the Court. As was noted in In re Hamiel & Sons, Inc. 20 B.R. 830, 832 (Bankr. S.D. Ohio 1982), an examiner "constitutes a Court fiduciary and is amenable to no other purpose or interested party."

> While § 1106 requires the Examiner to file a "statement" of his investigation, his findings do not have the binding effect on the Court or parties of those of a special master, arbitrator or magistrate; nor do they have the evidentiary character of an opinion by a Court expert appointed pursuant to Rule 706 of the Federal Rules of Evidence. An Examiner performs the investigative duties of a trustee, and may perform other trustee duties as the Court directs, but he stands on a different legal footing than a trustee. This is borne out of inferentially at least by § 1109, which fails to include Examiners in the list of parties in interest who "may appear and be heard on any issue in any case under this Chapter."

The Baldwin United Court concluded that the Examiner "has aptly characterized his duties as comparable to that of a 'civil grand jury' to ascertain legitimate areas of recovery and appropriate targets for recovery." Id., at 316-17. This is exactly the function of the Examiner in the Gitto Global Chapter 11 case.

Given this situation, this Court should protect the Examiner and the process of the Examiner's investigation from third party discovery. As the Baldwin United Court went on to say:

> If Examiners in other cases are to perform these "civil grand jury" functions effectively, and if their nonadversarial role is to be maintained, they and the subjects of their investigation must be unhampered by the threat that any information which comes into the Examiner's hands will be fair game for a plethora of anxious litigants, regardless of the limitations on disclosure which the Bankruptcy Court has imposed. Even absent such limitations on disclosure, we believe that the Examiner, as a nonparty to any proceeding and a nonadversarial

officer of the Court, is entitled to some immunity from the whirlwind of litigation commonly attendant to large Chapter 11 cases.

Id., at 317.

The granting of a Motion to Quash will also serve to maintain the integrity of the judicial process. As the District Court explained in Vietnam Veterans Foundation v. Erdman, 1987 WL 9033 at *2: "judges are excluded from testifying as witnesses at the same trials over which they preside," and "[a] bankruptcy examiner is clothed by the statute with judicial powers; he acts at the behest of the federal bankruptcy court." The Vietnam Veterans Foundation case analyzed whether an examiner could voluntarily testify concerning the findings and conclusions of law in his report. The District Court held that he could not.

> The integrity of the judicial process is directly threatened when litigators are allowed to question directly a court officer about the reasoning behind his official actions, thus courts have prohibited such examination. See, e.g., United States v. Morgan, 313 U.S. 409 (1941) (Secretary of Agriculture); Standard Packaging Corp. v. Curwood, Inc., 365 F.Supp. 134, 137 (N.D. Ill. 1973) (patent examiner); Wood v. General Teamsters Union, Local 406, 583 F.Supp. 1471, 1474 (W.D. Mich. 1984) (arbitrator). The fact that [the Examiner] will testify voluntarily in no way lessens the threat to the integrity of the judicial process.
>
> [The Examiner] owes a continuing fiduciary responsibility to the bankruptcy court for which he served and that the fruits of his investigation in the [Corporation's] bankruptcy proceeds are "amenable to no other purpose or interested party." Hamiel, 20 Bankr. at 832. [The Examiner] obtained testimony, documents and other information through his court-appointed powers, and thus is cannot serve as the basis for his proffered testimony. As the bankruptcy court in Baldwin explained, "the Bankruptcy Code [does not] contemplate [ ] that the Examiner act as a conduit of information to fuel the litigation fires of third-party litigants." 46 Bankr. at 316. A contrary rule would allow the parties to use a bankruptcy examiner as a discovery short-cut and would only invite further demands on such officers, potentially leading to substantial encroachments on judicial integrity and efficiency. See id.

Id. See In re Stockbridge Funding Corp., 153 B.R. 654, 656 (Bankr. S.D.N.Y., 1993)

(recognizing a "bankruptcy crimes investigation privilege").

-7-

Moreover, the Court should quash the subpoenas served on Mr. Ring and Mr. Glerum for related, practical reasons as well. The Examiner has a limited budget and a limited amount of time in which to complete the Bankruptcy Court's assignment. The Examiner's report, which will be an interim report, is due to be filed by December 10. Notwithstanding the fact that many parties, including Gary Gitto, have exercised their Fifth Amendment privilege not to speak with the Examiner, still there is a substantial amount of information and documents to be gathered, analyzed, and organized. The Examiner's report is due to the Bankruptcy Court in less than two weeks. The Examiner should not be required to respond to discovery requests that would inhibit the completion of his report.

The documents sought from Mr. Ring, his notes, his memoranda, and his communications with Mr. Glerum and others are part and parcel of the Examiner's performance of the "civil grand jury function," just the same as are Mr. Ring's thought processes. Gary Gitto may argue that there is some distinction, in this regard, between Mr. Ring's oral testimony and the documents sought in the subpoenas. That argument is wrong. The documents sought from Mr. Ring and from Mr. Glerum are all part of the Examiner's "civil grand jury function."[2]

**B.    This Court Should Protect The Work Product Immunity Of The Bankruptcy Examiner.**

The Court should also quash the Subpoenas since any information sought thereby, whether testimonial or documentary, is protected by the work product doctrine.

Of course, the work-product doctrine has been well-established ever since <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947), in which the Supreme Court held that an attempt by a party to

---

[2] Mr. Gary Gitto should seek production of the documents from the source that supplied them to the Examiner. To date we do not see any reason why that could not be accomplished. It is conceivable that some of the documents sought of Mr. Glerum could be unavailable to Mr. Gary Gitto, if the Examiner had been given the only copies and if the source could not be identified. If that were the case, then – subject to the entry of an order of this Court to the effect that such production shall not constitute a waiver by the Examiner of any applicable privilege or immunity – the Examiner would be willing to make copies of such documents at the expense of Mr. Gary Gitto.

obtain written statements, private memoranda, and personal recollections prepared by an adverse party's attorney in the course of his legal duties, without showing necessity or justification, "falls outside the arena of discovery." Id. at 510. The work-product doctrine ensures that the attorney has a "zone of privacy" in which to prepare a case. See Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 864 (D.C. Cir. 1980); James Julian, Inc. v. Raytheon Co., 93 F.R.D. 138, 142-43 (D. Del. 1982). The Supreme Court indicated that this protection is not absolute (at least with respect to written statements and documents containing relevant and non-privileged facts), and that discovery might be permitted if the party seeking access establishes adequate reasons. Hickman, 329 U.S. at 511-12. When it came to a witness's oral statement, whether memorialized or not, the Court held that no showing "under the circumstances of this case" would justify an order for production. Id. at 512. However, the Court noted the possibility that this type of material may be discoverable in "a rare situation." Id. at 513.

Federal Rule of Civil Procedure 26(b)(3) [hereinafter "FRCP 26(b)(3)"] substantially codified the doctrine of Hickman v. Taylor with respect to tangible materials. FRCP 26(b)(3) gives protection to:

      (a)    Documents or tangible things;

      (b)    Prepared by or for a party (i.e., by or for a party or a party's representative);

      (c)    In anticipation of litigation or for trial.

FRCP 26(b)(3) applies to "documents and tangible things," while the Hickman definition also encompasses unrecorded and intangible forms of information.

The documents and testimony sought from Mr. Ring are protected as the work product of the Examiner. The protection for work product unquestionably extends to witness statements, investigative reports, and memoranda prepared in anticipation of litigation. See, e.g., 8 C.

WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 2024 (1970).  Opinion work-product is defined as material that contains "mental impressions, conclusions, opinions, or legal theories of an attorney...."  FRCP 26(b)(3).  The doctrine protects not only the mental impressions of the attorney himself (i.e. Mr. Glerum), but also the mental processes of persons assisting in trial preparation such as paralegals, consultants, law office personnel and investigators (i.e. Mr. Ring).  See FRCP 26(b)(3) advisory committee's note (mentioning protection of mental impressions and subjective evaluations of investigators and claim-agents); Virginia Elec. & Power Co. v. Sun Shipbuilding & Dry Dock Co., 68 F.R.D. 397, 402 (E.D. Va. 1975) (impressions and opinions of person hired by an attorney as part of the attorney's work-product).

In order to qualify for protection, a document must be prepared by an attorney or created for an attorney's use.  See In re Grand Jury Proceedings, 473 F.2d 840, 848 (8th Cir. 1973); Natta v. Zletz, 418 F.2d 633, 637-38 (7th Cir. 1969).  This protection extends to material prepared "by or for [a] party's representative," such as Mr. Ring, so long as the agent is assisting in preparing for litigation.  FRCP 26(b)(3) advisory committee's note ("the weight of authority affords protection of the preparatory work of both lawyers and nonlawyers . . ."); Fine v. Facet Aerospace Products Co., 133 F.R.D. 439, 445 (S.D.N.Y. 1990); In re Conticommodity Services, Inc. Sec. Litig., 123 F.R.D. 574, 578 (N.D. Ill. 1988) (documents prepared by the accountant as an agent for the lawyer would be protected); Sterling Drug Inc. v. Harris, 488 F. Supp. 1019, 1027 (S.D.N.Y. 1980).  Thus the fact that Mr. Ring is not himself an attorney is not relevant.

By its terms, FRCP 26(b)(3) applies to materials prepared "by or for another party or by or for that party's representative . . . ."  This language refers to a "party".  Taken literally, it could be argued that this language of FRCP 26(b)(3) does not apply where a law firm prepares work product in one case, and the work product is sought by subpoena in another case.  Any such

-10-

interpretation has been roundly criticized, however. <u>See</u> 8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 2024 (1970) (criticizing this interpretation and suggesting a court should issue a protective order). Moreover, some courts have held that regardless of the language of Rule 26, the work-product protection developed in <u>Hickman</u> encompasses the work product of a non-party. <u>See</u> <u>United States v. AT&T Co.</u>, 642 F.2d 1285, 1301 (D.C. Cir. 1980) (permitting a third party to intervene to assert work-product protection for documents it had prepared); <u>Republic Gear Co. v. Borg – Warner Corp.</u>, 381 F.2d 551, 557 (2d Cir. 1967) (holding that <u>Hickman</u> protected nonparty work-product).

There can also be no doubt that Mr. Ring's activities are being conducted in anticipation of litigation. The whole point of the Examiner's report is to investigate whether there exist causes of action for recovery by representatives of the Chapter 11 estate. If so ordered, litigation may be brought by the Examiner. By analogy, communications and documents generated in connection with a corporation's internal legal investigations are routinely held to satisfy the anticipation-of-litigation requirement. <u>See</u>, <u>e.g.</u>, <u>Upjohn Co. v. United States</u> 449 U.S. 383, 399 (1981). There can be no doubt that an investigation ordered by the Bankruptcy Court meets this requirement.

While the <u>Hickman</u> Court was called to rule on documents and tangible things, the <u>Hickman</u> doctrine also clearly extends to unwritten materials. The Court held that attempts to secure "personal recollections" prepared by counsel, without any necessity or justification, were prohibited. <u>Hickman</u>, 329 U.S. at 510. If Mr. Ring were to be subjected to a deposition, he would be asked about his recollection of numerous witness interviews. Mr. Ring could only recount those items that he analyzed and deemed significant enough to remember. Thus, when recounted, the underlying information would be opinion work-product, as it would be strained

through Mr. Ring's mental processes, perceptions and evaluations. For just this reason, courts have included intangibles within the category of opinion work-product. See In re Grand Jury Subpoena Dated November 8, 1979, 622 F.2d 933, 935 (6th Cir. 1980) (defining work-product as "the tangible and intangible material which reflects an attorney's efforts at investigating and preparing a case, including one's pattern of investigation, assembling of information, determination of relevant facts, preparation of legal theories, planning of strategy, and recording of mental impressions").

There has been some argument from Gary Gitto's counsel that the work product protection was somehow waived when Mr. Ring had discussions with representatives of the Government or of LaSalle. This argument is wrong. To begin with, the Bankruptcy Court expected and understood that the Examiner would, as part of the investigation, exchange factual information with various authorities.[3] Certainly some information is being exchanged among the Government, LaSalle, the Committee and the Examiner. "[B]ecause the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the disclosure to a third party." In re Grand Jury Subpoena, 220 F.3d 406, 409 (5th Cir. 2000). See AT&T Co., 642 F.2d at 1299; In re Sealed Case, 676 F.2d 793, 818 (D.C. Cir. 1982). Waiver results only when the law firm shows indifference to protecting a strategy. See Chubb Integrated Sys., Ltd v. National Bank of Wilmington, 103 F.R.D. 52, 63 (D. D.C. 1984); In re Sealed Case, 676 F.2d at 818 (D.C. Cir. 1982). Such indifference is most often demonstrated when a lawyer discloses material knowing that it is likely to be seen by an adversary. In re Subpoenas Duces Tecum, 738 F.2d 1367, 1371 (D.C. Cir. 1984) (work-product protection lost when materials provided to adversary); Shulton, Inc. v. Optel Corp., No. 85-2925, 1987 WL 19491 (D.N.J. Nov. 4, 1987); 4 JAMES WM. MOORE

_____
[3] Indeed, 18 U.S.C. § 3057 (2004) requires reporting pertinent information to federal law enforcement authorities.

ET AL., MOORE'S FEDERAL PRACTICE ¶ 26.64[4] (2d ed. 1991); 8 C. WRIGHT & A. MILLER,

FEDERAL PRACTICE & PROCEDURE § 2024 AT 210 (1970) (disclosure to third party does not

waive work-product protection unless "it has substantially increased the opportunities for

potential adversaries to obtain the information"). No such disclosure to an adversary has

occurred here.

## II.    GARY GITTO DOES NOT HAVE ANY BONA FIDE NEED TO TAKE DISCOVERY OF THE BANKRUPTCY EXAMINER.

Plaintiff LaSalle sought expedited discovery, on a limited basis, so that it could prepare

its case for a preliminary injunction. Docket No. 49 ("Emergency Motion For Limited Expedited

Discovery"), filed November 1, 2004. Defendant Gary Gitto assented to expedited discovery,

again on a limited basis, so that he could prepare his case in opposition to the preliminary

injunction. Docket No. 52, filed November 4, 2004, at page 1 ("Defendant Gary C. Gitto does

not object to plaintiff's motion for expedited discovery, so long as this Court will allow him also

to take expedited, limited discovery so that he may prepare properly for the December 10, 2004

hearing."). On November 23, this Court approved and entered a stipulation and order permitting

the parties to conduct expedited discovery for this purpose. Docket entry approving Docket No.

113.

Gary Gitto does not need discovery from the Examiner in order to prepare for the

preliminary injunction hearing. The Examiner did not author any primary source documents,

and does not have any firsthand knowledge of the facts. The Examiner, like a "civil grand jury,"

is charged with analysing the documents and interviewing the witnesses. All documents that

sources provided to the Examiner and all parties interviewed by the Examiner are available to

Mr. Gitto.[4] He should go take discovery from them.

---

[4] See footnote 2.

So why did Gary Gitto serve the Subpoenas on the Examiner?

1. Perhaps Gary Gitto is seeking to take a shortcut in discovery by taking a free ride on the work of the Examiner. That is not a proper reason to undermine the integrity of the Bankruptcy Court investigation. See Baldwin United, 46 B.R. at 316-17.

2. Perhaps Gary Gitto is seeking to impede the function of the Bankruptcy Examiner. That is not a proper purpose for conducting civil discovery.

3. Perhaps Gary Gitto is seeking to learn what the FBI does or does not know in its criminal investigation. That is not a proper purpose for conducting civil discovery.

Where a civil litigant seeks discovery from a non-party under Rule 45, the litigant has a responsibility to protect against undue burden on the non-party. FED. R. CIV. P. 45(c) ("A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena."); Heidelberg v. Tokyo Kikai Seisakusho, Ltd, 333 F.3d 38, 41-42 (1st Cir. 2003) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to *special weight* in evaluating the balance of competing interests") (emphasis added) quoting Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998). In this instance, any benefit to Gary Gitto is far outweighed by the harm to the integrity of the Bankruptcy Court's investigation. See Sec. I.A. supra.

## CONCLUSION

The policy of protecting the Bankruptcy Court's process and the work product immunity warrants quashing the Subpoenas to Messrs. Glerum and Ring -- particularly since Gary Gitto can seek all the discovery he needs from the parties to this action. This Court should quash the Subpoenas, and/or enter a protective order. This will permit the Examiner to complete, unimpeded, his investigation on behalf of the Bankruptcy Court.

Dated: November 29, 2004

Respectfully submitted,
CHARLES L. GLERUM, P.C. and CHOATE,
HALL & STEWART, as Chapter 11 Examiner

Charles L. Glerum, P.C. (BBO# 195240)
Robert M. Buchanan, Jr., P.C. (BBO# 545910)
John F. Ventola (BBO# 567972)
Lisa E. Herrington (BBO# 655678)
CHOATE, HALL & STEWART
Exchange Place
53 State Street
Boston, Massachusetts  02109
(617) 248-5000

I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED UPON THE ATTORNEY OF RECORD FOR EACH OTHER PARTY BY MAIL/HAND ON DATE 11-24-04 SIGNATURE

3773136v1