# Exhibit A



46 B.R. 314                                                                                  Page 1
46 B.R. 314, 12 Bankr.Ct.Dec. 772, Bankr. L. Rep.  P 70,272
**(Cite as: 46 B.R. 314)**

**H**
United States Bankruptcy Court, S.D. Ohio, Western
Division.

In the Matter of BALDWIN UNITED
CORPORATION, D.H. Baldwin Company, et al.,
Debtors.

**Bankruptcy No. 1-83-02495.**

Jan. 31, 1985.

Counsel for plaintiffs in securities fraud class action
brought motion seeking order requiring examiner in
Chapter 11 cases to preserve documents and other
investigative materials which came into examiner's
possession during course of his investigation into
debtors' affairs.   The Bankruptcy Court, Randall J.
Newsome, J., held that motion would be granted with
respect to documents which were not privileged, but
examiner would be ordered not to disclose any
document without approval of Bankruptcy Court or
District Court in securities fraud action.

So ordered.

See also 43 B.R. 888.

West Headnotes

**[1] Bankruptcy** ☞**3627**
51k3627 Most Cited Cases
(Formerly 51k666)
A bankruptcy examiner constitutes a court fiduciary
and is amenable to no other purpose or interested
party.

**[2] Bankruptcy** ☞**3627**
51k3627 Most Cited Cases
(Formerly 51k666)
While section of Bankruptcy Code requires an
examiner to file a "statement" of investigation, his
findings do not have binding effect on court or parties
as those of a special master, arbitrator or magistrate;
nor do they have evidentiary character of an opinion
by an expert appointed by court pursuant to Federal
Rule of Evidence.  Bankr.Code, 11 U.S.C.A. § 1106;
Fed.Rules Evid.Rule 706, 28 U.S.C.A.

**[3] Bankruptcy** ☞**3627**
51k3627 Most Cited Cases
(Formerly 51k666)

Although Bankruptcy Court would grant motion by
plaintiff in securities fraud class action pending in
United States district court for order requiring
bankruptcy examiner in Chapter 11 cases to preserve
documents and other investigative materials which
came into his possession during course of
investigation into debtors' affairs, examiner would be
required to make a list of each document in his
possession which was subject to claim of privilege
and to return such documents;  moreover, examiner
would be ordered not to disclose any document or
item in his possession without approval of
bankruptcy court or district court.  Bankr.Code, 11
U.S.C.A., § 1101 et seq.
**\*314** Robert J. White, Linda Smith, O'Melveny &
Myers, Los Angeles, Cal., for debtors.

David C. Greer, Bieser, Greer & Landis, Dayton,
Ohio, for Examiner.

Gene Mesh, Cincinnati, Ohio, for the *Stoller*
plaintiffs.

ORDER

RANDALL J. NEWSOME, Bankruptcy Judge.

These Chapter 11 cases are before the Court
pursuant to a motion filed by Gene Mesh, counsel for
the plaintiffs in *Stoller v. Baldwin-United
Corporation, et al,* Civil Action No. C-1-82-1438, a
securities fraud class action pending in the United
States District Court for the Southern District of
Ohio, Western Division.  This motion seeks an order
from this Court requiring the Court-appointed
Examiner in these cases, Mr. David Greer, to
preserve documents and other investigative materials
which have come into his possession during the
course of his investigation into the Debtors' affairs.
Memoranda in opposition to this motion have been
filed by O'Melveny & Myers, bankruptcy counsel for
the Debtors, and by Frost & Jacobs, special counsel
for the Debtors.   Mr. Greer has also filed comments
and suggestions regarding this motion.

A review of the events which led to the appointment
of the Examiner and the tailoring of the scope of his
assignment is necessary to put this motion into its
appropriate context.

**\*315** On September 29, 1983, counsel for the *Stoller*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

plaintiffs filed a motion in this Court seeking the appointment of an equity security holders' committee and the appointment of Gene Mesh as Examiner pursuant to 11 U.S.C. § 1104. The proposed duties of the Examiner were to identify any "fraud, dishonesty, incompetence, misconduct, mismanagement or irregularity in the management of the affairs of the Debtors ... during the period beginning December 14, 1981" through the filing of these Chapter 11 proceedings. Official Court File ("OFC"), Document 40.

This motion was first discussed at the October 17, 1983 status conference in these cases. The Debtors and other parties indicated a need for further consideration of the appropriate scope of the examiner's duties. The Court denied Mesh's motion to the extent that he sought to have himself appointed Examiner, citing serious conflict of interest questions. While the Court indicated its intention of appointing an Examiner, all parties were given 20 days in which to file memoranda regarding the appropriate scope of the examiner's duties and suggestions as to who the Examiner should be. October 17, 1983 Tr. 92-107.

The subject of the Examiner and his duties was again discussed at the November 11, 1983 status conference. Having received no nominations for the position, the Court announced its decision to appoint Greer as Examiner. The Debtors had tendered a draft of a proposed order appointing the Examiner and detailing his duties on November 10. Being advised that additional time was needed to finalize this order, all parties were given an additional 30 days to submit memoranda on the question. November 11, 1983 Tr. 1-10.

On November 21, 1983 the Debtors served all parties on the most recent master service list in these cases with a proposed order upon which the Debtors and creditors' committees had agreed. The Court's records indicate that Mesh was among those served. OCF, Document 212. That order limited the Examiner's duties to those originally envisioned by Mesh and this Court. It also contained the following language:

ORDERED, that the Debtors shall grant the Examiner access to all information, (including documents) in the possession of or under the control of the Debtors which, in the judgment of the Examiner, is relevant to his investigation of the matters set forth above. For the limited purpose of performing his duties pursuant to Sections 1106(b) and 1106(a)(3) and (a)(4) of the Bankruptcy Code,

the Examiner shall have the same rights with respect to privilege as a trustee appointed under the Bankruptcy Code, and such access shall not be deemed to be disclosure to a third party or a waiver of any privilege or right by the Debtors; and it is further

ORDERED, that except as otherwise ordered by the Court after notice and a hearing, the Examiner shall not disclose the contents of any privileged document to any third party, except as the Examiner determines such disclosure is necessary in his statement of investigation required pursuant to § 1106(a)(4) of the Bankruptcy Code. Such disclosure shall not be deemed to be a waiver of any privilege or right of the Debtors; and it is further

ORDERED, that except as otherwise ordered by the Court after notice and a hearing, nothing contained herein shall require the Examiner to disclose to any person the Examiner's statement of investigation, or any part thereof, prior to filing such statement pursuant to Section 1106(a)(4) of the Bankruptcy Code. Except as otherwise ordered by the Court after notice and a hearing, the Examiner shall not be required to disclose to any person, other than the Debtors, the Securities and Exchange Commission and any official committee of creditors or equity security holders appointed in these cases, the information reviewed in connection with his investigation; ...

No objections to this proposed order were filed by the *Stoller* plaintiffs or anyone else; nor were any objections raised at *316 the December 14, 1983 status conference. With only one minor modification, the proposed order was adopted and signed by the Court during that conference. December 14, 1983 Tr. 20-21; OCF, Document 250.

While the Court intentionally avoided any inquiry into the specific details of Greer's investigation over the ensuing months, we are aware that he and his staff reviewed many documents in the possession or control of the Debtors and other third parties. The Examiner was given free access to these documents in reliance upon his assurances that the order appointing him and his status as an investigatory arm of this Court would serve to shield them from disclosure to others and from the threat of waiving any applicable privilege. While the task assigned to the Examiner was colossal enough, we are confident that it would have been even more difficult, if not impossible, had he been denied access to documents for lack of such assurances. We also do not doubt that his January 14, 1985 report and "snapshot"

Case 1:04-cv-12227-DPW   Document 134   Filed 11/29/2004   Page 4 of 32

46 B.R. 314                                                                                          Page 3
46 B.R. 314, 12 Bankr.Ct.Dec. 772, Bankr. L. Rep. P 70,272
(Cite as: 46 B.R. 314)

chronology of events could not have been prepared in such a superior fashion without complete and total access to information in the hands of third parties.

While counsel for the *Stoller* plaintiffs has assured this Court that the present motion seeks only a preservation of the documents presently in the Examiner's possession, their motion, as well as statements made to the District Court during a pretrial conference in the *Stoller* action, leave little doubt that they will at some point seek to require the Examiner to turn over some or all of the documents and other information which he has obtained through his investigation, notwithstanding this Court's December 14, 1983 Order, and notwithstanding their failure to object to that Order.

We are not unsympathetic to the *Stoller* plaintiffs' desire to fulfill their discovery needs through the least burdensome and least expensive means possible. Certainly the Examiner's file drawers offer a most enticing alternative to the long and bloody battles which plaintiffs' counsel often face in the discovery phase of securities litigation. However, while we have always hoped that the Examiner's report and chronology would provide a useful tool for all parties in the many proceedings pending against the Debtors, we never contemplated, nor in our opinion does the Bankruptcy Code contemplate, that the Examiner act as a conduit of information to fuel the litigation fires of third-party litigants. The prospect of an Examiner being required to indiscriminately produce investigative materials obtained through promises of confidentiality and reliance upon this Court's orders raises grave concerns touching both the integrity of the Bankruptcy Court's processes, as well as the integrity of the statutory position of the Examiner.

[1] These concerns are highlighted by the unique nature of the position itself. An Examiner's legal status is unlike that of any other court-appointed officer which comes to mind. He is first and foremost disinterested and nonadversarial. The benefits of his investigative efforts flow solely to the debtor and to its creditors and shareholders, but he answers solely to the Court. As was noted in *In re Hamiel & Sons, Inc.,* 20 B.R. 830, 832 (Bankr.S.D. Ohio 1982), an examiner "constitutes a Court fiduciary and is amenable to no other purpose or interested party."

[2] While § 1106 requires the Examiner to file a "statement" of his investigation, his findings do not have the binding effect on the Court or parties of those of a special master, arbitrator or magistrate;

nor do they have the evidentiary character of an opinion by a Court expert appointed pursuant to Rule 706 of the Federal Rules of Evidence. An Examiner performs the investigative duties of a trustee, and may perform other trustee duties as the Court directs, but he stands on a different legal footing than a trustee. This is borne out inferentially at least by § 1109, which fails to include Examiners in the list of parties in interest who "may appear and be heard on any issue in any case under this Chapter."

The Examiner in this case has aptly characterized his duties as comparable to that *317 of a "civil grand jury ... to ascertain legitimate areas of recovery and appropriate targets for recovery." OFC, Document 1453 at 4. If Examiners in other cases are to perform these "civil grand jury" functions effectively, and if their nonadversarial role is to be maintained, they and the subjects of their investigation must be unhampered by the threat that any information which comes into the Examiner's hands will be fair game for a plethora of anxious litigants, regardless of the limitations on disclosure which the Bankruptcy Court has imposed. Even absent such limitations on disclosure, we believe that the Examiner, as a nonparty to any proceeding and a nonadversarial officer of the Court, is entitled to some immunity from the whirlwind of litigation commonly attendant to large Chapter 11 cases.

The issue of disclosure of the Examiner's investigative materials is not presently before this Court, and may never be before this Court. We suspect that the District Court will have the thoroughly unenviable task of deciding this issue as the *Stoller* case progresses. Until instructed otherwise, however, this Court intends to follow and enforce the terms of its Order of December 14, 1983.

[3] To insure that the decision-making processes of the District Court are not compromised, the Court hereby issues the following ORDER pending further proceedings which may transpire on the issues raised herein:

1. The Examiner shall maintain and preserve all documents and other materials received or generated by him during his investigation which are not subject to a claim of privilege by any person or entity, pending further Order of this Court or the United States District Court for the Southern District of Ohio.

2. The Examiner shall make a list of each and every document or other item in his possession which is

46 B.R. 314
46 B.R. 314, 12 Bankr.Ct.Dec. 772, Bankr. L. Rep. P 70,272
**(Cite as: 46 B.R. 314)**

subject to a claim of privilege by another person or entity, and shall briefly summarize and/or describe the contents of each such document or item. Documents or items which came into the Examiner's possession from such person or entity, and which are subject to a claim of privilege, shall be returned to that person or entity.

3. The Examiner shall not disclose, identify, or produce any document or item in his possession which was obtained or generated pursuant to or in connection with his investigation in these cases to any other person or entity without the approval of this Court or the United States District Court for the Southern District of Ohio.    This prohibition shall extend to the list and summary of privileged documents to be prepared by the Examiner.

IT IS SO ORDERED.

46 B.R. 314, 12 Bankr.Ct.Dec. 772, Bankr. L. Rep. P 70,272

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

# Exhibit B

Westlaw.

1987 WL 9033                                         Page 1
1987 WL 9033 (D.D.C.)
**(Cite as: 1987 WL 9033 (D.D.C.))**

**H**
Only the Westlaw citation is currently available.

United States District Court, District of Columbia.

VIETNAM VETERANS FOUNDATION, et al.,
Plaintiffs,
v.
Ellis E. ERDMAN, et al., Defendants.
VIETNAM VETERANS FOUNDATION, et al.,
Plaintiffs,
v.
Thomas H. WALL, et al., Defendants.

**Civ. A. No. 84-0940.**

March 19, 1987.

On Motion to Disqualify Expert Witness

JOYCE HENS GREEN, District Judge.

*1 This Order disposes of two of the pending pretrial motions before the Court: (1) defendants Wall, Campbell, and Dow, Lohnes & Albertson's (collectively "DLA") motion for release of personnel and military records, and (2) DLA's motion to disqualify Bankruptcy Examiner Bert Ely as an expert witness. For the reasons set forth below, the first motion is denied and the second motion is granted in part and denied in part.

*I. Release of Personnel and Military Records*

The parties agree that plaintiffs have put their reputations at issue in this case. DLA claims that plaintiffs' military and personnel records bear upon the issue of plaintiffs' reputations and asks that the Court order the U.S. Government to produce these records. Plaintiffs object, however, on the grounds of untimeliness, relevancy, and privacy.

Discovery in this case ended on September 30, 1986. The final pretrial conference has already been held. Exhibit lists have been exchanged. At no time at the pretrial conference, or until the instant motion, did DLA suggest the need for any such exhibits, even though the complaint, alleging damage to plaintiffs' personal reputations, has been filed since 1984.

Thus, DLA's request filed February 10, 1987, is untimely. The military and personnel records sought by DLA have not been shown to be so critical as to persuade the Court to override the discovery cutoff in this case, nor is there any justification for this months'-late request. Accordingly, DLA's motion to order the release of certain military and personnel records is hereby denied.

*II. Disqualification of Bankruptcy Examiner Bert Ely as Expert Witness*

Plaintiffs have identified as an expert witness Bert Ely, who was the bankruptcy examiner in *In re VVF Communications Corp.*, No. 82-0365 (Bankr.D.D.C.1982). In plaintiffs' Supplemental Response to Interrogatory No. 127 they proffer:

1. Bert Ely will testify at trial on his findings and conclusions of his September 22, 1982 report to the Bankruptcy Court regarding VVFCC. (*In re VVF Communications Corp.*, No. 82-0365 (Bankr.D.D.C.)). Mr. Ely's testimony will highlight or focus on his conclusions that:

a) the purported sale of assets of WTKO, including the change of name and control from Ivy Broadcasting Co. to VVFCC, and the creation of VVFCC, was a fraud and a sham;

b) Ellis Erdman was the principal architect and perpetrator of the fraud;

c) Dow, Lohnes & Albertson either knew of the fraud, were in a position from which they should have known of the fraud, or acted in reckless disregard of the fraud and failed to make disclosures to the lending institutions and to the plaintiffs which would have revealed the fraud and generally acted, in connection with the fraud, with callous indifference to the rights and interests of plaintiffs;

d) Dow, Lohnes & Albertson participated in or promoted Erdman's misrepresentation of the nature and substance of the purported sale;

e) The quality of the preparation of legal documents necessary for the purported closing was below that which was usual, customary or acceptable for this type of business transaction;

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

**\*2** f) Under the true financial condition of WTKO, WTKO could not possibly have sustained the debt service of the Chemical and Allied loans because of the undisclosed payoff of the pre-existing indebtedness.

DLA's motion raises three separate questions: whether Ely should be allowed to testify as to (1) the findings and conclusions contained in his report to the bankruptcy court; (2) conclusions and findings not contained in his report, but based on information he obtained during the course of his investigation as an examiner in the VVFCC bankruptcy proceedings; and (3) other opinions or conclusions not based on his investigation or the report.

The framework for analyzing these questions is found in the Federal Rules of Evidence. On the one hand, the rules state the general presumption that "[e]very person is competent to be a witness except as otherwise provided in these rules." Fed.R.Evid. 601. On the other hand, the rules also make clear that, for a variety of reasons, this presumption does not apply in certain circumstances to judges. Specifically, judges are excluded from testifying as witnesses at the same trials over which they preside. Fed.R.Evid. 605.

Under the Bankruptcy Code, a bankruptcy court has the power to appoint an examiner "to conduct such an investigation of the debtor as is appropriate." 11 U.S.C. § 1104; see also 11 U.S.C. § 1106. A bankruptcy examiner is clothed by the statute with judicial powers; he acts at the behest of the federal bankruptcy court. Matter of Baldwin United Corp., 46 Bankr. 314, 316 (Bankr.S.D.Ohio 1985) (bankruptcy examiner "answers solely to the court" and "constitutes a Court fiduciary" (citing Matter of Hamiel & Sons, Inc., 20 Bankr. 830, 832 (Bankr.S.D.Ohio 1982)). The role of a bankruptcy examiner has been likened to that of a "civil grand jury." Baldwin, 46 Bankr. at 316-17.

The integrity of the judicial process is directly threatened when litigators are allowed to question directly a court officer about the reasoning behind his official actions, thus courts have prohibited such examination. See, e.g., United States v. Morgan, 313 U.S. 409 (1941) (Secretary of Agriculture); Standard Packaging Corp. v. Curwood, Inc., 365 F.Supp. 134, 137 (N.D.Ill.1973) (patent examiner); Wood v. General Teamsters Union, Local 406, 583 F.Supp. 1471, 1474 (W.D.Mich.1984) (arbitrator). The fact that Ely will testify voluntarily in no way lessens the threat to the integrity of the judicial process.

Ely owes a continuing fiduciary responsibility to the bankruptcy court for which he served and that the fruits of his investigation in the Vietnam Veterans Foundation Communications Corp. ("VVFCC") bankruptcy proceedings are "amenable to no other purpose or interested party." Hamiel, 20 Bankr. at 832. Ely obtained testimony, documents, and other information through his court-appointed powers, and thus it cannot serve as the basis for his proffered testimony. As the bankruptcy court in Baldwin explained, "the Bankruptcy Code [does not] contemplate [ ] that the Examiner act as a conduit of information to fuel the litigation fires of third-party litigants." 46 Bankr. at 316. A contrary rule would allow the parties to use a bankruptcy examiner as a discovery short-cut and would only invite further demands on such officers, potentially leading to substantial encroachments on judicial integrity and efficiency. See id.

**\*3** The third question posed by DLA's motion is whether Ely may testify as an expert witness on matters outside the direct scope of his report. Merely because a proposed expert witness has previously acted at the request of a court and was clothed with some judicial powers does not automatically disqualify her from testifying in a later or unrelated trial. United States v. Cross, 516 F.Supp. 700, 707 (M.D.Ga.1981), reversed on other grounds, 708 F.2d 631 (11th Cir.1983), vacated, 104 S.Ct. 3580, on remand, 742 F.2d 1279 (11th Cir.1984) (reinstating original district court opinion). Even judges have been both allowed and compelled to testify as lay and expert witnesses in later litigation. See, e.g., Jade Square & Tower Ltd. v. C.I.T. Corp., 448 N.Y.S.2d 194, 195-96 (N.Y.App.1982) (judicial immunity doctrine does not protect judge from testifying regarding settlement issues not in case before him); Commonwealth of Kentucky, Department of Highways v. Hess, 420 S.W.2d 660, 661-62 (Ky.1967) (held admissible testimony of judge as valuation witness in later trial where his duties in earlier case were purely mechanical); but see Merritt v. Reserve Insurance Co., 110 Cal.Rptr. 511, 527-28 (Cal.App.1973) (judge's expert testimony in later case involving same parties held inadmissible because it created an appearance of impropriety and was prejudicial to other party).

Accordingly, should plaintiffs persist in their present inclination to call Bankruptcy Examiner Bert Ely as an expert, then (1) he shall not be allowed to testify as to the findings and conclusions contained in his

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

report to the Bankruptcy Court, although the report itself, if relevant, may well be admissible, (2) he shall not be allowed to testify based on information obtained during the course of his investigation as an examiner in the VVFCC bankruptcy proceedings; but (3) he may testify as to opinions and conclusions *not* based on the investigation he conducted or the report he produced in the VVFCC bankruptcy proceedings. The parties may propose and request, of course, jury instructions relating to the proper weight to be given to Ely's testimony.

IT IS SO ORDERED.

### On Motion for Reconsideration

Defendants Wall, Campbell, and Dow, Lohnes & Albertson, now move for reconsideration of the Court's Order of January 24, 1986, which granted plaintiffs' motion for consolidation but explicitly allowed the parties to request reconsideration of the Order once discovery and status/settlement conferences were concluded.

Upon consideration of the motion of defendants Wall, Campbell, and Dow, Lohnes & Albertson, requesting reconsideration of the consolidation of the two above-captioned cases, plaintiffs' opposition thereto, and the entire record on this matter, it is,

ORDERED that defendants' motion is denied and that Civil Action No. 84-0940 shall continue to be consolidated with Civil Action No. 84-2882.

### On Motion to Disclose Settlement Agreement

Defendants Thomas H. Wall, Alan C. Campbell, and Dow, Lohnes & Albertson (collectively "DLA") move to disclose the settlement agreement between plaintiffs and Edward Wetter and Edward Wetter & Co. (collectively "Wetter").

*4 On October 15, 1986, DLA and Wetter filed separate motions for partial summary judgment. Plaintiffs opposed DLA's motion on November 13, 1986. On December 3, 1986, the Court ordered plaintiffs to advise no later than December 11, 1986, "whether the opposition to DLA's partial summary judgment motion is intended to serve also as an opposition to the Wetter motion for summary judgment and, if so, specifically where therein such references are made. Failure to timely respond will result in the prompt granting of that unopposed motion." *See* Order of Dec. 5, 1986, at 2.

Plaintiffs' counsel advised the Court by letter on December 11, 1986, that

plaintiffs and the Wetter defendants have agreed in principal [sic] to a settlement of the claims in this litigation. A formal settlement agreement will be filed shortly. As part of that agreement, the Wetter defendants will withdraw their motion for summary judgment and, therefore, no response need by filed by plaintiffs. No reply to the summary judgment motion was filed because a settlement in principal [sic] was reached prior to the date plaintiffs' reply was due.

Letter from Michael D. Hausfeld to the Court, Dec. 11, 1986.

On December 19, 1986, counsel for Wetter filed a motion requesting that the settlement agreement be filed with the Court under seal and *ex parte*. The Magistrate denied Wetter's motion, stating

for Court purposes the parties need only file a praecipe of dismissal with prejudice signed by all parties designating the particular parties and/or particular claims involved in the dismissal, and ... it is not necessary, for Court purposes, for the parties to file a settlement agreement (See Rule 41(a)(1) Federal Rules of Civil Procedure)....

Order of Magistrate, Jan. 6, 1987.

On January 21, 1987, plaintiffs filed with the Court a praecipe simply stating that they "agree to dismiss defendants Edward Wetter and Edward Wetter & Co., Inc. with prejudice...." The praecipe was signed only by Michael D. Hausfeld, counsel for plaintiffs.

Having not yet received the praecipe due to a routing error, the Court ordered on January 27, 1987, that, being advised on two separate occasions that plaintiffs had settled with Wetter, the case was dismissed against Wetter for 20 days without prejudice, and failing reopening within that time, the dismissal would be with prejudice. *See* Order of Jan. 27, 1987.

An important issue raised by DLA's motion to disclose is whether the praecipe of dismissal by plaintiffs against Wetter filed January 21, 1987 is valid. Federal Rule of Civil Procedure 41 provides two avenues for a plaintiff to dismiss an action against a defendant upon settlement after that defendant has filed an answer: (1) "by filing a stipulation of dismissal signed by *all* parties who

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1987 WL 9033                                                          Page 4
1987 WL 9033 (D.D.C.)
**(Cite as: 1987 WL 9033 (D.D.C.))**

have appeared in the action," Fed.R.Civ.P. 41(a)(1)(ii) (emphasis added); or (2) by order of the court "upon such terms and conditions as the court deems proper." Id. 41(a)(2). In dismissing Wetter, plaintiffs did not seek Court approval, and instead filed a praecipe of dismissal. As Federal Rule 41 requires, and the Magistrate's Order of January 6, 1987 pointed out, however, such a dismissal must be signed by all parties. It was not so signed, nor did it designate the particular claims involved in the dismissal. Federal Rule 41 has such a requirement (or, in the alternative, requires the moving party to seek court approval) to avoid the type of post-settlement uncertainty and challenge that is presented by DLA's motion to disclose. At this juncture, however, Edward Wetter and Edward Wetter & Co. stand dismissed as defendants as a result of the Court's January 27, 1987 Order.

*5 In light of the motion to disclose, the opposition thereto, and the present record, there appears no reason to grant the motion and disclose the settlement agreement directly to DLA. Nonetheless, it does appear that in camera inspection of the settlement agreement is warranted. The Court has been proceeding on the assumption that there has been a full and final settlement of all claims, including the counterclaim, by and between plaintiffs and Wetter. Neither plaintiffs nor Wetter have, however, assured the Court that the settlement does encompass dismissal of the counterclaim. And, while it is obvious from the progress of this cause, the escalation of pleadings, and the instant opposition, that plaintiffs are pursuing their claims against DLA, it is important to future proceedings for the Court to know the terms and conditions of the settlement agreement, specifically, whether it encompasses dismissal of Wetter's counterclaim and how, if at all, the agreement impacts on DLA.

Accordingly, it is hereby ordered that plaintiffs shall file on or before March 24, 1987, under seal, for in camera inspection, their settlement agreement with Edward Wetter and Edward Wetter & Co.

IT IS SO ORDERED.

1987 WL 9033 (D.D.C.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

# Exhibit C

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In *re*: | ) | |
| | ) | |
| **GITTO/GLOBAL CORP.** | ) | **Chapter 11** |
| | ) | **Case No. 04-45386-JBR** |
| | ) | |
| **Debtor** | ) | |
| | ) | |

**MOTION OF THE UNITED STATES TRUSTEE**
**TO APPOINT A CHAPTER 11 TRUSTEE**

**(Expedited Determination Requested)**

Pursuant to 28 U.S.C. §586(a)(3)(G), and 11 U.S.C. §§1104(a), the United States Trustee ("UST") hereby requests that this Court enter an order appointing a Chapter 11 Trustee. As grounds for appointment of a Chapter 11 trustee, the UST states:

1. Gitto/Global Corporation, ("Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on September 24, 2004.

2. The Debtor is an ISO 9001 certified premier compounder of specialty polyvinyl chloride, polyethylene, polypropylene, styrenic and thermoplastic olefin compounds based in Lunenburg Massachusetts. The Debtor's products have been used in the telecommunications, footwear, automotive, electrical, aerospace, construction and petrochemical industries.

3. To date, the Debtor has not filed either Schedules of Assets and Liabilities or a Statement of Financial Affairs.

4. Upon information and belief, the UST states that on or about September 17, 2004, one

1

week before the filing, the Debtor ceased operations and its officers resigned. It appears that the entire board of directors also resigned on that date. Before doing so, the board members authorized Thomas Doherty of the consulting firm Argus Management Corporation to be installed as the company's Chief Restructuring Officer ("CRO").

5. On September 27, 2004, the Debtor filed an Emergency Motion Authorizing the Debtor to Obtain Post-Petition Financing. Attached to the motion was the Affidavit of Thomas Doherty, CRO of the Debtor ("Affidavit"). In his affidavit, Mr. Doherty alleges, among other things, that the Debtor "had likely participated in significant questionable business practices and accounting irregularities." See ¶ 5 of Affidavit, a copy of which is attached.

6. Mr Doherty further stated that "the Debtor's financial statements suggested a business generating more than $100,000,000.00 in annual revenues. A preliminary review of the business indicates that actual annual revenues are more likely to be in the range of $30,000,000.00 to $40,000,000.00. While I have not yet endeavored to examine the Debtor's books and records in detail, the Debtor apparently projected the greater financial performance through fictitious sales, inflated asset base, and obtaining the benefits of float being provided by various financial institutions. The Debtor's records appear to indicate that the questionable conduct has been in existence for several years." See ¶ 6 of Affidavit.

7. Mr. Doherty further alleged in the Affidavit that "[a]pparently the Debtor utilized an affiliate (Kingsdale Corporation) as an agent for the disbursement of funds to fictitious vendors and the collection of accounts receivable from questionable sources. Kingsdale utilized Clinton Savings Bank ("Clinton") as its financial institution. Monies deposited by Kingsdale into Clinton were transferred by Clinton to the Debtor's control account at Fleet Bank ("Fleet"). Both Clinton and Fleet allowed the Debtor to draw on uncollected funds." See ¶ 10 of the Affidavit.

8. Clinton is apparently owed about $3,000,000.00 and Fleet is owed about $4,000,000.00 because the Debtor and Kingsdale were able to draw upon the uncollected funds

without having to make good on such funds.

9. The Debtor owes about $28,000,000.00 to Lasalle Business Credit, Inc. ("Lasalle"), its primary pre-petition lender, approximately $7,000,000.00 to certain equipment financiers and about $12,000,000.00 to general unsecured creditors.

10. On October 1, 2004, the United States Trustee conducted an organizational meeting of the 20 largest unsecured creditors at which the CRO, Mr. Thomas Doherty, appeared on behalf of the Debtor. At that meeting, the CRO testified that the Debtor had utilized what appeared to be "two sets of books" in its day to day operation of its business. He further alluded to other unorthodox business practices on the part of the Debtor, including wages and salaries paid to numerous absentee family members of the Debtor's former management, non-advantageous business relationships and the existence of fictitious accounts.

11. On or about October 4, 2004, the Debtor filed, among other things, applications to employ Mr. Doherty as CRO, and his firm, Argus Management, as the Debtor's financial advisor. Included in each of the applications is a list of the services to be rendered by these professionals. These services relate primarily to the restarting and sale of the Debtor's business. See, e.g., ¶ 13 of the Application to employ Mr. Doherty.

12. Pursuant to 11 U.S.C. § 1104(a), [a]t any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States Trustee, and after notice and a hearing, the Court shall order the appointment of a trustee – (2) if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor. 11 U.S.C. § 1104(a)(2).

13. The United States Trustee submits that the appointment of a trustee is in the interest of the creditors in this case. As noted above, the primary function of the proposed CRO is to

3

maximize the amount of any sale of the Debtor's business. Presumably, the primary beneficiary of this activity will be the secured creditor, in this case Lasalle. The UST does not dispute that Mr. Doherty and Argus Management are well known and highly experienced in working with troubled companies. However, the applications seeking their retention contemplate that they operate the business on a going forward basis for the purpose of selling the company. These retention terms do not include an investigation into the likely fraudulent pre-petition activities of the Debtor and its principals, which the United States Trustee argues would be better performed by a Chapter 11 Trustee whose services may also assist the CRO in performing his duties.

14. Given the serious allegations of financial misconduct involved in this case, the UST submits that a thorough investigation by a chapter 11 trustee of the Debtor's pre-petition conduct and activity is warranted. A chapter 11 trustee should be appointed to preserve and review the Debtor's files, to prevent former officers and principals from gaining access to the Debtor's files for their own purposes, and to oversee any forensic review of the Debtor's books and records to determine, among other things, whether there are any possible avenues of recovery such as avoidance actions that may benefit all creditors, including general unsecured creditors. See 11 U.S.C. § 1106(a)(3).

15. Further, if the Court does not order the appointment of a trustee, then the UST requests that the Court order the appointment of an examiner. Pursuant to 11 U.S.C. § 1104(c), the Court shall order the appointment of an examiner to conduct any appropriate investigation of allegations of fraud or dishonesty if the appointment is in the interests of creditors or if the Debtor's fixed, liquidated unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.00.

16. The UST asserts that the facts and circumstances of this case, including that former management: listed fictitious sales; inflated the asset base of the company; maintained "two sets of books;" inflated the gross revenues of the company, and obtained the benefits of float being provided by various financial institutions – amply demonstrate that the appointment of a chapter

11 trustee is warranted to investigate any acts of fraud, dishonesty or financial and management irregularities on the part of the Debtor and its former officers.  If the court does not order the appointment of a trustee, however, then the UST requests that the Court order the appointment of an examiner.

WHEREFORE, the United States Trustee respectfully requests that this Court enter an order:

1. Appointing a Chapter 11 Trustee, or, in the alternative, the Appointing an Examiner; and,

2. Granting all other relief as is just and proper.

Respectfully submitted,

Phoebe Morse
United States Trustee, Region 1

BY:  /s/ Richard King

Richard King, Esq. (BBO #549382)
Assistant United States Trustee
United States Department of Justice
Office of the United States Trustee
446 Main Street, 14th floor
Worcester, MA 01608
(508) 793-0555 (telephone)
(508) 793-0558 (fax)
Richard.T.King@USDOJ.gov (E-mail)

Date: October 7, 2004

5

# Exhibit D

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | |
| | ) | Chapter 11 |
| GITTO GLOBAL CORPORATION, | ) | Case No. 04-45386-JBR |
| | ) | |
| Debtor. | ) | |

**ORDER ON MOTION OF THE UNITED STATES
TRUSTEE TO APPOINT A CHAPTER 11
TRUSTEE, OR, IN THE ALTERNATIVE, TO APPOINT AN
EXAMINER PURSUANT TO 11 U.S.C. § 1104(c)(2)**

The *Motion of the United States Trustee to Appoint a Chapter 11 Trustee, or, in the Alternative, to Appoint an Examiner Pursuant to 11 U.S.C. § 1104(c)(2)* (the "Motion"), and the objections to the Motion of, among others, Gitto Global Corporation (the "Debtor") and the Official Committee of Unsecured Creditors (the "Committee") (the "Objections"), having come before the Court, due notice and an opportunity to be heard having been given, the Court having heard the arguments and representations of counsel in attendance at the hearing on the Motion and the Objections, and no parties having alleged the existence of any fraud, dishonesty, incompetence, or gross mismanagement of the Debtor by its present management, it is hereby

**FOUND** the appointment of an examiner in the Debtor's case pursuant to 11 U.S.C. § 1104(c)(1) is in the interests of the Debtor's creditors, and other interests of the Debtor's estate; and it is therefore

**ORDERED** that the Office of the United States Trustee (the "UST") shall, after consultation with counsel to the Debtor, the Committee, and LaSalle Business Credit, Inc., appoint, subject to the Court's approval, an examiner in the Debtor's case (the "Examiner"); and it is further

**ORDERED** that the Examiner shall immediately begin an investigation into the existence of any prepetition fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management and business affairs of the Debtor; and it is further

**ORDERED**, that as soon as practicable, but in any event not later than forty-five (45) days from the date of the entry of an order by the Court approving the appointment of the same, the Examiner shall file a statement with the Court, and transmit a copy of the same to the UST, the Debtor, and the respective counsel to the Debtor, the Committee, and LaSalle Business Credit, Inc., reporting the preliminary or final findings of the Examiner, along with any recommendations of the Examiner for further investigation; and it is further

**ORDERED**, that the Debtor shall cooperate with the Examiner, and to the extent such cooperation would require the Debtor to disclose material and information that may be protected by the attorney client privilege, the Debtor may disclose to the Examiner such material and information, which disclosure by the Debtor of such material and information shall not constitute a general waiver of the attorney client privilege, but rather shall constitute only a waiver as to the specific material and information so disclosed.

**SO ORDERED.**

10/19/04

_Joel B. Rosenthal_
Joel B. Rosenthal
United States Bankruptcy Judge

2

# Exhibit E

*United States Bankruptcy Court*
*District of Massachusetts*

IN RE

                            :       CHAPTER 11

GITTO/GLOBAL CORP.,        :       CASE 04-45386

DEBTOR                        :

## ORDER ALLOWING APPLICATION FOR AND CERTIFICATE OF APOINTMENT OF CHAPTER 11 EXAMINER

Following the Court's Order of October 14, 2004 [#89] that the United States

Trustee appoint an examiner, this matter came before the Court for hearing on the

Application For and Certificate of Appointment of Chapter 11 Examiner [#91], in which the

United States Trustee seeks approval of her appointment of Attorney Charles Glerum *and Choate* as

*Hall & Stewart* the examiner, and the Creditors' Committee's Objection thereto [#93].   The Committee

objects to Attorney Glerum's appointment and "to the appointment as examiner of any

professional other than a forensic accountant or investigator who is independently

qualified and able to conduct the investigation set forth in the Order."  After hearing, it is

hereby FOUND and ORDERED:

    1.  That the United States Trustee conferred with the parties in good faith in

selecting the examiner.

    2.  That Attorney Glerum is qualified to perform the duties of the examiner as set

forth in the Court's Order of October 14, 2004.

    3.  That the United States Trustee's appointment of Charles Glerum as the *and Choate Hall & Stewart*

examiner is approved under 11 U.S.C. § 1104(d).

    4.  That the examiner shall conduct an investigation and issue a report as set forth

in the Order of October 14, 2004.

# Exhibit F

## Issued by the
## UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

La Salle Business
Credit LLC
   V.   Gary C. Gitto et al

### SUBPOENA IN A CIVIL CASE

CASE NUMBER:[1]  04-12227-DPW

TO: James A. Ring
Director of Business Information Services for the Bankruptcy Examination
c/o Choate Hall & Stewart
Exchange Place, Boston, MA 02108

[ ] YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

[X] YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Stern, Shapiro, Weissberg & Garin, 90 Canal Street, Boston, MA 02114 | 12/2/04 2pm |

[X] YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Schedule A, attached hereto

| PLACE Stern, SHapiro, Weissberg & Garin LLP 90 Canal Street, Boston, MA 02114 | DATE AND TIME 12/2/04 2pm |
|---|---|

[ ] YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _Max Stern_ | 11/23/04 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Max Stern, Stern, Shapiro, Weissberg & Garin LLP, 90 Canal Street, Boston  MA 02114  617-742-5800

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

## SCHEDULE A

## DEFINITIONS

As used herein, the following terms are defined as follows:

1.  "Communication" means, without limitation, oral or written communications of any kind, such as electronic communications, e-mails, facsimiles, telephone communications, correspondence, exchanges of written or recorded information, or face-to-face meetings.

2.  "Document" means, without limitation, the original and all non-identical copies of all items subject to discovery under Rule 34 of the Federal Rules of Civil Procedure. This definition includes, without limitation, letters, correspondence, memoranda, legal pleadings, calendars, diaries, travel records, summaries, records of telephone conversations, telegrams, notes, reports, compilations, notebooks, work papers, graphs, charts, blueprints, books, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings, sketches, photographs, videotapes, audiotapes, film and sound reproductions, electronic data, e-mails, internal or external websites, videos, compact discs, computer files and disks, sales, advertising, and promotional literature, agreements, stored recordings, minutes or other records of Meetings, all written or graphic records or representations of any kind, and all mechanical or electronic data, records or representations of any kind.

3.  "Electronic data" includes, without limitation, the following:

    (a)    activity listings of electronic mail receipts and/or transmittals;

    (b)    output resulting from the use of any software program, including without limitation word processing documents, spreadsheets, database files, charts, graphs and

outlines, electronic mail, AOL Instant MessengerTm (or similar program) or bulletin board programs, operating systems, source code, PDF files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment;

(c)    any and all items stored on computer memories, hard disks, floppy disks, CDROM, magnetic tape, microfiche, or in any other vehicle for digital data storage and/or transmittal, such as, but not limited to, a personal digital assistant, Palm or Blackberry type device; and

(d)    file, folder tabs, and containers and labels appended to, or associated with, any physical storage device associated with each original and copy of all documents requested herein.

## INSTRUCTIONS

1.    In responding to the requests herein, the party being subpoenaed shall furnish all responsive documents available at the time of production and, since this is a continuing request for production of documents, shall supplement its responses whenever necessary in accordance with the requirement of Rule 26(e) of the Federal Rules of Civil Procedure.

2.    All documents shall be produced that respond to any part or clause of any paragraph of any request, regardless of whether any objection is raised as to any other part or any request.

3.    Any documents which must be removed from their original folders, binders, covers or containers in order to be produced shall be identified in a manner so as to clearly specify where such documents originated.

4.    If any responsive document contains "privileged attorney-client

communications," the producing party must produce all non-privileged portions of the document. The producing party may redact those portions of the responsive document that constitute privileged attorney-client communications in lieu of creating a privilege log; provided, however, that the material redacted does not obscure: (a) the type of document: i.e., letter, memorandum, etc.; (b) the author of the document; (c) the addressee of the document; (d) the date of the document; (e) the identity of all persons having received copies of the document, seen the document or to whom the document was disclosed: (f) and the general subject matter of the documents.

    5. If any responsive document was, but is no longer in the possession or subject to the control of the responding party, state whether it is (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of, and in each instance explain the circumstances surrounding such disposition thereof and state the date or approximate date thereof.

    6. If a document was prepared in several copies or if additional copies were thereafter made, and if any such copies were not identical or are no longer identical by reason of any notation or modification of any kind whatsoever, including without limitation notations on the front or back of any of the pages thereof, then such non-identical copy is a separate document and must be produced.

## DOCUMENT SUBPOENED

1.    All documents, communication, memorandum, notes and the like containing and/or relating to interviews of witnesses concerning the Gitto-Global bankruptcy BNAKR 3 04-45386-JBR.

# Exhibit G

## Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF __MASSACHUSETTS__

La Salle Business Credit, LLC   v.   Gary C. Gitto et al.

### SUBPOENA IN A CIVIL CASE

A SERIES OF TRUE COPIES, ATTEST

CASE NUMBER: [1]   04-12227-DPW

*Burton M. Malkofsky*

**CONSTABLE**

TO:
Charles Glerum
Choate Hall & Stewart
Exchange Place
Boston, MA 02108

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Schedule A, attached hereto.

| PLACE   Stern, Shapiro, Weissberg & Garin LLP<br>90 Canal Street, Boston, MA 02114 | DATE AND TIME<br>12/2/04  9:30am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Max D. Stern* | 11/23/04 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Max Stern, Stern, Shapiro, Weissberry & Garin LLP, 90 Canal Street, Boston, MA 02114 617-742-5800

[1]

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)
If action is pending in district other than district of issuance, state district under case number.

## PROOF OF SERVICE

| | DATE | | PLACE |
|---|---|---|---|
| SERVED | | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in

person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## DEFINITIONS

As used herein, the following terms are defined as follows:

1. "Communication" means, without limitation, oral or written communications of any kind, such as electronic communications, e-mails, facsimiles, telephone communications, correspondence, exchanges of written or recorded information, or face-to-face meetings.

2. "Document" means, without limitation, the original and all non-identical copies of all items subject to discovery under Rule 34 of the Federal Rules of Civil Procedure. This definition includes, without limitation, letters, correspondence, memoranda, legal pleadings, calendars, diaries, travel records, summaries, records of telephone conversations, telegrams, notes, reports, compilations, notebooks, work papers, graphs, charts, blueprints, books, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings, sketches, photographs, videotapes, audiotapes, film and sound reproductions, electronic data, e-mails, internal or external websites, videos, compact discs, computer files and disks, sales, advertising, and promotional literature, agreements, stored recordings, minutes or other records of Meetings, all written or graphic records or representations of any kind, and all mechanical or electronic data, records or representations of any kind.

3. "Electronic data" includes, without limitation, the following:

   (a)   activity listings of electronic mail receipts and/or transmittals;

   (b)   output resulting from the use of any software program, including without limitation word processing documents, spreadsheets, database files, charts, graphs and

outlines, electronic mail, AOL Instant MessengerTm (or similar program) or bulletin

board programs, operating systems, source code, PDF files, batch files, ASCII files, and

all miscellaneous media on which they reside and regardless of whether said electronic

data exists in an active file, a deleted file, or file fragment;

(c)    any and all items stored on computer memories, hard disks, floppy disks,

CDROM, magnetic tape, microfiche, or in any other vehicle for digital data storage

and/or transmittal, such as, but not limited to, a personal digital assistant, Palm or

Blackberry type device; and

(d)    file, folder tabs, and containers and labels appended to, or associated with,

any physical storage device associated with each original and copy of all documents

requested herein.

## INSTRUCTIONS

1.  In responding to the requests herein, the party being subpoenaed shall furnish all

responsive documents available at the time of production and, since this is a continuing

request for production of documents, shall supplement its responses whenever necessary

in accordance with the requirement of Rule 26(e) of the Federal Rules of Civil Procedure.

2.  All documents shall be produced that respond to any part or clause of any

paragraph of any request, regardless of whether any objection is raised as to any other

part or any request.

3.  Any documents which must be removed from their original folders, binders,

covers or containers in order to be produced shall be identified in a manner so as to

clearly specify where such documents originated.

4.  If any responsive document contains "privileged attorney-client

communications," the producing party must produce all non-privileged portions of the document. The producing party may redact those portions of the responsive document that constitute privileged attorney-client communications in lieu of creating a privilege log; provided, however, that the material redacted does not obscure: (a) the type of document; i.e., letter, memorandum, etc.; (b) the author of the document; (c) the addressee of the document; (d) the date of the document; (e) the identity of all persons having received copies of the document, seen the document or to whom the document was disclosed; (f) and the general subject matter of the documents.

5.  If any responsive document was, but is no longer in the possession or subject to the control of the responding party, state whether it is (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of, and in each instance explain the circumstances surrounding such disposition thereof and state the date or approximate date thereof.

6.  If a document was prepared in several copies or if additional copies were thereafter made, and if any such copies were not identical or are no longer identical by reason of any notation or modification of any kind whatsoever, including without limitation notations on the front or back of any of the pages thereof, then such non-identical copy is a separate document and must be produced.

## DOCUMENT SUBPOENED

1.  Any and all documents produced or to be produced and/or filed or to be filed with the Bankruptcy court by Frank Miller pursuant to the Bankruptcy Court Rule 2004 examination subpoena in in re Gitto Global Corporation BNAKR # 04-45386 - JBR.