IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LASALLE BUSINESS CREDIT, LLC f/k/a <br> LASALLE BUSINESS CREDIT, INC., <br><br> Plaintiff, <br><br> v. <br><br> GARY C. GITTO, et al., <br><br> Defendants, <br> and <br><br> FLEET NATIONAL BANK, et al., <br><br> Trustee Process Defendants, <br><br> and <br><br> FIDELITY INVESTMENTS, INC., et al., <br><br> Reach-and-Apply Defendants. | Case No. 04-12227-DPW |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO RULE 12(B)(6) MOTION
TO DISMISS OF CHARLES N. GITTO, JR. AND TRADEX CORP.
AND PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

Plaintiff, LaSalle Business Credit, LLC ("LaSalle"), named Charles N. Gitto, Jr. ("Charles Gitto") as a defendant in this lawsuit for having participated in a civil conspiracy "to obtain money from LaSalle through a revolving credit loan made under false pretenses to Gitto Global." (Cmplt. ¶176)  This civil conspiracy was conducted through various activities carried on at Gitto Global for more than 2 years.  Charles Gitto was the chairman of the board of Gitto Global during that time period. (Cmplt. ¶6)  As such, he was in charge of and responsible for Gitto Global's operations.  Charles Gitto and Tradex Corp., a company owned and operated by

him, received payments from Gitto Global "knowing that … [they were] not entitled to those payments and knowing that the funds derived from the proceeds of the civil conspiracy." (Cmplt. ¶s 183, 184)  During Charles Gitto's tenure as Gitto Global's chairman of its board of directors, Gitto Global submitted false borrowing base certificates to LaSalle (Cmplt. ¶179), conducted a massive, sophisticated check-kiting scheme (Cmplt. ¶178), inflated its inventory valuations by mislabeling materials (Cmplt. ¶67), and created extensive documentation for fictitious sales (Cmplt. ¶180).  These activities were carried out at Gitto Global's premises.  (*Id.*)  As alleged in the Complaint, Gitto Global was being run as a racketeering enterprise.  (Cmplt. ¶92)

As Charles Gitto concedes, all of LaSalle's well-pleaded factual averments in the Complaint and every reasonable inference from them must be made in LaSalle's favor. (C. Gitto Mem., p. 3)  Where there is a conspiracy, even a slight role in the conspiracy is sufficient for responsibility for its operations. *US v. Smith*, 725 F2d 852, 866 (1st Cir., 1984) ("Once the existence of a conspiracy has been established, even slight evidence implicating a defendant may be sufficient proof of his involvement.").  The Complaint provides a basis for the inference that Charles Gitto participated in the alleged conspiracy.

The fact that Charles Gitto knew that the money he and Tradex received from Gitto Global was the product of the conspiracy that operated in his company is alone sufficient to constitute the inference that Charles Gitto provided the assistance to the conspiracy that he contends has not been pled in the Complaint.  Charles Gitto's role is analogous to that of the person who provides the gun or the getaway car to the bank robbers.

Although LaSalle believes that the allegations against Charles Gitto in the Complaint are sufficient, it also believes that it would not be a productive use of the Court's time to take

Charles Gitto's Rule 12(b)(b) Motion under consideration because LaSalle has been in the process of preparing an amended complaint that will present new allegations against Charles Gitto and Tradex.

In preparation for the preliminary injunction hearing, LaSalle has conducted expedited discovery concerning the events involved in the fraud conducted at Gitto Global.  As the Court is aware, LaSalle has been impeded by the fact that records of Gitto Global were brought to Charles Gitto's home.  Charles Gitto has invoked the Fifth Amendment when called upon to return the records.  The only inference that can be drawn from this conduct is that the records incriminate Charles Gitto.

Notwithstanding Charles Gitto's obstruction of discovery, LaSalle has been able to develop a clearer picture of his role in Gitto Global's affairs that is of someone other than an innocent bystander.  Charles Gitto, individually, and through his company, Tradex, participated in the conspiracy and demanded compensation therefore.

Documents produced by Frank Miller reveal that Charles Gitto asked as early as March 25, 1988, for all receivable reports to come to him.  (FM-01-00622)  In May, 1988, he is authorizing Roger DeLisle to pay whatever vendors he designates.  (FM-01-00636)  In August, 1988, he is to personally sign checks to the accountant, Louis Pellegrine.  (FM-0-00644)

As head of production, Charles Gitto ran Gitto Global's production meetings.  (Merchant Aff.¶ 8; Minardi Aff. ¶6[1])  According to a May 21, 2002 memo from Charles Gitto, these meetings were to be daily.  (FM-01-00671)  On a daily basis, he received sales information and inventory reports.  (Merchant Aff. ¶8; Minardi Aff. ¶6)  He determined the production schedules – which customer's job would run when.  (Merchant Aff. ¶8)  From this information, Charles

---

[1] The cited affidavits are included in the documents submitted to the Court with LaSalle's Pre-Hearing Memorandum in Support of Its Motion for a Preliminary Injunction.

Gitto knew who were Gitto Global's customers, how much they ordered and the state of Gitto Global's inventory. (DeLisle Aff. ¶¶2, 6) Nonetheless, in 2002, Charles Gitto sent false accounts receivable information to Guaranty Business Credit, a predecessor to LaSalle as a lender to Gitto Global, to ensure it did not close Gitto Global down. (Snyder Aff., Ex. A) It was represented in the ledger that millions of dollars were due Gitto Global from J-Tan, Hemisphere, Hitachi, Color Compounds and Zebulon. These are the same fictitious companies used in the fraud alleged in the Complaint. Charles Gitto had to have known that his representation to Guaranty Business Credit was false. It is reasonable to assume that what occurred with LaSalle was a continuation of what Charles Gitto was involved in with LaSalle's predecessor.

In June 2002, Charles Gito transferred $300,00 to J & J Chemical, the fictitious company used for the check-kite, when Clinton Savings Bank refused to pay J&J Chemical checks on uncollected funds. In July, 2004, Clinton Savings Bank again threatened to stop giving credit on uncollected funds, which would have imperiled the check-kite. To induce Clinton Savings Bank to continue to extend credit, Tradex pledged its assets, certain inventory and a second mortgage on Gitto Global's property. Charles Gitto was present at the original loan closing and negotiated the loan documents. Thereafter, in August, 2004, when Clinton Savings Bank indicated that it was going to shut down J&J Chemicals' account, Charles Gitto executed an unlimited guaranty to again induce Clinton Savings Bank to give credit to J&J Chemical for uncollected funds. On September 17, 2004, when Clinton Savings Bank stopped extending credit, almost $12 million in checks were returned by Clinton Savings Bank for insufficient funds, resulting in an overdraft for which LaSalle was responsible. (Cmplt. ¶49-51) LaSalle also had advanced $4 million on those funds believing they were available for credit against the loan. (Cmplt. ¶50)

Finally, Charles Gitto used Gitto Global as his personal checkbook and its employees as his own. Charles Gitto had Gitto Global employees make repairs at his home, manage contract workers and pick up trash around his residence—all at Gitto Global's expense. (DeLisle Aff. ¶s 3, 4) He had the invoices for the work sent to Gitto Global and directed that he alone would determine how they got paid—by Gitto Global, by Tradex or by him, personally. (J73) Charles Gitto directed Helen Kozak or Rita Bartlett to make payments to him personally, to Tradex, to his credit cards and to company credit cards for personal items. (Rita Bartlett ¶5; J22, 27, 42, 45, 46, 61, 71) In 2003-04 alone, Charles Gitto received $375,248 in interest and unaccounted for disbursements. (Cmplt. ¶183) But for LaSalle providing the funds to Gitto Global to make these distributions based on false pretenses, Charles Gitto, and Tradex as well, would not have obtained this money. Charles Gitto was a critical part of the conspiracy.

Tradex also benefited from the conspiracy. In 2003-04 alone, Tradex received $615,607 in interest, prepaid rent, consulting fees and unaccounted for disbursements. (Cmplt. ¶184) In order to ensure those payments continued, Tradex, through Charles Gitto, secured J&J Chemical's debt to Clinton Savings Bank, as the testimony and documents from Clinton Savings Bank reveal.

Under circumstances such as those presented here, where the general scheme to defraud has been specifically spelled out, a defendant is linked to the fraud but is in possession of the incriminating evidence, a plaintiff should be granted additional time to complete discovery as to that defendant. *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 292 (1st Cir. 1987); *In re Lupron® Marketing and Sales Practices Litigation*, 295 F. Supp. 2d 148, 170-71 (D. Mass. 2003); *Freeport Transit, Inc. v. McNulty*, 239 F. Supp. 2d 102, 117 (D.Me. 2002).

277608.1 042314-34311

WHEREFORE, LaSalle requests that the Court (i) enter and continue the Motion of Charles N. Gitto, Jr. and Tradex to Dismiss Under Federal Rule of Civil Procedure 12(b)(6); and (ii) grant LaSalle leave to file an amended complaint hereon on or before December 31, 2004.

Dated:  December 8, 2004

Respectfully submitted,

LASALLE BUSINESS CREDIT LLC

By:  /s/ Eric S. Rein
       One of its attorneys

Christopher J. Panos
Patrick W. Manzo
Craig and Macauley Professional Corporation
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA  02210
Phone: (617) 367-9500
Fax:    (617) 742-1788

Eric S. Rein
John L. Conlon
Bethany N. Schols
Schwartz, Cooper, Greenberger & Krauss, Chtd.
180 N. LaSalle Street, Suite 2700
Chicago, IL  60601
Phone:  (312) 346-1300
Fax:  (312) 782-8416

## Certificate of Service

I hereby certify that a true copy of the above document was served upon each other party by via either electronic means or U.S. Mail on December 8, 2004.

/s/ Patrick W. Manzo

277608.1 042314-34311