IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LASALLE BUSINESS CREDIT, LLC f/k/a LASALLE BUSINESS CREDIT, INC., <br><br> Plaintiff, <br><br> v. <br><br> GARY C. GITTO, FRANK MILLER, CHARLES N. GITTO, JR., NANCY GITTO PANAGIOTES, JOHN D. TERSIGNI, KATHLEEN M. CARLAND, WILLIAM DEAKIN, JANICE CHAISSON, HELEN KOZAK, KINGSDALE CORP. d/b/a J&J CHEMICAL DISTRIBUTORS, and TRADEX CORPORATION, <br><br> Defendants, <br> and <br><br> FLEET NATIONAL BANK, CLINTON SAVINGS BANK, SOVEREIGN BANK, COMMERCE BANK & TRUST COMPANY, FIDELITY COOPERATIVE BANK, BANKNORTH, N.A., FIDELITY INVESTMENTS, INC., LEOMINSTER CREDIT UNION, and LEHMAN BROTHERS, INC., <br><br> Trustee Process Defendants, <br> and <br><br> FIDELITY INVESTMENTS, INC., DIRECT WOOD & PAPER PRODUCTS, INC., GITTO SALES CORPORATION J-TAN SALES & MARKETING, INC., HEMISPHERE DISTRIBUTION CORPORATION, LEHMAN BROTHERS, INC., and AWG, LLC, <br><br> Reach-and-Apply Defendants. | Case No. 04-12227 DPW |

**MEMORANDUM IN SUPPORT OF MOTION BY NON-PARTIES
CRAIG JALBERT, CHARLES L. GLERUM AND
CHOATE, HALL & STEWART TO QUASH SUBPOENAS**

The Bankruptcy Court appointed Charles L. Glerum, Esq. and the law firm of Choate, Hall & Stewart as Examiner (collectively, "the Examiner") to investigate the affairs of Gitto Global Corporation. By statute, the Examiner is answerable to the Bankruptcy Court alone and acts on its behalf. The Bankruptcy Court authorized the Examiner to retain a forensic accountant, Craig Jalbert, and the firm Verdolino & Lowey as forensic accountant and advisor in the investigation.

This past Monday, December 6, Plaintiff LaSalle Business Credit ("LaSalle") filed a motion in the Bankruptcy Court seeking permission for Jalbert to present testimony in this action. The Bankruptcy Court denied LaSalle's motion, ruling that the Examiner and his professionals shall not give testimony.[1] The very next day LaSalle issued two subpoenas directed to the very same person for the very same testimony. Although the Examiner has sympathy for LaSalle's procedural position, has attempted to be cooperative, and has no desire to obstruct the parties in this matter, the Examiner has no alternative but to file this Motion and respectfully submits that the subpoenas should be quashed.

## FACTS AND PROCEDURAL HISTORY: THE EXAMINER IS CONDUCTING AN INVESTIGATION ON BEHALF OF THE BANKRUPTCY COURT, WHICH RULED THAT JALBERT SHALL NOT PRESENT TESTIMONY.

1. On September 16, 2004, the Board of Directors of Gitto Global Corp. (the "Debtor" or "Gitto Global"), including Gary C. Gitto, appointed Thomas Doherty of Argus Management to serve as the Chief Restructuring Officer of Gitto Global Corporation. Shortly

---

[1] The Bankruptcy Court's ruling rested on a sound footing, as further explained below. Courts have held that a bankruptcy examiner is an agent of the Bankruptcy Court and is not permitted to testify. See In re Baldwin United Corporation, 46 B.R. 314, 316 (Bankr. S.D. Ohio 1985) (a copy of which is attached to the Examiner's Motion as Exhibit A); Vietnam Veterans Foundation v. Erdman, 1987 WL 9033 at *2 (D.D.C. Mar. 19, 1987) (a copy of which is attached to the Examiner's Motion as Exhibit B).

thereafter, the directors and officers of Gitto Global resigned. On September 24, 2004, Gitto Global filed a petition for relief commencing a case under Chapter 11 of Title 11 of the United States Code (the "Chapter 11 Case"). The case is pending as In re Gitto Global Corporation, United States Bankruptcy Court, District of Massachusetts, Western Division, 04-45386-JBR, with The Honorable Joel B. Rosenthal presiding.

2.     On October 7, 2004, the United States Trustee (the "U.S. Trustee") filed in the Chapter 11 Case the *Motion of United States Trustee to Appoint Chapter 11 Trustee* (the "Trustee Motion," a copy of which is attached to the Examiner's Motion as Exhibit C), which Trustee Motion sought, in the alternative, appointment of an Examiner. The U.S. Trustee cited allegations that Gitto Global had likely engaged in questionable business practices and accounting irregularities and likely had overstated its annual sales by a significant amount. The U.S. Trustee argued that the appointment of a Chapter 11 Trustee or Examiner would be in the best interests of creditors, as the Chapter 11 Trustee or Examiner could investigate the allegations of fraud and analyze whether there is a possible source of recovery for Gitto Global's creditors.

3.     The Bankruptcy Court held a hearing on the Trustee Motion on October 14, 2004, at which hearing several parties, including LaSalle, the Debtor and the Official Committee of Unsecured Creditors (the "Committee"), responded to the Trustee Motion. Following the hearing on the Trustee Motion, the Court determined not to appoint a Chapter 11 Trustee, but rather entered an order (the "Appointment Order," a copy of which is attached to the Examiner's Motion as Exhibit D) directing the U.S. Trustee to appoint a Chapter 11 Examiner.

4.     The U.S. Trustee consulted with counsel to various parties in the Chapter 11 Case, including LaSalle, the Debtor, and the Committee. Following such consultation, the U.S.

Trustee appointed Charles L. Glerum and the law firm of Choate, Hall & Stewart to serve as the Chapter 11 Examiner of the Debtor. On October 19, 2004, the Court entered the Order Allowing Application for and Certifying Application of Chapter 11 Examiner (the "Examiner Order," a copy of which is attached to the Examiner's Motion as Exhibit E). The Bankruptcy Court directed the Examiner, by reference to the Appointment Order, to investigate "the existence of any prepetition fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management and business affairs of" Gitto Global. The Examiner was further ordered to file a report of the investigation with the Bankruptcy Court.[2]

5. On October 25, 2004, LaSalle commenced the instant lawsuit against a number of parties involved in the management and the business affairs of Gitto Global, and seeking a preliminary injunction. A hearing on that preliminary injunction is currently scheduled for December 10, 2004.

6. At the same time, the Examiner has been conducting the examination on behalf of the Bankruptcy Court. The Examiner's investigation has been led by James A. Ring. From 1965 to 1990, Mr. Ring served as a Special Agent and Supervisory Special Agent of the Federal Bureau of Investigation responsible for the conducting and/or managing of criminal investigations. From 1990 to the present, Mr. Ring has been employed by the law firm of Choate, Hall & Stewart and currently serves as Director of Business Information and Investigative Services at Choate, Hall & Stewart. In conducting the investigation, Mr. Ring has done the following: (a) Mr. Ring has reviewed substantial records; (b) Mr. Ring has interviewed numerous witnesses; (c) Mr. Ring has taken examination pursuant to Federal Rule of Bankruptcy Procedure 2004; and (d) Mr. Ring has exchanged information and documents with various

---

[2] The Examiner Order directed the Examiner to filed the instant report within 45 days after entry of the Examiner Order, i.e. December 3, 2004. The deadline for the Examiner to file an interim report has since been extended by the Bankruptcy Court to later in December.

parties, including the Federal Bureau of Investigation, the United States Attorney's Office, the Office of the United States Trustee, the Committee, and LaSalle.

7. On November 10, 2004, the Bankruptcy Court entered an Order authorizing the Examiner to retain the firm of Verdolino & Lowey, P.C. and Craig Jalbert, a principal of that firm, "as forensic accountant and advisor to the Examiner." (A copy of this Order is attached to the Examiner's Motion as Exhibit F.) The Bankruptcy Court ordered that it "retains jurisdiction with respect to all matters arising from or related to the implementation of this Order." Mr. Jalbert has assisted the Examiner and Mr. Ring in reviewing the financial records of Gitto Global and advising the Examiner about them.

8. On November 23, 2004, counsel for Gary Gitto served subpoenas seeking discovery from the Examiner. The Examiner filed a motion to quash on November 29, 2004, serving (of course) all parties in this action, including LaSalle. Gary Gitto thereupon withdrew his subpoenas, and the Examiner filed on December 2, 2004, a notice of withdrawal of motion.

9. The instant Motion concerns two aspects of Jalbert's work on the Bankruptcy Court investigation. First, Jalbert obtained computer equipment from Gitto Global and applied software techniques to retrieve electronic copies of its information. Among other things, Jalbert retrieved and printed a large number of e-mails of Gitto Global.

10. Second, Jalbert was present when James Ring conducted an investigative interview of defendant William Deakin. Deakin was formerly Controller of Gitto Global. Jalbert listened to the interview in order to assist Ring in understanding the accounting issues.

11. LaSalle sought from the Examiner two affidavits to be filed by Jalbert. The Examiner was willing to provide them, but only if an order were entered by the Bankruptcy

Court allowing that action and providing that in so doing the Examiner was not "opening the floodgates" to possible testimony or discovery.

12. Accordingly, on December 2 2004, LaSalle filed in the Bankruptcy Court a motion seeking permission to obtain from the Examiner two affidavits of Jalbert. (A copy of LaSalle's motion is attached to the Examiner's Motion as Exhibit G.) LaSalle sought to present Jalbert's testimony on two subjects. First, LaSalle sought testimony authenticating certain e-mails that were present on the Gitto Global computers. Second, LaSalle sought testimony recounting what Deakin said to Ring in the presence of Jalbert. Not surprisingly, William Deakin, Charles Gitto, and Gary Gitto filed objections in the Bankruptcy Court. (Copies are attached to the Examiner's Motion as Exhibits H, I and K.)

13. The Bankruptcy Court heard LaSalle's motion on an emergency basis this past Monday, December 6. (A transcription made from the Court's audio recording of the December 6 hearing ["Unofficial Transcription"] is attached to the Examiner's Motion as Exhibit J.) The Bankruptcy Court denied LaSalle's motion in strong language. Judge Rosenthal stated:

> I don't want the Examiner to get involved in the other litigation in the manner I see happening based on the responses that I've gotten. I don't think there is any basis for the Examiner to be the discovery shortcut for other parties. There are ways to get this information. There are... the.... It's unfortunate, but given what's at stake in the other litigation, and what's obviously going to be additional litigation, the parties are not going to give an inch. So the costs of getting the information are going to go up for all parties. Because I am not going to let the Examiner and his professionals get involved in the way that is being sought. I don't know that there is any way to fairly limit the exposure of the Examiner or his professionals to be involved in all this litigation once I start down that road. So LaSalle's motion is denied.

Unofficial Transcription, page 9.

14. The Bankruptcy Court issued its Order on Monday, December 6, 2004, denying LaSalle's motion. (A copy is attached to the Examiner's Motion as Exhibit L.) It wrote:

-5-

> There is no basis for Examiner or his professionals to serve as discovery shortcut for other litigation. If allowed, appears to court no way to fairly limit exposure of Examiner and professionals to discovery and involvement in other litigation.

15. LaSalle has not sought to appeal the ruling of the Bankruptcy Court.

16. On Tuesday LaSalle served two subpoenas ("the Subpoenas") seeking the very same testimony from Jalbert. (Copies of the Subpoenas are attached to the Examiner's Motion as Exhibits M and N.) LaSalle's Subpoenas seek to compel Mr. Jalbert to provide testimony on the same two aspects of his work on the Bankruptcy Court investigation. LaSalle's first Subpoena (Ex. M) is directed to "Craig Jalbert, as Custodian of Certain Records of Gitto Global." Jalbert is not the custodian of records of Gitto Global. To the Examiner's knowledge, the CRO is the custodian of Gitto Global's records.

17. LaSalle's second Subpoena (Ex. N) is directed to "Craig Jalbert." It purports to require Jalbert to appear in this Court on December 10, 2004, to give "Testimony limited to statements made by William Deakin in your presence."

18. The Examiner, who is working on behalf of the Bankruptcy Court, must follow the directives of the Bankruptcy Court. However, the Examiner does not wish to impede the parties' obtain access to the e-mails of Gitto Global. Accordingly, Jalbert made a copy of the e-mails on a hard drive, and delivered the hard drive to representatives of Gitto Global.

19. The Examiner is continuing with his investigation. On the current schedule, the Examiner's Report to the Bankruptcy Court is due later this month. Jalbert is working hard, assisting with the preparation of the Report.

# ARGUMENT: THE COURT SHOULD QUASH THE SUBPOENAS.

## I. THE BANKRUPTCY COURT HAS ALREADY RULED AGAINST LASALLE.

LaSalle recognizes that the Examiner is a "unique creation of the law" who acts on behalf of the Bankruptcy Court. Ex. G at 4. Accordingly, LaSalle asked the Bankruptcy Court for permission to present testimony by the Examiner's forensic accountant.

The Bankruptcy Court received four written submissions on the issue (Exs. G, H, I, and J) and heard argument at length from LaSalle. Ex. K. The Bankruptcy Court expressed concern that permitting testimony would open the "floodgates" to discovery of the Examiner. Ex. K at 4. The Bankruptcy Court further expressed concern that this would impede the Examiner from finishing his Report to the Court, and would impose additional cost. Ex. K at 9.

The Bankruptcy Court ruled against LaSalle in strong and simple terms. Judge Rosenthal said: "I am not going to let the Examiner and his professionals get involved in the way that is being sought." Ex. K at 9.

On the very next day LaSalle went ahead to issue the Subpoenas on the authority of this Court. In doing so, LaSalle is seeking to invoke the authority of this Court to compel exactly the same thing that the Bankruptcy Court ruled against. This LaSalle cannot do.

### A. The Ruling Of The Bankruptcy Court Should Be Enforced.

LaSalle asked the Bankruptcy Court to decide the very same issue that is in contention now. The Bankruptcy Court issued its ruling, and LaSalle has not taken an appeal.

This Court should enforce the ruling of the Bankruptcy Court, and should not second-guess it. In general, absent an appeal, the U.S. District Court respects and applies the rulings of the Bankruptcy Court, and the ordinary rules of res judicata and collateral estoppel apply to rulings of the Bankruptcy Court. See In re Iannochino, 242 F.3d 36, 41 (1st Cir. 2001)

("[f]ederal res judicata principles govern the res judicata effect of a judgment entered in a prior federal suit, including judgments of the bankruptcy court") (emphasis added).

This Court has not been asked to sit in appeal of the ruling of the Bankruptcy Court, and the steps that would be needed for an appeal have not been taken. See FED. R. BANKR. PROC. § 8001 (2004). Accordingly, this Court should not reopen Monday's ruling by Judge Rosenthal.

### B. LaSalle Is Bound By The Ruling Of The Bankruptcy Court.

The doctrine of collateral estoppel binds a litigant where four conditions are met. "When a party implores a federal court to give preclusive effect to a prior federal court adjudication, federal law governs." Faigin v. Kelly, 184 F.3d 67, 78 (1st Cir. 1999).

> Under federal common law, a party seeking to estop the litigation of an issue by reference to a previous adjudication between the parties must establish (1) an identity of issues (that is, that the issue sought to be precluded is the same as that which was involved in the prior proceeding), (2) actuality of litigation (that is, that the point was actually litigated in the earlier proceeding), (3) finality of the earlier resolution (that is, that the issue was determined by a valid and binding final judgment or order), and (4) the centrality of the adjudication (that is, that the determination of the issue in the prior proceeding was essential to the judgment or order).

Id. Accord, Plumley v. Southern Container, 303 F.3d 364, 373 (1st Cir. 2002).

All four conditions are met and bind LaSalle here.

1. <u>The same issue</u>: The very same testimony that is sought by LaSalle here was ruled out by the Bankruptcy Court on Monday. Before Judge Rosenthal, LaSalle sought permission to offer testimony from the same witness, on the same subjects, implicating the same investigation by the same Bankruptcy Examiner.

2. <u>Actually litigated</u>: The issue was vigorously litigated in Bankruptcy Court. LaSalle filed a discursive motion (Ex. G), three parties filed discursive objections (Exs. H to J), and the Bankruptcy Court held an emergency hearing specifically to address the issue. Ex. K.

3. <u>Prior ruling is final</u>: The Bankruptcy Court rejected motions for reconsideration (Ex. K at 9-10) and entered its Order on Monday. Ex. L. The Order of the Bankruptcy Court is final on the issue presented here. "To be final, a bankruptcy court order need not resolve all the issues raised by the bankruptcy, though it must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief." In re Iannochino, 242 F.3d 36, 43 (1st Cir. 2001).[3]

4. <u>Determination of the issue</u>: The Bankruptcy Court addressed and determined exactly the same issue, namely whether the forensic accountant who is assisting the Examiner is permitted to testify at the urging of LaSalle. An issue of this nature is a proper subject for applying the doctrine of collateral estoppel to prevent relitigation. RIMSAT, Ltd. v. Hilliard, 207 B.R. 964, 967 ( D.C. Cir. 1997) (witness was precluded from relitigating his claim that the doctrine of sovereign immunity protected him from a subpoena, where the same issue had been previously decided by another bankruptcy court).

In sum, LaSalle cannot be heard seeking to contradict the ruling that LaSalle itself obtained from the Bankruptcy Court. <u>See</u> In re Lembo, 262 B.R. 21, 26 (Bankr. D. R.I. 2001) (abstaining from clarifying or interpreting a family court order, stating "return of this dispute to the family court [*inter alia*] eliminates the unseemly appearance of forum shopping").

---

[3] In theory, the appeal period has not expired, but this does not mean that LaSalle can escape the doctrine of collateral estoppel. "The federal rule is that pendency of an appeal does not suspend the operation of a final judgment for purposes of collateral estoppel, except where appellate review constitutes a trial de novo." In re IMF Sales Associates, Inc., 94 B.R. 223, 226 (Bankr. Mass. 1988), quoting Nixon v. Ricky, 513 F.2d 430, 438 n.75 (D.C. Cir. 1975)."

## II. THE BANKRUPTCY EXAMINER IS NOT SUBJECT TO INVOLVEMENT IN CIVIL LITIGATION.

### A. This Court Should Protect The Integrity Of The Bankruptcy Court Investigation.

The Bankruptcy Court had good grounds for its ruling on Monday. As LaSalle acknowledged in its motion to the Bankruptcy Court (Ex. G), the Bankruptcy Court Examiner is a unique creation of the law. The Court explained this in In re Baldwin United Corporation, 46 B.R. 314, 316 (Bankr. S.D. Ohio 1985):

> An Examiner's legal status is unlike that of any other court-appointed officer which comes to mind. He is first and foremost disinterested and nonadversarial. The benefits of his investigative efforts flow solely to the debtor and to its creditors and shareholders, but he answers solely to the Court. As was noted in In re Hamiel & Sons, Inc. 20 B.R. 830, 832 (Bankr. S.D. Ohio 1982), an examiner "constitutes a Court fiduciary and is amenable to no other purpose or interested party."
>
> While § 1106 requires the Examiner to file a "statement" of his investigation, his findings do not have the binding effect on the Court or parties of those of a special master, arbitrator or magistrate; nor do they have the evidentiary character of an opinion by a Court expert appointed pursuant to RULE 706 OF THE FEDERAL RULES OF EVIDENCE. An Examiner performs the investigative duties of a trustee, and may perform other trustee duties as the Court directs, but he stands on a different legal footing than a trustee.

The Baldwin United Court concluded that the Examiner "has aptly characterized his duties as comparable to that of a 'civil grand jury' to ascertain legitimate areas of recovery and appropriate targets for recovery." Id., at 316-17. This is exactly the function of the Examiner in the Gitto Global Chapter 11 case.

Bankruptcy Judge Rosenthal clearly expressed the Bankruptcy Court's intention to protect the Bankruptcy Court's Examiner from third party subpoenas. As the Baldwin United Court went on to say:

> If Examiners in other cases are to perform these "civil grand jury" functions effectively, and if their nonadversarial role is to be maintained, they and the subjects of their investigation must be unhampered by the threat that any information which comes into the Examiner's hands will be fair game for a plethora of anxious litigants, regardless of the limitations on disclosure which the Bankruptcy Court has imposed. Even absent such limitations on disclosure, we believe that the Examiner, as a nonparty to any proceeding and a nonadversarial officer of the Court, is entitled to some immunity from the whirlwind of litigation commonly attendant to large Chapter 11 cases.

Id., at 317.

The granting of a Motion to Quash will serve to maintain the integrity of the judicial process in the Gitto Global case under Chapter 11. As the District Court explained in <u>Vietnam Veterans Foundation v. Erdman</u>, 1987 WL 9033 at *2: "judges are excluded from testifying as witnesses at the same trials over which they preside," and "[a] bankruptcy examiner is clothed by the statute with judicial powers; he acts at the behest of the federal bankruptcy court." The <u>Vietnam Veterans Foundation</u> case analyzed whether an examiner could voluntarily testify concerning the findings and conclusions of law in his report. The District Court held that he could not.

> The integrity of the judicial process is directly threatened when litigators are allowed to question directly a court officer about the reasoning behind his official actions, thus courts have prohibited such examination. See, e.g., <u>United States v. Morgan</u>, 313 U.S. 409 (1941) (Secretary of Agriculture); <u>Standard Packaging Corp. v. Curwood, Inc.</u>, 365 F.Supp. 134, 137 (N.D. Ill. 1973) (patent examiner); <u>Wood v. General Teamsters Union</u>, Local 406, 583 F.Supp. 1471, 1474 (W.D. Mich. 1984) (arbitrator). The fact that [the Examiner] will testify voluntarily in no way lessens the threat to the integrity of the judicial process.

> [The Examiner] owes a continuing fiduciary responsibility to the bankruptcy court for which he served and that the fruits of his investigation in the [Corporation's] bankruptcy proceeds are "amenable to no other purpose or interested party." <u>Hamiel</u>, 20 Bankr. at 832. [The Examiner] obtained testimony, documents and

other information through his court-appointed powers, and thus is cannot serve as the basis for his proffered testimony. As the bankruptcy court in *Baldwin* explained, "the Bankruptcy Code [does not] contemplate [ ] that the Examiner act as a conduit of information to fuel the litigation fires of third-party litigants." 46 Bankr. at 316. A contrary rule would allow the parties to use a bankruptcy examiner as a discovery short-cut and would only invite further demands on such officers, potentially leading to substantial encroachments on judicial integrity and efficiency. *See id.*

Id. See In re Stockbridge Funding Corp., 153 B.R. 654, 656 (Bankr. S.D.N.Y., 1993) (recognizing a "bankruptcy crimes investigation privilege").

Moreover, this Court should quash the Subpoenas for related, practical reasons as well. The Examiner has a limited budget and a limited amount of time in which to complete the Bankruptcy Court's assignment. There is a substantial amount of information and documents to be gathered, analyzed, and organized. The Examiner's Report is due to the Bankruptcy Court in less than two weeks. The Examiner should not be required to respond to subpoenas that would inhibit the completion of his report.

**B.    This Court Should Protect The Work Product Immunity Of The Bankruptcy Examiner.**

The Court should also quash the second Subpoena since the Examiner's interview of William Deakin is protected by the work product doctrine.

Of course, the work-product doctrine has been well-established ever since Hickman v. Taylor, 329 U.S. 495 (1947), in which the Supreme Court held that an attempt by a party to obtain written statements, private memoranda, and personal recollections prepared by an adverse party's attorney in the course of his legal duties, without showing necessity or justification, "falls outside the arena of discovery." Id. at 510. The work-product doctrine ensures that the attorney has a "zone of privacy" in which to prepare a case. See Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 864 (D.C. Cir. 1980); James Julian, Inc. v. Raytheon Co., 93 F.R.D.

-12-

138, 142-43 (D. Del. 1982). When it came to a witness's oral statement, the Court held that no showing "under the circumstances of this case" would justify an order for production. Id. at 512.

James Ring, the chief investigator for the Examiner, conducted an investigative interview of William Deakin. Jalbert was present. The interview was conducted in anticipation of litigation. The whole point of the Examiner's report is to investigate whether there exist causes of action for recovery by representatives of the Chapter 11 estate. If so ordered, litigation may be brought by the Examiner. Thus LaSalle's second subpoena, which seeks testimony about the interview, trenches upon the protection for work product.

The protection for work product extends to witness statements, investigative reports, and memoranda prepared in anticipation of litigation. See, e.g., 8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 2024 (1970). Opinion work-product is defined as material that contains "mental impressions, conclusions, opinions, or legal theories of an attorney...." FRCP 26(b)(3). The doctrine protects not only the mental impressions of the attorney himself (i.e., Charles Glerum), but also the mental processes of persons assisting in trial preparation such as paralegals, consultants, law office personnel and investigators (i.e., James Ring and Craig Jalbert). See FRCP 26(b)(3) advisory committee's note (mentioning protection of mental impressions and subjective evaluations of investigators and claim-agents); Virginia Elec. & Power Co. v. Sun Shipbuilding & Dry Dock Co., 68 F.R.D. 397, 402 (E.D. Va. 1975) (impressions and opinions of person hired by an attorney as part of the attorney's work-product).

The Hickman doctrine also clearly extends to testimony. The Court held that attempts to secure "personal recollections" prepared by counsel, without any necessity or justification, were prohibited. Hickman, 329 U.S. at 510. If Jalbert were called to the stand, he would be asked about his recollection of the witness interview. The back-and-forth between Ring's questions

and Deakin's answers are work product of the Examiner. Moreover, Jalbert could only recount those items that he analyzed and deemed significant enough to remember. Thus, when recounted, the underlying information would be opinion work-product, as it would be strained through Jalbert's mental processes, perceptions and evaluations. Courts have included intangibles within the category of opinion work-product. See In re Grand Jury Subpoena Dated November 8, 1979, 622 F.2d 933, 935 (6th Cir. 1980).[4]

There has been some argument that the work product protection was somehow waived when James Ring had discussions with representatives of the Government or of LaSalle. The Bankruptcy Court understood and expected that information is being exchanged among the Government, LaSalle, the Committee and the Examiner. Ex. K at 6-9.[5] This does not make a waiver, however. "[B]ecause the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the disclosure to a third party." In re Grand Jury Subpoena, 220 F.3d 406, 409 (5th Cir. 2000). See AT&T Co., 642 F.2d at 1299; In re Sealed Case, 676 F.2d 793, 818 (D.C. Cir. 1982). Waiver results only when the law firm shows indifference to protecting a strategy. See Chubb Integrated Sys., Ltd v. National Bank of Wilmington, 103 F.R.D. 52, 63 (D. D.C. 1984); In re Sealed Case, 676 F.2d at 818 (D.C. Cir. 1982). Such indifference is most often demonstrated when a lawyer discloses material knowing that it is likely to be seen by an adversary. In re

---

[4] By its terms, FRCP 26(b)(3) applies to materials prepared "by or for another party or by or for that party's representative . . . ." This language refers to a "party." Taken literally, it could be argued that this language of FRCP 26(b)(3) does not apply where a law firm prepares work product in one case, and the work product is sought by subpoena in another case. Any such interpretation has been roundly criticized, however. See 8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 2024 (1970) (criticizing this interpretation and suggesting a court should issue a protective order). Moreover, some courts have held that regardless of the language of Rule 26, the work-product protection developed in Hickman encompasses the work product of a non-party. See United States v. AT&T Co., 642 F.2d 1285, 1301 (D.C. Cir. 1980) (permitting a third party to intervene to assert work-product protection for documents it had prepared); Republic Gear Co. v. Borg – Warner Corp., 381 F.2d 551, 557 (2d Cir. 1967) (holding that Hickman protected nonparty work-product).

[5] Indeed, 18 U.S.C. § 3057 (2004) requires reporting pertinent information to federal law enforcement authorities.

-14-

Subpoenas Duces Tecum, 738 F.2d 1367, 1371 (D.C. Cir. 1984); 4 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 26.64[4] (2d ed. 1991); 8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 2024 AT 210 (1970) (disclosure to third party does not waive work-product protection unless "it has substantially increased the opportunities for potential adversaries to obtain the information"). No such disclosure to an adversary has occurred here.

### III. LASALLE SHOULD NOT BE PERMITTED TO BURDEN THE BANKRUPTCY EXAMINER.

Where a civil litigant seeks discovery from a non-party under Rule 45, the litigant has a responsibility to protect against undue burden on the non-party. FED. R. CIV. P. 45(c) ("A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena."); Heidelberg v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41-42 (1st Cir. 2003) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to *special weight* in evaluating the balance of competing interests") (emphasis added) quoting Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998). In this instance, any benefit to LaSalle is far outweighed by the harm to the integrity of the Bankruptcy Court's investigation.

LaSalle forthrightly presented its dilemma to the Bankruptcy Court and asked permission to obtain from Mr. Jalbert the testimony that it seeks. Ex. G. The Bankruptcy Court ruled against LaSalle. Ex. L. LaSalle's Subpoenas now purport to require the Examiner to disobey the Bankruptcy Court's ruling. This burden should not be imposed on the Examiner.

## CONCLUSION

The Examiner has sympathy for LaSalle's procedural position, has attempted to be cooperative, and has no desire to obstruct the parties in this matter. However, LaSalle's Subpoenas (I) ask this Court to countermand the ruling of the Bankruptcy Court, (II) may undermine the integrity of the Bankruptcy Court's examination process, and (III) unduly burden the Examiner. This Court should quash the Subpoenas, and/or enter a protective order. This will permit the Examiner to complete, unimpeded, his investigation on behalf of the Bankruptcy Court.

        Respectfully submitted,

        CRAIG JALBERT,
        CHARLES L. GLERUM, P.C. and
        CHOATE, HALL & STEWART,
        as Chapter 11 Examiner

        _____
        Charles L. Glerum, P.C. (BBO# 195240)
        Robert M. Buchanan, Jr., P.C. (BBO# 545910)
        John F. Ventola (BBO# 567972)
        Lisa E. Herrington (BBO# 655678)
        CHOATE, HALL & STEWART
        Exchange Place
        53 State Street
        Boston, Massachusetts 02109
        (617) 248-5000

Dated: December 9, 2004

3776903v1

I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD FOR
EACH OTHER PARTY BY MAIL/HAND ON

DATE:_____ /SIGNATURE_____