## AGREEMENT OF LEASE

AGREEMENT OF LEASE by and between The Gitto Corporation, a Massachusetts corporation with a place of business located at 80 Erdman Way, Leominster, Massachusetts 01453 (hereinafter referred to as the "Landlord") and Global Products Corporation, a Massachusetts corporation with a place of business located at 20 Mohawk Drive, Leominster, Massachusetts 01453 (hereinafter referred to as the "Tenant").

WITNESSETH THAT:

In consideration of the rent set forth herein and the covenants herein contained, the Landlord does hereby demise and lease unto the Tenant and the Tenant does hereby hire from the Landlord certain premises described on Exhibit A attached hereto and incorporated herein by reference (hereinafter referred to as the "Leased Premises").

1.  Term -- The term of this Lease shall be for fifteen (15) years commencing on November 1, 1992 and terminating on October 31, 2007 (the "Lease Term").

2.  Rental -- The Tenant shall pay an annual rental of Three Hundred Thirty-Two Thousand Seven Hundred Sixty and 00/100 ($332,760.00) Dollars per year for each year of the Lease Term payable in advance on or before the 1st day of each calendar month in installments of Twenty-Seven Thousand Seven Hundred Thirty and 00/100 ($27,730.00) Dollars.

3.  Additional Covenants of Tenant -- The Tenant further covenants and agrees as follows:

    (a) Use -- The Tenant shall use and occupy the Leased Premises for specialty compounding of thermoplastic polymers and PVC compounds (the "Intended Use"), and accessory uses. Landlord represents that as of the date of this Lease, the use of the Leased Premises for the Intended Use is permitted by the Zoning Bylaw of the Town of Lunenburg subject to the grant of a special permit, and that such a special permit has been granted by the appropriate Lunenberg authority.

    (b) Repairs and Maintenance -- The Tenant shall keep piping, electric wiring, water and electric fixtures and the heating, ventilating and air conditioning systems or any other systems which service the Leased Premises and all glass, windows and doors in good order and repair. The Tenant shall keep and maintain the roof, structural components and foundation of the buildings and the parking lot in good order and repair. The Tenant shall provide for the reasonable and responsible removal of rubbish from the Leased Premises and for reasonable cleaning of the interior of the Leased Premises so that the Leased Premises are maintained in a clean, safe and sanitary condition, and,

without limitation, for removal of snow, ice and refuse from the parking lot and all sidewalks, steps, service areas and the like. The Landlord agrees that the Leased Premises, including the building, roof, foundation, and electrical and mechanical systems are in good working order and in good repair and broom clean condition on the commencement date of the Lease Term.

(c) <u>Utilities</u> -- The Tenant shall promptly pay for all oil, gas, electricity, water, sewer and other utilities consumed on or for the benefit of the Leased Premises.

(d) <u>Real Estate Taxes</u> -- The Tenant shall pay, promptly upon presentment of a bill, all real estate taxes and municipal assessments charged or imposed upon the land and improvements which comprise the Leased Premises, during the Lease Term. If only a portion of a tax period is included within the Lease Term, then the Tenant shall be responsible for the payment of its proportionate share of such real estate taxes and municipal assessments. If due to a future change in the method of taxation any franchise, income or profit tax shall be levied against the Landlord in substitution for or in lieu of any tax which would otherwise constitute a real estate tax or a specific tax on rentals from the Leased Premises shall be levied against the Landlord, such franchise, rental, income or profit tax shall be deemed to constitute "real estate taxes" for the purposes hereof.

The Tenant shall have the option, at its sole cost and expense, to make and prosecute application(s) for abatement of real estate taxes and/or appeals from any denial of application(s) for abatement of real estate taxes, and the Landlord agrees to cooperate with the Tenant in this regard.

(e) <u>Insurance</u> -- The Tenant shall provide and maintain, under policies issued by insurance companies reasonably acceptable to the Landlord which are authorized to do business in the Commonwealth of Massachusetts and in good standing therein, the following types of insurance:

(i) Comprehensive general public liability insurance during the continuance of this Lease naming, as additional insureds, the Landlord and any mortgagees as may from time to time be designated by the Landlord, each with the same effect as if separately insured, against all claims or demands for any injury to person or property which may be claimed to have occurred upon the Leased Premises, or arising out of the Tenant's occupancy of the Leased Premises, in amounts that shall not be less than Three Million Dollars ($3,000,000.00) single limit on an occurrence basis covering bodily injury, death and property damage;

(ii) Insurance providing for the payment of replacement costs due to damage by fire and other risks customarily comprehended by the term "extended coverage" in endorsements to fire insurance policies (including vandalism

pa.rea/G1532.100/bag393/lease

- 2 -

and malicious mischief) in an amount equal to one hundred percent (100%) of the replacement costs of the improvements on the Leased Premises above footings and foundations. The parties agree that said replacement costs shall be adjusted annually pursuant to a mutually agreeable index commonly used in the insurance industry for determining the replacement value of buildings. Any policy providing such coverage shall contain a so-called special coverage all risk endorsement and a replacement cost endorsement. Policies of such insurance shall name the Landlord, the Tenant, and any holder of a mortgage covering the Leased Premises, as their respective interest may appear; and

(iii) Insurance against damage by such other hazards and in such amounts as any institutional lender holding a first mortgage on the Leased Premises may from time to time require, naming the Landlord, the Tenant and the holder of such mortgage as their respective interests may appear.

The Tenant shall deposit with the Landlord certificates for such insurance at or prior to the commencement of the term, and thereafter within thirty (30) days prior to the expiration of any such policies. All such insurance certificates shall provide that such policies shall not be canceled without at least fifteen (15) days prior written notice to each assured named therein.

(f) <u>Indemnity</u> -- The Tenant agrees to defend and hold harmless the Landlord from all costs, expenses, claims or damage arising on account of any injury or damage to any person or property on the Leased Premises or otherwise resulting from the Tenant's use, maintenance and occupancy of the Leased Premises or any thing or facility kept or used thereon, excepting any such cost, expense, claim or damage arising from any omission, fault, negligence or other misconduct of the Landlord or those for whom the Landlord is responsible.

(g) <u>Compliance with Laws</u> -- The Tenant shall comply with all laws and ordinances and all orders and regulations of any governmental authority and agrees to obtain and maintain in full force and effect all required licenses, permits and approvals from time to time applicable to the Leased Premises and the use and occupancy thereof and not to suffer or permit any use of the Leased Premises which may be dangerous to life, limb or property or which shall increase the Landlord's insurance costs, except, with respect to increased insurance costs, unless the Tenant pays all such increased insurance costs.

(h) <u>Assignment/Sublease</u> -- The Tenant agrees not to assign this Lease nor to sublet the Leased Premises without first obtaining on each occasion the consent in writing of the Landlord, which consent shall not be unreasonably withheld and shall be issued within thirty (30) days of the Landlord's receipt of the Tenant's written request. No consent to any assigning or

pa.rea/G1532.100/bag393/lease

subletting in a particular instance shall be deemed to be a waiver of the obligation to obtain the Landlord's approval in the case of any other assignment or subletting. The Tenant agrees that, notwithstanding such assignment or sublease and consent thereto, the Tenant shall remain liable to the Landlord for the payment of all rent and for full performance of the covenants and conditions of this Lease.

(i) <u>Care of Premises</u> -- The Tenant agrees not to injure, overload or deface the Leased Premises and not to take any action which will invalidate or conflict with the terms of any insurance policy now or hereafter maintained by the Landlord or the Tenant. The Tenant agrees not to litter or damage the land of which the Leased Premises are a part.

(j) <u>Landlord's Entry</u> -- The Tenant agrees to permit the Landlord and the Landlord's agents to inspect the Leased Premises at reasonable times and, if the Landlord shall so elect, to make any repairs or alterations the Landlord may deem necessary and to show the Leased Premises, upon 24 hour prior notice (oral or in writing) and at reasonable times, to prospective purchasers, mortgagees and tenants.

(k) <u>Yielding Up</u> -- At the termination of this Lease, the Tenant shall remove the Tenant's goods and effects and peaceably yield up the Leased Premises with all additions, improvements or alterations made thereto in a clean condition and in good order, repair and condition, normal wear and tear excepted, and to repair any damage to the Leased Premises occasioned by the removal of the Tenant's personal effects.

4.  <u>Quiet Enjoyment</u> -- The Tenant, paying the rent reserved and performing and observing the agreements and conditions herein on its part to be performed and observed, shall and may peaceably and quietly have, hold and enjoy the Leased Premises during the Lease Term.

5.  <u>Personal Property</u> -- All merchandise, furniture, fixtures, effects and property of every kind, nature and description of the Tenant and all persons claiming through or under the Tenant which may be on the Leased Premises, during the continuance of this Lease or any occupancy by the Tenant thereof, shall be at the sole risk and hazard of the Tenant and those claiming through or under the Tenant, except to the extent that damage to the said property is occasioned by any omission, fault, negligence or other misconduct of the Landlord or those for whom the Landlord is responsible.

6.  <u>Damage, Destruction or Taking</u> -- If the Leased Premises or any part thereof shall be damaged by fire or other casualty which is covered by the insurance required by this Lease or if the same shall be damaged by a taking by public authority so as to be thereby rendered substantially unfit for the use and occupation made of the Leased Premises by the Tenant immediately prior to

- 4 -

such casualty or taking, then and in such event the rent herein before reserved or a just and proportional part thereof, according to the nature and extent of the damage sustained, shall be abated until the Leased Premises, but excluding any fixtures installed by the Tenant, have been duly repaired and restored by the Landlord to substantially the same condition as existed prior to such casualty or taking or as near thereto as the situation will allow. Notwithstanding the foregoing, in the event that it shall be necessary for the Landlord to expend, for repairs and restoration due to damage caused by fire or other casualty, amounts exceeding the insurance award paid to the Landlord with respect to such damage then, in such event, the Landlord may terminate this Lease by written notice to the Tenant, unless the Tenant agrees to pay such amounts. If by reason of any taking by eminent domain there is a functional loss of the building which materially affects the Tenant's use of the Leased Premises, either party may terminate this Lease as of the date when title vests in the taking authority by giving the other written notice within thirty (30) days following such taking. The Landlord shall (subject to force majeure) perform repairs and restoration in a reasonably timely manner so as to diminish the adverse effect on Tenant's business. The Landlord shall have no obligation to repair or restore any of the Tenant's fixtures or equipment. In the event of such a taking, all damages and awards with respect to the real estate taken shall belong to the Landlord, and the Tenant shall make no claim with respect to such awards or damages except for damages to the Tenant's personal property and equipment and special awards such as for relocation, so long as such claims by the Tenant do not reduce the amount of the award or damages with respect to the real estate taken.

7. <u>Default</u> -- In the event that:

(a) The Tenant shall fail to pay rent, or any other payment of money, costs or expenses herein agreed to be paid by the Tenant and if such failure shall continue for more than fifteen (15) days after written notice thereof from the Landlord to the Tenant; or

(b) The Tenant shall fail to observe or perform any other of the Tenant's covenants, agreements or obligations hereunder and such failure shall continue for more than thirty (30) days after written notice from the Landlord to the Tenant. However, if the correction of any such matter reasonably requires longer than thirty (30) days and the Tenant is diligently pursuing such cure to completion, such thirty-day period shall be extended by a reasonable period not to exceed sixty (60) days; or

(c) The Tenant shall be declared bankrupt or insolvent according to law, or files a petition under any bankruptcy or insolvency law, or if such petition filed against the Tenant is not dismissed within 30 days, or if the Tenant's interest in this Lease is taken on execution or other process of law in any action

against the Tenant, or if any assignment shall be made of the Tenant's property for the benefit of creditors;

then the Landlord shall have the right thereafter, while such default continues, to re-enter and take complete possession of the Leased Premises, to declare the Lease Term ended, and remove the Tenant's effects, without prejudice to any remedies which might be otherwise used for arrears of rent or other default. The Tenant shall indemnify the Landlord against all loss of rent and other payments which the Landlord may incur by reason of such termination during the residue of the Lease Term. If the Tenant shall default in the observance or performance of any conditions or covenants on the Tenant's part to be observed or performed under or by virtue of any of the provisions in any article of this Lease, and such default continues after thirty (30) days notice in writing thereof (except in the case of emergency), the Landlord, without being under any obligation to do so and without thereby waiving such default, may remedy such default for the account and at the expense of the Tenant. If the Landlord makes any expenditures or incurs any obligations for the payment of money in connection therewith, including but not limited to, reasonable attorney's fees in instituting, prosecuting or defending any action or proceeding, such sums paid or obligations incurred, with interest at the rate of 18% per annum, shall be paid to the Landlord by the Tenant as additional rent upon demand.

8. <u>Subordination</u> -- The Tenant agrees that this Lease shall whenever requested by the Landlord, from time to time, be made subordinate to any existing or new mortgage covering all or part of the Leased Premises and the Tenant agrees to execute all documents requested for the purpose of effectuating the subordination of this Lease to the lien of any such mortgage or mortgages irrespective of the fact that there may be one or more additional mortgages on the Leased Premises at the time of any such request. In addition to and not in contradiction of the foregoing, the Tenant hereby grants to the Landlord an irrevocable power of attorney for the purpose of executing all such subordination documents on behalf of the Tenant and agrees that the power hereby conferred is a power coupled with an interest. If this Lease is made subordinate to any such mortgage the Landlord agrees to use its best efforts to cause the holder of such mortgage to enter into an agreement with the Tenant which provides that this Lease shall be recognized by the mortgagee and that the rights of the Tenant shall remain in full force and effect during the Lease Term, notwithstanding any default in the payment or performance of said mortgage and notwithstanding any foreclosure proceedings with respect thereto, provided, however, that the Tenant shall perform all the terms covenants and conditions of this Lease undertaken to be performed by the Tenant.

9. <u>Waiver of Subrogation Rights</u> -- The Landlord and the Tenant each waive all claims and rights of recovery against the other with respect to any damage or destruction to their property which results from causes of any kind which are covered by

- 6 -

insurance policies maintained by the Landlord or the Tenant, even if such damage may have been brought about by the fault, neglect or intentional actions of either party or their respective agents and employees, but only to the extent of recovery, if any, under any such insurance policy and provided that this waiver shall be null and void to the extent that any such insurance would be invalidated by reason of this waiver. The Landlord and the Tenant shall use their best efforts to obtain a clause or endorsement in or on all insurance policies obtained by either insuring each party against damage to the Leased Premises, or any property which shall at any time be on the Leased Premises, which will provide in substance that the insurance company waives any right of subrogation which it may have against the Landlord or the Tenant. If obtaining such a clause or endorsement will increase an insurance premium then the party obtaining the insurance policy need not obtain such clause or endorsement unless the party benefited thereby agrees to pay the increased premium required to obtain such a clause or endorsement.

10. <u>Estoppel Certificate</u> -- The Tenant shall at any time, upon not less than ten (10) days prior notice by the Landlord to the Tenant, execute, acknowledge and deliver to the Landlord a statement in writing certifying that this Lease is unmodified and in full force and effect (or in full force and effect as modified setting forth the modifications), the dates to which rent and other charges have been paid in advance, stating whether or not the Landlord is in default in the performance of any agreement or obligation contained in this Lease, and if so, specifying such default and such other facts as the Landlord may reasonably request. The Tenant agrees that any such statement may be relied upon by any party, including a prospective mortgagee or purchaser.

The Landlord shall at any time, upon not less than (10) days prior notice by the Tenant to the Landlord, execute, acknowledge and deliver to the Tenant a statement in writing certifying that this Lease is unmodified and in full force and effect (or in full force and effect as modified setting forth the modifications), the dates to which rent and other charges have been paid in advance, stating whether or not the Tenant is in default in the performance of any agreement or obligation contained in this Lease, and if so, specifying such default and such other facts as the Tenant may reasonably request. The Landlord agrees that any such statement may be relied upon by a prospective mortgagee of the Tenant.

11. <u>Waiver</u> -- No consent or waiver, expressed or implied by the Landlord to or of any breach of any covenant, condition, or duty of the Tenant shall be construed as a consent to or waiver of any other breach of the same or any other covenant, condition or duty.

12. <u>Notices</u> -- All notices hereunder shall be in writing and either hand delivered or mailed by registered or certified mail, return receipt requested, and shall be deemed given when hand delivered or mailed. Notices to the Landlord shall be addressed

- 7 -

pa.res/01532.100/bag393/lease

to the Landlord at: The Gitto Corporation, 80 Erdman Way, P.O. Box 928, Leominster, Massachusetts 01453, ATTN: Charles N. Gitto, Jr., President, or such other place as the Landlord may designate by written notice to the Tenant. Notices to the Tenant shall be addressed to the Tenant at the Leased Premises, or such other place as the Tenant may designate by written notice to the Landlord.

13. <u>Option to Purchase</u> -- During the Lease Term, and provided that the Tenant is not in default of any of the terms of the Lease, the Tenant shall have the option to purchase the Landlord's entire interest in the Leased Premises. The Tenant may exercise such option by written notice to the Landlord not less than six (6) months prior to the date of closing designated in such notice. The purchase price shall be determined as follows:

(a) Each party shall select within 10 days after the Tenant gives notice of its intention to purchase an appraiser with at least 10 years of professional experience as a real estate appraiser in the Worcester Metropolitan Area, who is a disinterested party. Each appraiser so appointed shall be instructed to determine independently the "Fair Market Value" of the Leased Premises, within thirty (30) days after the request of either party. "Fair Market Value" is hereby defined as the fair market value of the Leased Premises assuming use of the Leased Premises for its highest and best use and assuming that the Leased Premises is not encumbered by this Lease.

(b) If the difference between the determinations of Fair Market Value of the two appraisers shall not exceed 5% of the lesser of such amounts, then said Fair Market Value shall be the average of the amounts so determined; if, however, the difference between the amounts so determined exceeds 5% of the lesser of such amounts, then such two appraisers shall have 10 days to appoint a third appraiser, but if such appraisers fail to do so, either party may request the President of the Greater Worcester Real Estate Board to appoint an appraiser within 10 days of such request. Such third appraiser shall also have at least 10 years of professional experience as a real estate appraiser in the Worcester Metropolitan Area, and shall not have acted in any capacity for either party within 5 years of his selection. If the amount of the third appraisal shall be less than the lower of the first two appraisers, said Fair Market Value shall be the lower of the first two appraisals. In all other cases, said Fair Market Value shall be equal to the third appraisal. Each party shall bear the costs of its own appraiser, and shall share equally in the cost of a third appraiser, if any.

If the Tenant shall have exercised the option as provided above, the Leased Premises shall be conveyed by a good and sufficient quitclaim deed and said deed shall convey a good and clear record and marketable title thereto, insurable by a nationally recognized title insurance company (such as Lawyers Title Insurance Corporation or Commonwealth Land Title Insurance

- 8 -

Company, free and clear from all encumbrances except for: (a) provisions of existing building, subdivision and zoning laws; (b) real estate taxes for the then current fiscal year, not yet due and payable; (c) any liens for municipal betterments assessed after the date of the exercise of this option; (d) the provisions of this Lease; (e) any matter that would be disclosed by a current survey of the Leased Premises; and (f) utility easements and similar matters, and any other easements, restrictions and reservations of record which do not materially interfere with the then use of the Leased Premises.

Any title matter which is the subject of a title standard of the Massachusetts Conveyancers Association at the time for delivery of the deed shall be governed by such title standard to the extend applicable. Any matter or practice arising under or relating to the purchase and sale agreement which is the subject of a practice standard of the Massachusetts Conveyancers Association shall be governed by such standard to the extend applicable.

It is agreed that prior to exercising this option, the Tenant shall cause an examination to be made of the record title to the Leased Premises and shall obtain a title insurance commitment from a nationally recognized title insurance company (such as Lawyers Title Insurance Corporation or Commonwealth Land Title Insurance Company) covering the Leased Premises. Accompanying the Tenant's notice of exercise of the option the Tenant shall furnish the Landlord with a copy of such title insurance commitment and shall give notice to the Landlord of any respects in which title to the Leased Premises as evidenced by such commitment does not conform to the provisions of this Section 13. Except for any objections claimed by the Tenant in such notice, and except for any matters affecting title to the Leased Premises arising after the date of such notice, the title to the Leased Premises shall be considered satisfactory and in compliance with the provisions of this option and the purchase and sale agreement executed pursuant hereto. If the Tenant gives such notice and it indicates that title to the Leased Premises does not conform to the provisions of this Section 13, the Landlord shall use reasonable efforts to remove or cure such objections within thirty (30) days after such notice (unless any such objection is of such a nature that it cannot be removed or cured within thirty (30) days, in which event such thirty-day period shall be extended by a reasonable period not to exceed sixty (60) days). If within such period the Landlord causes an ALTA owner's title insurance policy (specimen or otherwise) to be issued without exception for such objections, or if such objections are removed or cured to the reasonable satisfaction of the Tenant, or if the Tenant waives such objections, the Tenant shall be precluded from claiming any such objections to exist.

14. <u>Holdover</u> -- If the Tenant (or anyone claiming through the Tenant) remains in the Leased Premises after the termination or expiration of this Lease, such holding over shall be as tenant at will or tenant by the month (requiring 30 days notice of

- 9 -

termination by either party to the other), subject to all of the covenants and conditions of this Lease as though it had originally been a monthly tenancy. Notwithstanding the foregoing, if the Landlord desires to regain possession of the Leased Premises promptly after the termination or expiration hereof and prior to acceptance of rents for any period thereafter, the Landlord may, at its option, forthwith re-enter and take possession of the Leased Premises or any part thereof without process or by any legal process in force in the Commonwealth of Massachusetts.

15. <u>Hazardous Waste</u> -- The Tenant shall not use or store any oil or hazardous material on the Leased Premises, except in compliance with all federal, state and local laws, ordinances and regulations pertaining thereto (hereinafter collectively referred to as "Applicable Laws"). As used herein "hazardous material" shall be defined in the same manner as defined in Massachusetts General Laws, Chapter 21E, as amended, an in any regulations issued thereunder. The Tenant agrees that if the Tenant or anyone claiming under the Tenant shall release any oil or hazardous material on the Leased Premises that the Tenant shall forthwith remove the same in the manner provided by Applicable Laws, this obligation shall survive the expiration or termination of the Lease Term, and the Tenant shall indemnify, defend and hold harmless the Landlord from all costs, expenses, claims or damage arising on account of or in connection with any such release. The Tenant shall provide the Landlord with written notice (i) upon the Tenant obtaining knowledge of any potential or known release, or threat of release, of any oil or hazardous material on the Leased Premises by the Tenant or by any person for whose conduct the Tenant is responsible or whose liability may result in a lien on the Landlord's property, (ii) upon the Tenant receiving any notice to such effect from any federal, state or other governmental authority and (iii) upon the Tenant obtaining knowledge of the incurrence of any expense or loss by any governmental authority in connection with the assessment, containment or removal of any oil or hazardous material for which expense or loss the Tenant or the Landlord may be liable or for which expense a lien may be imposed upon the Landlord's property.

The Landlord represents that to its knowledge there has been no release on the Leased Premises of oil or hazardous materials as those terms are defined by the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, M.G.L. c. 21E, and the Massachusetts Hazardous Waste Management Act, M.G.L. c. 21C. The Landlord has provided the Tenant with a true and accurate copy of the Environmental Site Assessment of the property of which the Leased Premises is a part, prepared by Whitman & Bingham Associates, Inc., dated September 11, 1991.

16. <u>Alterations, Additions and Signs</u> -- The Tenant agrees not to make or allow to be made any additions or structural alterations to or erect signs on or about the Leased Premises without obtaining the Landlord's prior written consent on each occasion, and then only by contractors or mechanics approved by

the Landlord. However, the Tenant may make non-structural alterations provided that the Tenant gives the Landlord fourteen (14) days prior written notice on each occasion.

17. <u>Notice of Lease</u> -- The Landlord and the Tenant agree not to record this Lease. The Landlord and the Tenant will, at the request of either, execute, acknowledge and deliver a Notice of Lease (which shall reference the option to purchase) and a Notice of Termination of Lease Term, each in recordable form. Such notices shall contain only the information required by law for recording. The Tenant hereby irrevocably appoints the Landlord as its attorney-in-fact (which appointment shall survive termination of the Lease Term) to execute, acknowledge and deliver a Notice of Termination of Lease Term in the Tenant's name if the Tenant fails to do so within ten (10) days of any request.

18. <u>Option to Extend</u>. If the Tenant is not in default under the terms of this Lease, the Tenant shall have the option to extend the Lease Term for one additional period of five (5) years (the "Extended Term"), upon the same terms and conditions contained in this Lease, by written notice to the Landlord given at least six (6) months prior to the expiration of the Lease Term. During the Extended Term the Tenant shall pay to the Landlord annual rent in the amount of the fair rental value of the Leased Premises as hereinafter defined (the "Fair Rental Value").

The Fair Rental Value shall be the fair rental value of the land and improvements thereon which constitute the Leased Premises, assuming the highest and best use thereof, as of October 1, 2007. The Landlord and the Tenant shall determine the Fair Rental Value and if the parties fail to agree by the thirtieth (30th) day after commencement of the Extended Term, then such Fair Rental Value shall be determined by appraisal as follows:

The Landlord shall select two or more appraisers with at least ten (10) years of professional experience as real estate appraisers in the greater Worcester area, and who are disinterested parties. The Tenant shall, within seven (7) days of receipt of a written list of appraisers selected by the Landlord, appoint one of such appraisers to conduct the appraisal. The appraiser so appointed shall determine the Fair Rental Value within thirty (30) days after his appointment, or within such other reasonable time period as the appraiser may request. The determination of such appraiser shall be final and binding upon both parties. The parties shall share equally in the cost of the appraisal.

Pending the determination of the Fair Rental Value, the Tenant shall pay the Landlord annual rent at the rate payable for the previous year and the Tenant shall pay the Landlord the deficiency on the next monthly rental payment date following the determination of the Fair Rental Value.

Notwithstanding the foregoing, the annual rental for each year of the Extended Term shall never be below the annual rental payable for each year of the Lease Term.

20. **Miscellaneous**

(a) It is further covenanted and agreed by and between the parties hereto that the covenants and agreements herein contained shall bind and benefit said parties, their successors and assigns.

(b) This Lease shall be construed and enforced in accordance with the laws of the Commonwealth of Massachusetts.

(c) If any provisions of this Lease or any portion of such provision or the application thereof to any person or circumstance shall be held to be invalid or unenforceable or shall become a violation of any local, state or federal law, then the same or the same as so applied shall no longer be a part of this Lease, but the remainder of this Lease, such provision and the application thereof to the other persons and circumstances shall not be affected thereby and this Lease as so modified shall continue in full force and effect.

(d) The Tenant agrees to adopt a no smoking policy for the interior of the building which is a part of the Leased Premises.

Executed as a sealed instrument this /ett. day of September, 1992.

THE GITTO CORPORATION (Landlord)

By: _____
Its President

By: _____
Its Treasurer

GLOBAL PRODUCTS CORPORATION (Tenant)

By: _____
Its President

By: _____
Its Treasurer

pa.rea/G1532.100/bag393/lease

- 12 -