**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

LASALLE BUSINESS CREDIT, LLC, f/k/a)
LASALLE BUSINESS CREDIT, INC.,    )
    )
    Plaintiff,    )
    v.    )    Case No. 04-12227-DPW
    )
GARY C. GITTO, et al.,    )
    )
    Defendants,    )
    and    )
    )
FLEET NATIONAL BANK, et al.,    )
    )
    Trustee Process Defendants,    )
    )
    and    )
    )
FIDELITY INVESTMENTS, INC., et al.,    )
    )
    Reach-and-Apply Defendants.    )

**POST-HEARING MEMORANDUM OF
LA SALLE BUSINESS CREDIT, LLC IN SUPPORT OF
THE ATTACHMENTS AND PRELIMINARY INJUNCTION
<u>AGAINST DEFENDANTS CHARLES N. GITTO, JR., AND TRADEX CORPORATION</u>**

Following the December 10, 2004 hearing, only the Defendants Charles N. Gitto, Jr. ("Charles Gitto") and Tradex Corporation ("Tradex") challenge the attachments and the preliminary injunction entered herein against them. Plaintiff, LaSalle Business Credit, LLC ("LaSalle"), submits this Memorandum as requested by the Court to summarize the evidence presented supporting continuation of the preliminary relief against Charles Gitto and Tradex. LaSalle has also filed concurrently herewith its Proposed Findings of Fact and Conclusions of Law.

Charles Gitto and Tradex were only named in Count V of the original complaint as participants in a civil conspiracy to defraud LaSalle.  They did not raise any issue as to the existence of the alleged conspiracy in their Pre-Hearing Memorandum.  Their sole argument was that LaSalle has not presented sufficient evidence of their participation in the alleged conspiracy. A major point made by Charles Gitto and Tradex in their Pre-Hearing Memorandum is that "[i]n response to document requests served on behalf of Charles Gitto, LaSalle admitted that it has no documents to support is contentions … [against Charles Gitto]."  They are able to make this argument because their co-defendants who could implicate them have invoked the Fifth Amendment and Charles Gitto has taken possession of at least 11 boxes of Gitto Global's records and refused to return them.

It can be fairly inferred that Charles Gitto would not be hiding (or have destroyed) documents that show him or Tradex to be innocent.  This makes his argument on the absence of evidence comparable to that in the apocryphal story of the plea by the defendant convicted of killing his parents that he receive leniency because he was an orphan.

Charles Gitto and Tradex seek to minimize the effect of Charles Gitto's use of the Fifth Amendment to keep the records he has from LaSalle by claiming that LaSalle acquired "the vast majority of the document it sought from Charles Gitto" from other sources, and that "LaSalle has suffered little, if any, prejudice" from Charles Gitto's refusal to produce the records.  (C. Gitto Pre-Hearing Mem., p. 4)  Of course, it is not the quantity of the documents LaSalle has been able to obtain, but their quality.  The claim that the documents Charles Gitto is hiding are innocuous is a conclusory statement belied by the fact that Charles Gitto has asserted that their production would tend to incriminate him.

Fortunately, Charles Gitto's sweep of documents at Gitto Global is not fatal to the claims against him and Tradex.

**The Applicable**
**Legal Standards**

The attachments of real property and the equitable attachments of Charles Gitto and Tradex in the reach and apply Defendants effected by reach and apply injunctions should be sustained upon a showing that LaSalle has a reasonable likelihood of recovering a judgment against Charles Gitto and Tradex. *International Assoc. of Bridge, Structural and Ornamental Iron Workers v. Burtman Iron Works, Inc.*, 164 F.R. D. 305, 306 (D. Mass. 1995); *The Aetna Casualty and Surety Co. v. Rodco Autobody*, 138 F.R.D. 328, 332 (D. Mass. 1991), *affd.*, 43 F.3d 1546 (1st Cir. 1994); *Tilcan Capaldi, Inc. v. Feldman*, 249 F.3d 54, 59 (1st Cir. 2001); *GMAC v. Camilleri Bros. Chevrolet of Holyoke, Inc.*, 188 F. Supp. 2d 73, 76 (D. Mass. 2001). The preliminary injunction preserving the status quo prohibiting Charles Gitto and Tradex from disposing of any property should also be upheld upon the same basis as that required for the attachments, plus a showing that LaSalle suffer irreparable injury if the preliminary injunction is not continued, LaSalle will suffer more if the preliminary injunction is vacated than Charles Gitto and Tradex from the continuance of the preliminary injunction, and the public interest favors the continuance of the preliminary injunction. *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 161-62 (1st Cir. 2004); *Coalition to Protest the Democratic National Convention v. City of Boston*, 327 F. Supp. 2d 61, 69 (D. Mass. 2004).

**LaSalle Has a**
**Reasonable Likelihood of Success**

The Court at the December 10, 2004 hearing gave LaSalle leave to file an amended complaint. LaSalle has filed its Amended Complaint concurrently herewith. The Amended complaint differs from the original complaint as to Charles Gitto and Tradex in that in addition to their being defendants in a claim for civil conspiracy (Amdt. Cmplt. Count IV), they have been named as defendants in a claim that they participated in a civil RICO violation. (Amdt. Cmplt. Count I) While the nature and proof of a civil conspiracy and a RICO conspiracy differ, the two conspiracies alleged by LaSalle are similar and will be referred collectively herein as the conspiracy.

The facts that have been presented by LaSalle show that LaSalle has a reasonable likelihood of success on its claims against both Charles Gitto and Tradex.

In July, 2002, LaSalle agreed to provide Gitto Global a revolving loan for up to $27 million based upon Gitto Global's genuine sales and actual inventory. Under this arrangement, Gitto Global was to deposit its customers' payments into an account at Fleet Bank. These deposits would be applied to LaSalle's loan. In turn, Gitto Global, on a daily basis, provided LaSalle a signed daily loan report and a borrowing base certificate requesting a disbursement under the revolving loan.

After 26 months, Gitto Global was in bankruptcy with over $30 million owed to LaSalle on the revolving loan. The growth of the loan amount was fed by Gitto Global's reports of amounts due from fictitious customers of Gitto Global. The Defendants accomplished this through an elaborate, well-timed flow of paper that created a false impression that Gitto Global had increasing sales and revenue. Over the 26 months, Defendants created numerous false

invoices, bills of lading and other documents that purported to evidence millions of dollars of sales to six companies. To generate funds to serve as payments for these fictitious sales, Defendants engaged in a check-kiting scheme. Gitto Global deposited checks drawn upon an account at Clinton State Bank by Kingsdale Corp., d/b/a J&J Chemical Distributors ("J&J Chemical"). Reciprocal checks from Gitto Global were deposited to J&J Chemical's account at Clinton Bank to cover the deposited J&J Chemical checks.

The evidence that a conspiracy existed at Gitto Global to defraud LaSalle is strong and has not been challenged by Charles Gitto or Tradex. Instead, the position taken by Charles Gitto and Tradex has been that evidence does not show that they participated in the conspiracy. In this regard, proof by inference is common in conspiracy cases, and once the existence of a conspiracy is established, even slight evidence implicating a defendant may be sufficient proof of his involvement. *U.S. v. Smith*, 726 F.2d 852, 866 (1st Cir. 1984). For a civil conspiracy, the facts must show that Charles Gitto and Tradex acted in concert with the conspirators to further the fraud on LaSalle. *Aetna Casualty Surety Co. v. P&B Auto Body*, 43 F.3d 1546, 1564 (1st. Cir. 1994).

The misrepresentation of Gitto Global's accounts receivable did not begin with the LaSalle loan in 2002. Defendant Janice Chaisson, who had been Gitto Global's accounts receivable supervisor, admitted to Matthew Stillwell that the creation of false invoices and the complimentary check-kite using J&J Chemical had been going on since at least 2001. (Stillwell 12/6/04 Aff. ¶s 5-10) J&J Chemical's account at Clinton Bank was opened in February, 2001. Ex. CSB 1.

Charles Gitto knew of falsification of Gitto's accounts receivable and the operation of the check-kiting scheme. On May 24, 2002, Charles Gitto sent a letter to Guaranty Business Credit

with which he submitted a schedule of Gitto Global's purported accounts receivables that showed over $15 million due from six companies that Charles Gitto, as head of Gitto Global's production, knew had not purchased anything from Gitto Global.

There is no evidence that J&J Chemical served any purpose other than to provide a critical point in the check-kite. Yet, on three occasions when the operation of the check-kite was threatened by actions at Clinton Bank, Charles Gitto intervened to keep the check-kite operating. In 2002, he wire transferred $300,000 to Clinton Bank. In 2004, he gave a personal guaranty and caused Tradex to provide a mortgage on the property it owned, a security interest in Tradex inventory and a guaranty. There is no basis for believing that this was done by Charles Gitto out of the goodness of his heart.

The only inference that can be drawn from the aid Charles Gitto and Tradex gave to maintain the smooth operation of the J&J Chemical account at Clinton Bank is that they were participants in the conspiracy to defraud LaSalle. Charles Gitto and Tradex are not mindless lenders. No documents have been found or produced that show either one of them received anything for providing the money, the security and the guarantees that they did.

Charles Gitto has had an opportunity to rebut the inference that he was a participant in the conspiracy. Instead, he invoked the Fifth Amendment. This constitutes persuasive evidence that both Charles Gitto and Tradex were participants in the conspiracy. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them"); *U.S. v. Tod*, 263 U.S. 149, 153-54 (1923) ("Silence is often evidence of the most persuasive character."), quoted with approval in *Baxter*; *FDIC v. Elio*, 39 F.3d 1239, 1248 (1st Cir. 1994); *In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651, 664 (7th Cir.

2002), *cert. den.*, 537 U.S. 1188 (2003) (invocation of Fifth Amendment by corporation's former officers constituted evidence that employer engaged in price-fixing conspiracy).

In addition, the fact that five of the individual conspirators, all former Gitto Global employees, have also taken the Fifth Amendment provides further support for the adverse influence against Charles Gitto and Tradex. *LiButti v. U.S.*, 107 F.3d 110, 121-23 (2d Cir. 1997).

Other facts also point to Charles Gitto being a member of the conspiracy. Just prior to Gitto Global's bankruptcy, on September 15 and 16, 2004, 11 to 13 boxes of records were removed from Gitto Global and taken to Charles Gitto's home. As this Court is aware from the proceedings held herein on December 3, 2004, Charles Gitto has refused to produce those records based upon his Fifth Amendment right. A number of inferences can be drawn from these facts:

1.    The missing Gitto Global records implicate Charles Gitto in the scheme to defraud LaSalle. *Rogers v. U.S.* 340 U.S. 307, 372-73 (1951) ("the privilege against self-incrimination presupposes a real danger of legal detriment arising from the disclosure."); *Nation-wide Check Corporation, Inc. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 217 (1st Cir. 1982) ("where the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or distribution as evidence that the party which has prevented production did so out of the well-founded fear that the contents would harm him"); *Knightsbridge Marketing Services, Inc. v. Promociones Y Proyectos, S.A.*, 728 F.2d 572, 575 (1st Cir. 1984) (same); *Welsh v. U.S.,* 844 F.2d 1239, 1247 (6th Cir. 1988) ("where one party wrongfully denies another the evidence necessary to establish a fact in dispute, the court should draw the strongest allowable inferences in favor of the aggrieved party"); *Bogan v. Northwestern Mutual Life Ins. Co.*, 144 F.R.D. 51, 55 (S.D.N.Y. 1992) ("Adverse inferences might also be

drawn from failure to produce evidence within the control of a party; such inferences might refer to specific matters or to the entire case.").

2.      Charles Gitto was a major participant in the operation of Gitto Global and the conspiracy to defraud LaSalle.  The records brought to Charles Gitto came from the offices of a number of the Defendants who were at Gitto Global.  It is reasonable to infer that the participants in the fraud would want any incriminating records removed and placed with a confederate they could trust.  LaSalle does not know what Charles Gitto has done with the records, but his possession or destruction of them has served to obstruct LaSalle's investigation of what occurred at Gitto Global.

There is also circumstantial evidence of Charles Gitto's participation in the fraud conspiracy.  Usually, those who are at the top of a fraud conspiracy reap the rewards of the fraud.  Charles Gitto's cavalier use of Gitto Global as a personal piggy bank is indicative of his being a knowing participant in the fraud.  The company paid for work done at his home.  During 2003 and the first nine months of 2004, he received $320,948 for which no explanation is given in the company's records.

The uncontradicted facts and the inferences that can be drawn from the actions of Charles Gitto in hiding  records and refusing to testify on the ground that he might incriminate himself taken together indicate that LaSalle will succeed in its claims against Charles Gitto and Tradex.  This showing of LaSalle's likelihood of success against Charles Gitto and Tradex satisfies the requirement for the maintenance of the attachments that have been effected on their property.  The three additional factors for the preliminary injunction are also present.

**LaSalle Faces**
**Irreparable Injury**

It is apparent that unless the preliminary injunction is continued, any money judgment against Charles Gitto and Tradex will be illusory.  Millions of dollars flowed into Gitto Global based on bogus sales.  With no cost of goods sold, this was pure profit.  Yet, Gitto Global is in bankruptcy and LaSalle is owed over $30 million.  What happened to the millions of dollars?  No conspirator with knowledge of what was done with the money has come forward with that information.  They have all taken the Fifth Amendment.  Charles Gitto has at least 11 boxes of records that might disclose where some of the money went, but he has succeeded in his refusal to produce them based upon the Fifth Amendment.

All of the circumstances indicate that if the preliminary injunction is discontinued, the assets that have been frozen under the injunction will be dissipated or hidden.  This constitutes irreparable harm for which the preliminary injunction is appropriate.  *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 53 (1st Cir. 1986) ("a preliminary injunction can be granted when it is necessary to protect the damages remedy"); *In re: Estate of Ferdinand Marcos*, 25 F.3d 1467, 1478-1480 (9th Cir. 1994), *cert. den.*, 115 S. Ct. 934 (1995); *Airlines Reporting Corp. v. Barry*, 825 F. 2d 1220, 1226-27 (8th Cir. 1987).

**The Balance of Hardships**
**Favors Continuation of the**
**Preliminary Injunction**

Charles Gitto and Tradex did not make any claim that the preliminary injunction has imposed any hardship on them.  No evidence of hardship on them has been presented.  The preliminary injunction freezes the status quo without depriving Charles Gitto or Tradex of the funds necessary for them to handle their normal affairs.  To release the freeze, would permit

Charles Gitto and Tradex to render themselves judgment-proof and destroy the benefit of any judgment against them. This tips the balance of hardship decisively in favor of the injunction. *Teradyne*, 797 F.2d at 53.

**The Preliminary Injunction**
**Serves the Public Interest**

The public interest is served by remedies that thwart schemes to defraud, such as the preliminary injunction. Charles Gitto and Tradex have not cited any public interest that would be served by the preliminary injunction being terminated.

**Tradex's Documents**
**Are Not Trustworthy**

On the eve of the December 10, 2004 hearing, Tradex proposed that certain documents that it sent to LaSalle's counsel be accepted at the hearing as from Tradex's records (CNG 1-162) . LaSalle, at the hearing, agreed to the admission of those documents as coming from Tradex's records. Tradex did not disclose the purpose of the records at the hearing. These records, however, should have no impact on the attachments or the preliminary injunction.

Tradex may claim the records show Gitto Global's payments to Tradex were legitimate. But, Tradex was a participant in the conspiracy, and given the circumstances of this case, the attachments and preliminary injunction imposed on it are appropriate regardless of whether Gitto Global's payments to it were legitimate. Tradex is a coconspirator who—if freed from the attachment and preliminary injunction—will undoubtedly render itself insolvent.

There is also a serious question as to the trustworthiness of any documents produced by any Defendant. The false sales and inventory records generated by Gitto Global withstood five field examinations and one audit. If the Tradex records evidence actual obligations and

transactions, a representative of Tradex could have testified to the underlying facts. This failure to present a knowledgeable individual can be deemed an indication that the records do not reflect what really occurred. *Interstate Circuit v. U.S.*, 306 U.S. 208, 226 (1939) (defendants' failure under the circumstances to call individuals with knowledge is itself persuasive that their testimony, if given, would have been unfavorable).

Tradex' documents are also suspicious by the absence of important records and facial inconsistencies. The records include invoices from Tradex International Corp. for loans 1, 2 and 3, but no notes evidencing those loans. These invoices are addressed to Frank Miller. Since the note receivable interest calculations (CNG 19-23, 54-55, 90, 92, 94, 127-128) refer only to Frank Miller and are from Charles Gitto and indicate loan "#1", "#2", "#3" or "#4" consistent with the invoices, a fair assumption is that these pertain to loans from Charles Gitto to Frank Miller. And, based upon Gitto Global's general ledger and checks produced by Tradex (CNG 142-145), Gitto Global was making the payments on Frank Miller's behalf, whether to Charles Gitto or Tradex.

The documents do include notes to Charles Gitto from Frank and Maria Miller (CNG 95-96, CNG 150-152) and mortgages (CNG 56-60, CNG 153-157). However, the May 24, 2002 mortgage (CNG 56-60) refers to a $350,000 note and the May 24, 2002 note (CNG 95-96) is for only $250,000. The April 19, 2002 mortgage (CNG 153-157) refers to a $250,000 note, but none was produced. Finally, there is a June 4, 2002 note (CNG 150-152) for $300,000.

279881.1 042314-34311

**Conclusion**

For the foregoing reasons, the Court should maintain the attachments and preliminary injunction entered herein as to Charles N. Gitto, Jr. and Tradex Corporation.

Dated: December 31, 2004                          Respectfully submitted,

                                                  LASALLE BUSINESS CREDIT, LLC


                                                  By:  _____/s/ Patrick W. Manzo_____
                                                            One of its attorneys

Christopher J. Panos (BBO# 555273)
Patrick W. Manzo (BBO# 651891)
Craig and Macauley Professional Corporation
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA  02210
Phone: (617) 367-9500
Fax:    (617) 742-1788

Eric S. Rein
John L. Conlon
Bethany N. Schols
Schwartz, Cooper, Greenberger & Krauss, Chtd.
180 N. LaSalle Street, Suite 2700
Chicago, IL  60601
Phone:  (312) 346-1300
Fax:  (312) 782-8416