**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LASALLE BUSINESS CREDIT, LLC f/k/a )<br>LASALLE BUSINESS CREDIT, INC.,   )<br>                                                                )<br>                         Plaintiff,             )<br>        v.                                              )<br>GARY C. GITTO, et al.,                    )<br>                                                                )<br>                         Defendants,        )<br>        and                                          )<br>                                                                )<br>FLEET NATIONAL BANK, et al.,      )<br>                                                                )<br>        Trustee Process Defendants,  )<br>                                                                )<br>        and                                          )<br>                                                                )<br>FIDELITY INVESTMENTS, INC.,       )<br>et al.,                                                 )<br>                                                                )<br>        Reach-and-Apply Defendants.  ) | Case No. 04-12227-DPW |

**MOTION FOR A PRELIMINARY INJUNCTION PRESERVING THE
STATUS QUO AS TO DEFENDANTS MARIA MILLER, LOUIS J.
PELLEGRINE, JR. AND TRADEX INTERNATIONAL CORPORATION**

Pursuant to Fed.R.Civ.P. 65, plaintiff LaSalle Business Credit, LLC f/k/a LaSalle Business Credit, Inc. ("LaSalle"), requests that this Court enter a preliminary injunction in the form attached hereto enjoining defendants Maria Miller, Louis J. Pellegrine ("Louis Pellegrine"), and Tradex International Corporation ("Defendants"), or any of them, or their officers, agents, servants, employees, attorneys, beneficiaries and all persons in active concert or participation with it who receive actual notice of the Order, by personal service or otherwise, from assigning, alienating, selling, transferring, pledging, encumbering, concealing, hypothecating or disposing of any of their assets pending further order of this Court.

In support hereof, LaSalle refers the Court to the First Amended Complaint and

the Affidavits of Matthew Stilwell[1], Steven Snyder [#143], Oren White [#144], Roger DeLisle [#145], Rita Bartlett [#147], Robyn Merchant [#140] and David Minardi [#141], the Depositions of Robert Paulhus and Michael Angelini (portions of which are attached hereto as *Exhibit A*) and a letter agreement by and among Clinton Savings Bank, Gitto Global, and Tradex dated August 18, 2004 (the "Letter Agreement", attached hereto as *Exhibit B*), all filed either herewith or previously in this action and incorporated herein by reference.  LaSalle further states:

I. SUMMARY OF RELEVANT FACTS

1. The Defendants are or were employees of, or otherwise had a relationship with Gitto Global Corporation ("Gitto Global"), a Massachusetts corporation owned by Frank Miller, Gary Gitto and Nancy Gitto Panagiotes.  *Stilwell 1 ¶¶ 4, 30, 41.*

2. Gitto Global filed a Chapter 11 petition in the United States Bankruptcy Court for the District of Massachusetts (Docket #04-45386) on September 24, 2004.  On or about October 15, 2004 the Bankruptcy Court appointed an Examiner to investigate the existence of pre-petition fraud or other mismanagement in the affairs of Gitto Global.

3. On or about July 25, 2002, LaSalle and Gitto Global entered into a Loan and Security Agreement, wherein LaSalle made a revolving loan not to exceed $27,000,000, secured by certain of Gitto Global's accounts receivable and inventory ("LaSalle Revolving Loan").  In addition, LaSalle agreed to make a term loan to Gitto Global in the original principal amount of $3,000,000 ("LaSalle Term Loan"). The LaSalle Revolving Loan required Gitto Global to make certain ongoing representations in

---

[1] LaSalle has previously filed three affidavits for Mr. Stilwell, dated October 21, 2004 ("Stillwell 1") [#4], November 8, 2004 ("Stilwell 2") [#62] and December 6, 2004 ("Stilwell 3") [#152].  In addition, LaSalle has filed herewith another affidavit of Mr. Stilwell, dated January 18, 2005 ("Stilwell 4").

order to continue borrowing against the loan.  In addition, Gitto Global was required to make certain deposits of payments received from customers into an account (the "Fleet Blocked Account") established with Fleet National Bank ("Fleet").  *Stilwell 1 ¶¶ 5 – 6, 11-13*.

### **Louis J. Pellegrine, Jr.**

4.	Pellegrine participated in creating and maintaining Hemisphere Distrbution Corporation ("Hemisphere").  Hemisphere was a fictitious customer of Gitto Global.  *Stilwell 1 ¶¶ 30; 3, 7*.

5.	Louis Pellegrine advanced money to open the checking account and the money market account for Hemisphere.  Louis Pellegrine received at least one Verizon cellular telephone invoice at his office on behalf of Hemisphere and paid that Verizon invoice out of his funds.  None of the checks from Hemisphere to Gitto Global were ever cashed by Gitto Global.  The checks were fictitious as were the invoices which they purportedly paid.  *Stilwell 3 ¶ 7, Stilwell 4 ¶ 4, Stilwell 1 ¶ 30*.

6.	In or around January of 2004, Frank Miller sent requests for confirmation of accounts receivable purportedly to Hemisphere and other fictitious customers of Gitto Global.  Louis Pellegrine sent the confirmation letters from his office in Massachusetts to LaSalle in New York, via facsimile, in connection with Gitto Global's upcoming February, 2004 field examination.  The confirmations falsely represented that certain fictitious customers owed money to Gitto Global.  At least as to Hemisphere, Pellegrine knew or should have known the confirmation was false.  *Stilwell 3 ¶ 28*.

### **Maria Miller**

7.	At the direction of Frank Miller and Maria Miller, Robyn Merchant, an

employee of Gitto Global, changed the quantities or changed the price per pound of inventory listed in Gitto Global's computer system. These inflated quantities and/or prices were then provided to LaSalle in order to borrow additional funds under the LaSalle revolving loan. *Merchant Affidavit* ¶¶ 5,6.

8.  Maria Miller knowingly participated in the scheme to defraud LaSalle by preparing false information to be provided to LaSalle. Maria Miller knowingly entered data into the computer systems at Gitto Global relating to fictitious sales to CCC, Hitachi and Velco in order to generate fictitious invoices. Maria Miller knowingly directed Robyn Merchant to inflate the value of the inventory at Gitto Global by increasing the quantity or the price per pound of certain products. *Merchant Affidavit* ¶¶ 5,6.

9.  In or around the summer of 2003, Gitto Global acquired inventory from Vitrolite. Gitto Global, at the direction of Frank Miller and Maria Miller, valued this inventory at $5.25/lb. In reality, each knew that the Vitrolite inventory was worth only approximately $.30/lb. By overvaluing this inventory in the borrowing base certificates after the summer of 2003, Gitto Global overstated the value of its collateral in order to borrow additional funds under the LaSalle revolving loan. *Merchant Affidavit* ¶¶ 5,6.

10.  In August, 2004, Frank Miller and Maria Miller, in order to extend the revolving line of credit for J&J Chemical and to keep the check-kite operating through the J&J Chemical Account, pledged a third mortgage on their Bolton residence to secure J&J Chemical's debt to Clinton Bank. *Paulhus Deposition. pp.* 82- 83, 87.

11.  In consideration of security pledged by Gary Gitto, Frank Miller, Maria Miller, Charles Gitto and Tradex, Clinton Bank extended the revolving line of credit for J&J Chemical through September 15, 2004. *Paulhus Deposition. pp.* 74-77, 82, 110-

4

115.

12.   As the check-kiting scheme began to unravel, Maria Miller participated in removing records from Frank Miller's office.  *DeLisle Affidavit* ¶ 8.

**Tradex International Corporation and Tradex Corporation**

13.   Tradex International Corporation and Tradex Corporation (collectively, "Tradex") are for all intents and purposes, one and the same entity.  *See Angelini Deposition p.* 60.

14.   To avoid Clinton Bank's suspending its policy of paying on checks deposited to the J&J Chemical Account before they cleared and thereby adversely affecting the operation of the check-kite, Charles Gitto attended the closing of the Clinton Bank revolving loan transaction with Clinton Bank.  As president and treasurer of Tradex, Charles Gitto had Tradex provide the Clinton Bank as security for the line of credit facility a limited non-recourse guarantee, a mortgage on the property occupied by Gitto Global and a security interest in certain inventory.  *Paulhus Deposition. pp.* 32, 45, 60-63.

15.   On August 18, 2004, Charles Gitto, in order to preserve the operation of the check-kiting being conducted to induce LaSalle to provide loan funds to Gitto Global, gave Clinton Bank guarantees from him and Tradex, so that Clinton Bank would continue to allow payments on uncollected funds in the J&J Chemical account through September 15, 2004.  The agreement with Clinton Bank make clear that Charles Gitto and Tradex were aware of Gitto Global's borrowing arrangement with LaSalle.  *Paulhus Deposition, pp.* 32, 60, 88-89; *Letter Agreement*.

16.   Between July, 2002 and September, 2004, Tradex, through Charles Gitto,

knowingly participated in the scheme by providing a guarantee, a mortgage on the property occupied by Gitto Global and a security interest in certain inventory to Clinton Bank to keep the check-kite operating through the J&J Chemical Account. *Paulhus Deposition pp.* 32, 45, 60-63, 88-89.

17.     In consideration of the security pledged by Gary Gitto, Frank Miller, Maria Miller, Charles Gitto and Tradex, Clinton Bank extended the revolving line of credit for J&J Chemical through September 15, 2004. *Id.*

18.     Gitto Global obtained loan advances from LaSalle under false pretenses and transferred the following amounts to Tradex: Interest payments of $230,090, prepaid rent of $217,061, consulting fees of $34,000 and unaccounted for disbursements of $134,546. *Stilwell 2,* ¶; *Stilwell 3,* ¶18.

## II.  ARGUMENT IN SUPPORT OF STATUS QUO INJUNCTION

This Motion should be granted in order to preserve assets of Defendants that may be available to satisfy judgments that LaSalle expects to obtain in the captioned action from being lost, concealed, injured, diminished in value or squandered.

### A.     Standard for Granting Relief

The traditional standard for granting a preliminary injunction requires the plaintiff to show that in the absence of its issuance the plaintiff will suffer irreparable injury and also that he is likely to prevail on the merits. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975).  It is recognized, that a district court must weigh carefully the interests on both parties. *Id.*

### B.     LaSalle is Likely to Prevail on the Merits

There is a substantial likelihood and reasonable expectation that LaSalle will be

awarded judgment against the defendants, exclusive of all costs, in excess of $30,000,000. LaSalle has, in its Complaint and supporting affidavits, alleged sufficient facts to establish the conduct of Defendants and that LaSalle's losses were occasioned by that conduct.

      C.      <u>Absent Injunctive Relief, LaSalle will Suffer Irreparable Injury</u>

LaSalle is aware of no liability insurance coverage available to any of the Defendants to satisfy a judgment against them in this action. *Stillwell 1* ¶ 65. Upon information and belief and based on previous conduct of the Defendants alleged in the Complaint, there exists an immediate risk that the Defendants will liquidate or dispose of their assets, and thereby be unable to satisfy a judgment to be obtained by LaSalle. *Stillwell 1* ¶ 66. LaSalle will suffer substantial and irreparable harm if it is not granted injunctive relief because LaSalle knows of no other assets of the Defendants from which the ultimate judgment can be satisfied. *Stillwell 1* ¶ 68. In such a situation, LaSalle would have no viable remedy at law. The harm to LaSalle is far greater than any harm that may befall Defendants by granting this injunction. Given the nature of the claims against the Defendants and the evidence that is unfolding supporting these claims, there is a clear risk that the Defendants will conceal, convey or dissipate asset pending determination of these claims.

WHEREFORE, LaSalle Business Credit, LLC respectfully requests that this Court enter an Order in the form attached hereto.

|  |  |
|---|---|
| Dated: January 28, 2005 | Respectfully submitted, |
|  | LASALLE BUSINESS CREDIT, LLC |
|  | By: ___/s/ Patrick W. Manzo_____ |
|  | One of its attorneys |

Christopher J. Panos (BBO# 555273)
Patrick W. Manzo (BBO# 651891)
Craig and Macauley Professional Corporation
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA  02210
Phone: (617) 367-9500
Fax:   (617) 742-1788

Eric S. Rein
John L. Conlon
Bethany N. Schols
Schwartz, Cooper, Greenberger & Krauss, Chtd.
180 N. LaSalle Street, Suite 2700
Chicago, IL  60601
Phone:  (312) 346-1300
Fax:  (312) 782-8416

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LASALLE BUSINESS CREDIT, LLC f/k/a )<br>LASALLE BUSINESS CREDIT, INC.,       )<br>                                                                )<br>                    Plaintiff,                              )<br>         v.                                                    )<br>GARY C. GITTO, et al.,                         )<br>                                                                )<br>                    Defendants,                        )<br>         and                                                 )<br>                                                                )<br>FLEET NATIONAL BANK, et al.,          )<br>                                                                )<br>         Trustee Process Defendants,      )<br>                                                                )<br>         and                                                 )<br>                                                                )<br>FIDELITY INVESTMENTS, INC.,            )<br>et al.,                                                        )<br>                                                                )<br>         Reach-and-Apply Defendants.   ) | Case No. 04-12227-DPW |

**[PROPOSED] ORDER TO SHOW CAUSE AND TEMPORARY
RESTRAINING ORDER PRESERVING THE STATUS QUO**

TO: Maria Miller, Louis Pellegrine and Tradex International Corporation ("Defendants"):

Upon a showing made by plaintiff LaSalle Business Credit, LLC f/k/a LaSalle Business Credit, Inc. ("LaSalle") in the *Motion For Temporary Restraining Order, And, After Expedited Hearing, A Preliminary Injunction Preserving The Status Quo*, together will all supporting papers, it appears to the Court that unless restrained by order of this Court, the plaintiff will suffer immediate and irreparable injury, loss or damage before notice can be given and the Defendants can be heard in opposition to the granting of a temporary restraining order:

IT IS ORDERED that Maria Miller, Louis Pellegrine and Tradex International Corporation must appear before this Court on _____ at

2

_____ and show cause why a preliminary injunction should not issue, pending the decision of the Court in this action.

IT IS FURTHER ORDERED that, pending this hearing on the preliminary injunction, Maria Miller, Louis Pellegrine and Tradex International Corporation, and each of their officers, agents, servants, employees, attorneys, beneficiaries and all persons in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, are restrained from assigning, alienating, selling, transferring, pledging, encumbering, concealing, hypothecating or disposing of any of their assets pending further order of this Court.

Dated: _____

_____
United States District Judge