UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-12227 (DPW)

| | |
|---|---|
| LASALLE BUSINESS CREDIT, LLC f/k/a<br>LASALLE BUSINESS CREDIT, INC.<br><br>　　　　　Plaintiff,<br><br>v.<br><br>GARY C. GITTO, et al,<br><br>　　　　　Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT GARY C. GITTO'S OPPOSITION TO PLAINTIFF'S
PROTECTIVE MOTION FOR CLARIFICATION AND, IN THE
ALTERNATIVE, MOTION FOR RELIEF FROM JUDGMENT**

Plaintiff LaSalle Business Credit has moved the Court to clarify, or modify, certain language in the preliminary injunction it issued in this case against the defendant, so as to permit it to enforce the separate and final default judgment it has obtained against defendant on Count V of its First Amended Complaint (the guarantee count), "even if such efforts frustrate the ability of Mr. Gitto to spend funds on ordinary living expenses in the amount permitted by this Court under the Preliminary Injunction."

Defendant opposes this request. As set forth below, the Court's prior order plainly insulates sufficient funds for the defendant to live and pay his legal expenses during the pendency of this lawsuit. In granting plaintiff a separate and final judgment under Rule 54(b) the Court clearly did not intend to change the status quo in this respect, and neither the plaintiff nor the defendant then believed that it did. Alternatively, if necessary, defendant moves,

pursuant to F.R.Civ.P. 60(b)(1) and (6) for relief from the judgment so that he can maintain his defense, and his daily existence, while this case is litigated.

In support thereof, defendant says as follows:

1. On November 5, 2004, the Court issued a preliminary injunction against defendant and others, with the expectation, expressed at the hearing, that the parties would attempt to negotiate provisions which would permit the defendants to pay their living and legal expenses during the course of the lawsuit. Thereafter, on January 10, 2005 (Fifth Supplement to Preliminary Injunction) and on March 29, 2005 (Sixth Modification of Injunction Preserving Status Quo and Order [As to Gary Gittto]), the Court, by agreement, entered orders permitting the defendant to use his assets to pay legal and ordinary living expenses. In particular, the March 29 order states, in pertinent part:

> Notwithstanding any other provision of the Injunction to the contrary, Defendant Gary Gitto may borrow money . . . , receive cash gifts from third parties and spend up to $5000 per week of such funds or of funds that he has earned as compensation from any third-party, unaffiliated employer, provided that such funds are used solely to pay legal expenses or ordinary and necessary living expenses consisting of food, utilities, mortgage payments, tuition and other current school expenses, clothing, medical expenses, insurance, spousal or child support obligations, necessary maintenance of real property and motor vehicles, vehicle leases, fuel for heating or motor vehicles.

That order also permitted withdrawal of $75,000 from defendant's IRA account to pay legal expenses.

2. In the meantime, on February 18, 2005 – despite the fact that in opposing defendant's original motion for a stay of proceedings, plaintiff had disavowed any intention to do so – plaintiff moved for summary judgment on Count V of its First Amended Complaint, based upon

a personal guarantee given by defendant to LaSalle, and for a separate and final judgment under Rule 54(b). In seeking the separate judgment Lasalle emphasized what it claimed to be the complete lack of interrelationship between Count V and the other counts and that delay would constitute a hardship to it. It emphasized that it was in a "race" against other creditors to obtain priority. Referring to its existing injunction and attachments, it asserted that they were insufficient protection, since its attachments would not be valid if any property is located outside of Massachusetts, and that, without a separate judgment, it would be prejudiced by an inability to take advantage of discovery and remedies available to judgment creditors. (Plaintiff's Motion for Summary Judgment and Entry of Separate and Final Judgment (February 18, 2005), p. 5); (Plaintiff's Reply to Opposition of Gary C. Gitto ( March 24, 2005)). It made no suggestion that the order permitting use of assets for living and legal expenses presented any part of its asserted hardship, or that a separate and final judgment would permit it to collect assets that defendant used for this purpose. Indeed, as noted above, during the very same time period, plaintiff was in the process of negotiating and agreeing with defendant on an <u>expansion</u> of that order.

    3. The Court allowed the separate and final judgment on April 8, 2005, principally to prevent plaintiff from being disadvantaged in obtaining priority respect to other creditors. (Memorandum and Order, April 8, 2005) ("principally because it will be disadvantaged in the race among numerous other creditors of Gary Gitto to obtain executable judgments and the correlative means for assuring liquidation of the guaranty.") Plaintiff obtained an execution on June 1, 2005.

    4. On June 15, 2005 plaintiff filed an action for trustee process in the Suffolk Superior Court against defendant and against the Sovereign Bank, as trustee process defendant. Despite

the fact that the plaintiff has asserted numerous claims for trustee process relief within the instant federal lawsuit, in this instance it chose to file a separate action in state court. The Complaint sought an ex parte attachment on the ground that defendant would remove the funds from the bank if notified in advance. See Complaint and supporting Affidavit in SUCV 05-2488-B (Exhibit A). In support of that proposition the Complaint alleged that the federal lawsuit alleges a "pattern of widespread and pervasive fraud," (¶ 10), and that this Court had issued a separate and final judgment "on a certain count." (¶ 6). None of the filed documents pointed out that the judgment was based solely on the guarantee count. The Complaint also alleged that defendant "has previously contributed (by roll-over) non-exempt funds to an Individual Retirement Account in an effort to frustrate LaSalle's attempt to collect on the Judgment and to defeat certain attachment granted in the Gitto litigation." (¶ 11). In fact, however, (as detailed in plaintiff's pending motion, here, to reach and apply defendant's IRA), the rollover contributions were made in September 2004 – before plaintiff even filed its lawsuit. Plaintiff made no mention in any of its papers that this Court had entered an order permitting the defendant to use his assets for living and legal expenses.

  5. Defendant's Sovereign Bank account was used to pay his living expenses. Plaintiff obtained an ex parte order of attachment of this account, and defendant was immediately prevented from paying any of his ordinary expenses.

  6. As soon as he learned of the attachment, defendant's counsel called plaintiff's counsel to obtain an explanation. Plaintiff's counsel stated that plaintiff had been unaware that this was defendant's ordinary living expense account; that the action was filed because LaSalle had received information, from some source, that defendant maintained a far larger account at the

Sovereign Bank; and that upon receiving satisfactory assurance that this account was used for his living expenses, the account would be released.  The assurance was provided, (Exhibit B), the lawsuit was dismissed, (Exhibit C), and the account released. (Exhibit D).

7. Defendant's current contention that its judgment now permits it to take actions which deprive the defendant of assets necessary to pay legal and ordinary living expenses within the limits set by the Court is incorrect.  The language found in the modified injunction, that defendant "may" use his assets in the manner and to the extent set forth by the order is binding on the plaintiff.  And, at least until its recent change of heart, it is evident that plaintiff thought so as well.[1]  In any event, it is plain that this Court had no idea that the effect of granting a separate and final judgment would be to eliminate the provision it had made to allow defendant Gitto to defend himself against the remaining counts.  And it is certainly true that neither defendant nor his counsel had any idea that plaintiff would interpret its judgment to authorize it, in effect, to cancel the living expense portion of the preliminary injunction.

8. If the Court holds that the relevant orders, as now extant, do not prevent plaintiff from utilizing its judgment in this way, then defendant requests, pursuant to F.R.Civ.P. Rule 60(b), that the Court grant relief from the judgment, either because of mistake, under 60(b)(1), since no one interpreted the proposed judgment in this way, or, under 60(b)(6), because this constitutes compelling reason justifying relief from the operation of the judgment.  See e.g. Paul Revere Variable Anuity Insurance Co. v. Zang, 248 F.3d 1 (1st Cir. 2001)("Rule 60(b) affords district courts the equitable power to relieve a party from the force of a final order or judgment under

---

[1] Or, at least, choosing not to file its trustee process action in State Court, avoiding this Court's scrutiny, plaintiff believed that this Court thought so.

certain conditions where necessary to serve the ends of justice[;]" at 4); (district courts have "broad discrection[;]" at 5). If the judgment is used to prevent the defendant from making a defense against the other counts of the plaintiff's complaint, then, in a very real sense, it can hardly be said that the counts are not interrelated, or that "there [was] no just reason for delay," and thus a separate and final judgment is entirely inappropriate under Rule 54(b).

### Request for Oral Argument

Defendant requests a hearing on plaintiff's motion and this response.

WHEREFORE, defendant prays that this Court:

1. Rule that despite the separate and final judgment, the defendant is entitled to maintain sufficient assets to enable his to pay ordinary living expenses and legal expenses to the extent set forth in the Sixth Modification of the preliminary injunction; or, in the alternative,

2. Grant him relief from that judgment.

                                              Gary C. Gitto,
                                              By his attorney,

                                              /s/ *Max D. Stern*
                                              Max D. Stern, BBO #479560
                                              Stern, Shapiro, Weissberg & Garin, LLP
                                              90 Canal Street, 5th Floor
                                              Boston, MA 02114
                                              (617) 742-5800

Dated: August 1, 2005

G:\SSWG\Gitto\LaSalle Business Credit\LaSalle v. Gitto\Response to clarification motion.wpd

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-12227 (DPW)

|  |  |
|---|---|
| LASALLE BUSINESS CREDIT, LLC f/k/a<br>LASALLE BUSINESS CREDIT, INC.<br><br>           Plaintiff,<br><br>v.<br><br>GARY C. GITTO, et al,<br><br>           Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT GARY C. GITTO'S OPPOSITION TO PLAINTIFF'S
PROTECTIVE MOTION FOR CLARIFICATION AND, IN THE
<u>ALTERNATIVE, MOTION FOR RELIEF FROM JUDGMENT</u>**

Plaintiff LaSalle Business Credit has moved the Court to clarify, or modify, certain language in the preliminary injunction it issued in this case against the defendant, so as to permit it to enforce the separate and final default judgment it has obtained against defendant on Count V of its First Amended Complaint (the guarantee count), "even if such efforts frustrate the ability of Mr. Gitto to spend funds on ordinary living expenses in the amount permitted by this Court under the Preliminary Injunction."

Defendant opposes this request. As set forth below, the Court's prior order plainly insulates sufficient funds for the defendant to live and pay his legal expenses during the pendency of this lawsuit. In granting plaintiff a separate and final judgment under Rule 54(b) the Court clearly did not intend to change the status quo in this respect, and neither the plaintiff nor the defendant then believed that it did. Alternatively, if necessary, defendant moves,

pursuant to F.R.Civ.P. 60(b)(1) and (6) for relief from the judgment so that he can maintain his defense, and his daily existence, while this case is litigated.

In support thereof, defendant says as follows:

1. On November 5, 2004, the Court issued a preliminary injunction against defendant and others, with the expectation, expressed at the hearing, that the parties would attempt to negotiate provisions which would permit the defendants to pay their living and legal expenses during the course of the lawsuit. Thereafter, on January 10, 2005 (Fifth Supplement to Preliminary Injunction) and on March 29, 2005 (Sixth Modification of Injunction Preserving Status Quo and Order [As to Gary Gittto]), the Court, by agreement, entered orders permitting the defendant to use his assets to pay legal and ordinary living expenses. In particular, the March 29 order states, in pertinent part:

> Notwithstanding any other provision of the Injunction to the contrary, Defendant Gary Gitto may borrow money . . . , receive cash gifts from third parties and spend up to $5000 per week of such funds or of funds that he has earned as compensation from any third-party, unaffiliated employer, provided that such funds are used solely to pay legal expenses or ordinary and necessary living expenses consisting of food, utilities, mortgage payments, tuition and other current school expenses, clothing, medical expenses, insurance, spousal or child support obligations, necessary maintenance of real property and motor vehicles, vehicle leases, fuel for heating or motor vehicles.

That order also permitted withdrawal of $75,000 from defendant's IRA account to pay legal expenses.

2. In the meantime, on February 18, 2005 – despite the fact that in opposing defendant's original motion for a stay of proceedings, plaintiff had disavowed any intention to do so – plaintiff moved for summary judgment on Count V of its First Amended Complaint, based upon

-2-

a personal guarantee given by defendant to LaSalle, and for a separate and final judgment under Rule 54(b). In seeking the separate judgment Lasalle emphasized what it claimed to be the complete lack of interrelationship between Count V and the other counts and that delay would constitute a hardship to it. It emphasized that it was in a "race" against other creditors to obtain priority. Referring to its existing injunction and attachments, it asserted that they were insufficient protection, since its attachments would not be valid if any property is located outside of Massachusetts, and that, without a separate judgment, it would be prejudiced by an inability to take advantage of discovery and remedies available to judgment creditors. (Plaintiff's Motion for Summary Judgment and Entry of Separate and Final Judgment (February 18, 2005), p. 5); (Plaintiff's Reply to Opposition of Gary C. Gitto ( March 24, 2005)). It made no suggestion that the order permitting use of assets for living and legal expenses presented any part of its asserted hardship, or that a separate and final judgment would permit it to collect assets that defendant used for this purpose. Indeed, as noted above, during the very same time period, plaintiff was in the process of negotiating and agreeing with defendant on an <u>expansion</u> of that order.

    3. The Court allowed the separate and final judgment on April 8, 2005, principally to prevent plaintiff from being disadvantaged in obtaining priority respect to other creditors. (Memorandum and Order, April 8, 2005) ("principally because it will be disadvantaged in the race among numerous other creditors of Gary Gitto to obtain executable judgments and the correlative means for assuring liquidation of the guaranty.") Plaintiff obtained an execution on June 1, 2005.

    4. On June 15, 2005 plaintiff filed an action for trustee process in the Suffolk Superior Court against defendant and against the Sovereign Bank, as trustee process defendant. Despite

the fact that the plaintiff has asserted numerous claims for trustee process relief within the instant federal lawsuit, in this instance it chose to file a separate action in state court. The Complaint sought an ex parte attachment on the ground that defendant would remove the funds from the bank if notified in advance. See Complaint and supporting Affidavit in SUCV 05-2488-B (Exhibit A). In support of that proposition the Complaint alleged that the federal lawsuit alleges a "pattern of widespread and pervasive fraud," (¶ 10), and that this Court had issued a separate and final judgment "on a certain count." (¶ 6). None of the filed documents pointed out that the judgment was based solely on the guarantee count. The Complaint also alleged that defendant "has previously contributed (by roll-over) non-exempt funds to an Individual Retirement Account in an effort to frustrate LaSalle's attempt to collect on the Judgment and to defeat certain attachment granted in the Gitto litigation." (¶ 11). In fact, however, (as detailed in plaintiff's pending motion, here, to reach and apply defendant's IRA), the rollover contributions were made in September 2004 – before plaintiff even filed its lawsuit. Plaintiff made no mention in any of its papers that this Court had entered an order permitting the defendant to use his assets for living and legal expenses.

5. Defendant's Sovereign Bank account was used to pay his living expenses. Plaintiff obtained an ex parte order of attachment of this account, and defendant was immediately prevented from paying any of his ordinary expenses.

6. As soon as he learned of the attachment, defendant's counsel called plaintiff's counsel to obtain an explanation. Plaintiff's counsel stated that plaintiff had been unaware that this was defendant's ordinary living expense account; that the action was filed because LaSalle had received information, from some source, that defendant maintained a far larger account at the

Sovereign Bank; and that upon receiving satisfactory assurance that this account was used for his living expenses, the account would be released.  The assurance was provided, (Exhibit B), the lawsuit was dismissed, (Exhibit C), and the account released. (Exhibit D).

7.  Defendant's current contention that its judgment now permits it to take actions which deprive the defendant of assets necessary to pay legal and ordinary living expenses within the limits set by the Court is incorrect.  The language found in the modified injunction, that defendant "may" use his assets in the manner and to the extent set forth by the order is binding on the plaintiff.  And, at least until its recent change of heart, it is evident that plaintiff thought so as well.[1]  In any event, it is plain that this Court had no idea that the effect of granting a separate and final judgment would be to eliminate the provision it had made to allow defendant Gitto to defend himself against the remaining counts.  And it is certainly true that neither defendant nor his counsel had any idea that plaintiff would interpret its judgment to authorize it, in effect, to cancel the living expense portion of the preliminary injunction.

8.  If the Court holds that the relevant orders, as now extant, do not prevent plaintiff from utilizing its judgment in this way, then defendant requests, pursuant to F.R.Civ.P. Rule 60(b), that the Court grant relief from the judgment, either because of mistake, under 60(b)(1), since no one interpreted the proposed judgment in this way, or, under 60(b)(6), because this constitutes compelling reason justifying relief from the operation of the judgment.  See e.g. Paul Revere Variable Anuity Insurance Co. v. Zang, 248 F.3d 1 (1st Cir. 2001)("Rule 60(b) affords district courts the equitable power to relieve a party from the force of a final order or judgment under

---

[1] Or, at least, choosing not to file its trustee process action in State Court, avoiding this Court's scrutiny, plaintiff believed that this Court thought so.

certain conditions where necessary to serve the ends of justice[;]" at 4); (district courts have "broad discrection[;]" at 5). If the judgment is used to prevent the defendant from making a defense against the other counts of the plaintiff's complaint, then, in a very real sense, it can hardly be said that the counts are not interrelated, or that "there [was] no just reason for delay," and thus a separate and final judgment is entirely inappropriate under Rule 54(b).

### Request for Oral Argument

Defendant requests a hearing on plaintiff's motion and this response.

WHEREFORE, defendant prays that this Court:

1. Rule that despite the separate and final judgment, the defendant is entitled to maintain sufficient assets to enable his to pay ordinary living expenses and legal expenses to the extent set forth in the Sixth Modification of the preliminary injunction; or, in the alternative,

2. Grant him relief from that judgment.

                                          Gary C. Gitto,
                                        By his attorney,

                                        /s/ *Max D. Stern*
                                        Max D. Stern, BBO #479560
                                        Stern, Shapiro, Weissberg & Garin, LLP
                                        90 Canal Street, 5th Floor
                                        Boston, MA 02114
                                        (617) 742-5800

Dated: August 1, 2005

G:\SSWG\Gitto\LaSalle Business Credit\LaSalle v. Gitto\Response to clarification motion.wpd