# EXHIBIT E

section 2053 of the Code. The remaining $971,887 is available without apportionment for payment of federal estate taxes pursuant to the terms of Paragraph SIXTH of X's will. X's will directs that the remaining property of X's estate be distributed to the revocable trust. Because the estate tax liability of X's estate exceeds the amount remaining in X's probate estate after payment of debts, expenses and the specific bequests, no property is available for distribution to X's trust.

Article SECOND of the trust provides that X's wife is to receive an amount equal to one-half of the assets of the trust. The other one-half is to be held for the benefit of X's daughter and grandchildren. Although Article FIFTH of the revocable trust authorizes and empowers the trustee to pay estate taxes, it does not direct or require the trustee to do so. Therefore to the extent the probate estate is able to pay the estate tax, the trustee is not obligated to pay the revocable trust's share of the total estate tax burden. Accordingly, after division of the nonprobate property into two portions, the balance of the federal estate tax liability that remains after payment of the estate taxes from the probate estate is to be paid from the nonspousal share of the trust. The spouse's one-half share is to pass to the surviving spouse with no reduction since it is not, according to the Jackson case, required to bear any portion of the estate tax liability payable from the trust assets.

## CONCLUSION

Where the will directs that all state inheritance taxes, federal estate taxes and other taxes and charges chargeable against my estate be paid from the estate, "without the necessity of charging them against the interest of any beneficiary," the federal estate taxes are payable from the probate estate without apportionment and before distribution from the decedent's will to his revocable trust.

A copy of this technical advice may be given to the taxpayer. Section 6110(j)(3) of the Code provides that it may not be used or cited as precedent.

---

LTR 9010007, December 14, 1989

Symbol: Not given

NATIONAL OFFICE
TECHNICAL ADVICE MEMORANDUM

Uniform Issue List No.: 0408.03-00

IRS Letter Rulings Reports

[Code Sec. 408]

Individual retirement accounts; Rollover contributions.

## ISSUES

(1) Is the $1500 to be treated as a premature distribution subject to early withdrawal penalty?

(2) Would the redeposit be considered as an excess contribution subject to penalty?

(3) Can an individual withdraw funds from his Individual Retirement Arrangement (IRA) for personal use and this be considered a rollover as long as he redeposits it back into the same account or into another account at the same bank within 60 days?

## FACTS

On April 11, 1986, the taxpayer deposited $2000 into his IRA for the taxable year of 1985. On May 1, 1986, the taxpayer withdrew $1500 of this amount for his personal use. On June 27, 1986, the taxpayer redeposited the $1500 to the same IRA. The bank issued a 1099-R showing the distribution of $1500. A letter from the bank indicates that the 1099-R was issued in error.

In 1987 the taxpayer made a similar withdrawal. A withdrawal of $1500 was made on October 21, 1987 and the same amount was redeposited on November 4, 1987. The taxpayer showed on the deposit slip "replacement of temporary withdrawal". The bank deposited this into a certificate of deposit (CD) under the same customer number but into a new separate CD. They treated this as a rollover and apparently did not issue a 1099-R. For purposes of our response, we are assuming that this separate CD funds the original IRA.

## APPLICABLE LAW

Section 72(t) of the Internal Revenue Code provides for a ten percent additional tax on early distributions from qualified retirement plans, including IRAs. Section 72(t)(1) provides that if any taxpayer receives any amount from an IRA, the taxpayer's tax for the taxable year in which such amount is received shall be increased by an amount equal to ten percent of the portion of such amount which is includible in gross income.

Section 4973(a) of the Code provides for a tax on excess contributions to IRAs. In general, in the case of an IRA, there is imposed for each taxable year a tax in an amount equal to 6 percent of the amount of the excess contributions to such individual's IRA (determined as of the close of the taxable year).

9010007

Section 4973(b) of the Code provides, in pertinent part, that in the case of IRAs, the term "excess contributions" means the sum of the excess (if any) of (1) the amount contributed for the taxable year to the IRA (other than a rollover contribution described in section 408(d)(3)), over (2) the amount allowable as a deduction under section 219 for such contributions, and the amount determined under this subsection for the preceding taxable year, reduced by the sum of (1) the distributions out of the IRA for the taxable year which were included in the gross income of the payee under section 408(d)(1), (2) the distributions out of the IRA for the taxable year to which section 408(d)(5) applies (certain distributions of excess contributions after the due date for the taxable year), and (3) the excess (if any) of the maximum amount allowable as a deduction under section 219 for the taxable year over the amount contributed to the IRA for the taxable year.

Section 408(d)(1) of the Code provides general rules for the tax treatment of distributions from an IRA. Generally, any amount distributed out of an individual retirement plan is included in gross income by the payee or distributee as provided under section 72.

Section 408(d)(3)(A)(i) of the Code provides, in general, that the general rule described in section 408(d)(1) does not apply to any amount paid or distributed from an IRA, to the individual for whose benefit the IRA is maintained, if the entire amount received is paid into an IRA for the benefit of such individual not later than the 60th day after the day on which the individual receives the payment or distribution. The individual may make such a rollover of a distribution only once a year.

## ANALYSIS

In both cases the taxpayer returned the funds to his IRA within the 60 day time period provided for in section 408(d)(3)(A) of the Code, meeting the rules for a tax-free rollover.

Pursuant to section 72(t) of the Code, the early distribution penalty applies to the portion of a distribution which is includible in gross income. Since the taxpayer's distribution will not be includible in gross income for the taxable years covered in this analysis, such distribution would not be subject to the early withdrawal penalty.

Since section 4973(b) of the Code provides that rollover contributions described in section 408(d)(3) are not included in the definition of the term "excess contributions", the taxpayer's rolled over amounts are not considered part of an excess contribution to which a penalty applies.

Finally, IRA distributions are tax-free in the year of distribution if the rollover rules under section 408(d)(3) are met. As long as the IRA distribution is redeposited into the same or another qualifying IRA within 60 days of receipt of the distribution, such distribution would constitute a qualified rollover.

## CONCLUSION

(1) The $1500 is to be treated as a tax-free rollover not subject to the early withdrawal penalty.

(2) The redeposit is not considered as an excess contribution subject to penalty.

(3) An individual may withdraw funds from his IRA for personal use and this may be considered a rollover as long as he redeposits it back into the same IRA or into another qualified IRA within 60 days.

---

LTR 9010008, November 30, 1989

Symbol: CC:CORP:4-TR-31-1719-89

Uniform Issue List No.: 0368.04-00

[Code Sec. 368]

Definitions relating to corporate reorganizations; Assets for control of transferee.

This letter is in response to a May 8, 1989 request for supplemental rulings as to the federal income tax consequences of a consummated transaction. This letter revokes and supercedes a letter issued by this office on September 28, 1988. The information submitted for consideration is summarized below.

Parent is a State X corporation engaged, with its subsidiaries, in the manufacture and marketing of various products and services in the United States and abroad. Parent employs the accrual method of accounting for both tax and financial reporting purposes and uses a September 30 fiscal year.

Acquiring is a Country Y corporation engaged in the manufacture and sales of various products. Prior to the transaction described below, Acquiring had outstanding 100,000 shares of stock, 99,999 of which were held by Parent. The remaining share was held by Target (described below) as a nominee as required by Country Y law.

Target was a Country Z corporation all of the stock of which was held by Parent. Target was primarily engaged in the ownership of (i) two leases on contiguous real estate located in Country

9010007

Commerce Clearing House, Inc.