# EXHIBIT F

348, 1975-2 C.B. 75); and a transferable option to buy real property (Rev. Rul. 82-197, 1982-2 C.B. 72). In all of these revenue rulings the Service concluded that the transfers were mere promises to pay money or sell property in the future and, therefore, that "payment" was not made in the year of the transfer.

Based on the information submitted, we have concluded that the Company will be entitled to a charitable contribution deduction, in the manner and to the extent provided in section 170 of the Code, for the year in which the unrelated charitable organization exercises the option. The amount of the contribution will be the excess of the fair market value of the stock on the date the option is exercised over the exercise price subject to the limitations of section 170(b)(2) of the Code.

This ruling is directed only to the taxpayer who requested it. Section 6110(j)(3) of the Code provides that it may not be used or cited as precedent.

No opinion is expressed as to the federal income tax consequences of the transaction described above under any other provision of the Code.

The Company should attach a copy of this ruling to its tax return for the taxable year in which the transaction covered by this ruling is consummated. We are enclosing a copy for that purpose.

In accordance with the power of attorney submitted, we are sending a copy of this ruling to your authorized representative.

---

LTR 8826009, March 24, 1988

Symbol: E:EP:R:6

Uniform Issue List No.: 0408.03-00

[Code Sec. 408]

Individual retirement accounts; Rollover contributions.--CCH.

This is in response to your correspondence of September 3, 1987, in which your authorized representative requests a ruling on your behalf regarding the early withdrawal and rollover of funds from your individual retirement arrangement (IRA) under section 408(d) of the Internal Revenue Code.

You state that you are an active participant in a qualified retirement plan for the 1987 calendar year and that you also maintain an IRA. Based upon your projected adjusted gross income for 1987 you estimate that approximately 24 percent of your IRA contributions in 1987 will not be deductible in accordance with the limitations imposed by section 219(g) of the Code for active participants in certain qualified plans. You propose to make an early withdrawal of funds from your IRA. Such withdrawal represents a partial distribution of your account balance. You intend to redeposit the withdrawn funds in your existing IRA no later than the 60th day after the day the distribution is received.

Based on the above information, you request a ruling that a distribution from your IRA consisting of deductible and nondeductible amounts that is redeposited into the same IRA within the 60-day rollover period will constitute a rollover under section 408(d)(3) of the Code, and will not constitute an excess contribution under section 408(d)(4) of the Code.

Section 408(d) of the Code provides general rules for the tax treatment of distributions from an IRA. Generally, any amount distributed out of an individual retirement plan is included in gross income by the payee or distributee as provided under section 72.

Section 408(d)(3)(A)(i) of the Code provides, in general, that the general rule does not apply to any amount paid or distributed from an IRA, to the individual for whose benefit the account is maintained, if the entire amount received is paid into an IRA for the benefit of such individual not later than the 60th day after the day on which the individual receives the payment or distribution. The individual may make such a rollover distribution only once a year.

According to the information you provided, you will receive an early distribution of a portion of the account balance in your IRA. If the entire amount of such distribution is redeposited in your IRA no later than the 60th day after the date the distribution is received, the distribution may be treated as a tax-free rollover.

Section 408(d)(4) of the Code provides a method for disposing of contributions to an IRA in excess of the limits of section 219 of the Code. However, a tax-free rollover contribution is not subject to the limits of section 219.

Accordingly, we conclude, with respect to your ruling request, that the funds distributed from your IRA which represent deductible and nondeductible IRA contributions and which are redeposited within the 60 day rollover period will meet the requirements for tax-free rollover treatment under section 408(d)(3) of the Code, and will not be treated as an excess contribution within the meaning of section 408(d)(4).

A copy of this letter has been sent to your authorized representative in accordance with a power of attorney on file with this office.

---

LTR 8826010, March 28, 1988

Symbol: E:EO:R:2

Uniform Issue List Nos.: 4942.00-00
4942.03-03

[Code Sec. 4942]

Taxes on failure to distribute income; Taxes on failure to distribute income; Definitions of principal terms; Minimum investment return.--CCH.

This is in reply to your request for a ruling concerning the application of section 4942 of the Internal Revenue Code to certain property held by you.

You have been recognized as exempt from Federal income tax under section 501(c)(3) of the Code, and you have been classified as a private foundation within the meaning of section 509.

You state that $A$, creator of your Foundation, died on $x$. Prior to his death, he transferred a collection of valuable works of art to the $A$ Trust. Upon the death of $A$, these works of art were distributed to you. $A$ instructed the Directors of your foundation to exhibit the paintings at the $Y$ or, if satisfactory arrangements could not be made for the display of the paintings at the $Y$, at any other publicly-owned and operated museum, reasonably compared to the $Y$.

Section 4942(e)(1)(A) of the Code excludes from the computation of minimum investment return assets which are used (or held for use) directly in carrying out a foundation's exempt purpose.

Section 53.4942(a)-2(c)(3)(i) of the Foundation Excise Tax Regulations provides, in part, that an asset is used (or held for use) directly in carrying out a foundation's exempt purpose only if the asset is actually used by a foundation in carrying out its exempt purposes.

Section 53.4942(a)-2(c)(3)(ii) of the Regulations provides examples of assets which are used (or held for use) directly in carrying out a foundation's exempt purpose including physical facilities used in such activities, such as paintings or other works of art owned by the foundation which are on public display, fixtures and equipment in classrooms, which under the facts and circumstances serves a useful purpose in the conduct of such activities.

Rev. Rul. 74-498, 1974-2 C.B. 387, holds that a collection of paintings owned by a foundation formed to further the arts, that are loaned under an active loan program for exhibition in museums, universities, and similar institutions, are being used directly in carrying out the foundation's exempt purposes within the meaning of section 4942(e)(1)(A) of the Code, and the value of the paintings is excludable in computing the foundation's minimum investment return.

Based on the above information, we rule that the artworks received by you will constitute property used directly in carrying out your exempt purposes within the meaning of section 4942(e)(1)(A) of the Code so long as such artworks are either on public exhibition or held for that purpose.

We are informing your key District Director of this action.

This ruling is directed only to the organization that requested it. Section 6110(j)(3) of the Code provides that it may not be used or cited as precedent.

---

LTR 8826011, March 29, 1988

Symbol: CC:IND:Br.8-TR-31-1378-88

Uniform Issue List No.: 2039.00-00

[Code Sec. 2039]

Annuities.--CCH.

This is in response to your request of March 7, 1988, and prior correspondence, for a ruling under section 2039 of the Internal Revenue Code on behalf of the Decedent's estate.

The information submitted shows that the Decedent was born in 1915 and retired in 1973 under the Survivor Benefit Plan. At retirement the Decedent went immediately into pay status and he irrevocably elected to provide an annuity for his surviving spouse upon his death. The Plan is authorized under Chapter 73, Title 10, of the United States Code. The annuity payable to the Decedent's surviving spouse cost the Decedent $40,563.28 through a payroll deduction made from the Decedent's monthly retirement check during the years of the Decedent's retirement. The Decedent made no payments described in section 1438 or section 1452(d) of Chapter 73, Title 10 of the United States Code. Effective July 1, 1987, a monthly annuity of $1946.00 was payable to the Decedent's surviving spouse for life or until remarriage.