UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| LASALLE BUSINESS CREDIT, LLC f/k/a LASALLE BUSINESS CREDIT, INC.<br><br>　　　　Plaintiff,<br><br>v.<br><br>GARY C. GITTO, et al,<br><br>　　　　Defendants | Civil Action No. 04-12227 (DPW) |

**OPPOSITION TO REQUEST FOR ORDER TO SHOW CAUSE
AND MOTION TO MODIFY PRELIMINARY INJUNCTION**

Plaintiff has moved for an Order to Show Cause why defendant Gary Gitto should not be held in contempt for violating the preliminary injunction. Defendant Gitto opposes the request, and says that he engaged in no intentional violation of the injunction. Furthermore, he alleges that the records upon which plaintiff bases its request were obtained as a result of the plaintiff's illegal conduct and that, on account of this and other conduct, plaintiff lacks the "clean hands" required to obtain relief from this Court. Finally, plaintiff also seeks a modification of the preliminary injunction to allow him to make reasonable and necessary expenditures in order to earn a living. Defendant further says as follows:

**The Alleged Violations**

1. Plaintiff alleges that "[u]nder cover of ordinary and necessary expenses, Gary Gitto has transferred money to an irrevocable trust, given money to his girlfriend, used funds to invest in a real estate transaction, paid unauthorized expenses and withdrawn a significant amount of

cash in order to hide his use of funds." The allegations are based upon a review of Sovereign Bank account information which is said to establish the following:

> From December 29, 2004, to November 21, 2005, Gary Gitto had a checking account no. 59204948567 at Sovereign Bank. This account was open until November 21, 2005, when he transferred all the funds in the account to his company, Triple G Enterprises, L.L.C. From March to November 2005, Gary Gitto used his funds to transfer (I) $4,045 to the Gary Gitto Irrevocable Trust, (ii) $2,500 to Candice White, his girlfriend, (iii) $3,250 to Henry Kelly, an accountant, (iv) $24,155 to credit card companies, (v) $4,300 to attorneys and other parties for fees, a plat survey and other expenses for construction on real estate in Acton, Massachusetts, and (iv) $11,000 in cash.

Request for Order, ¶ .4

    2. However, none of the expenditures shown in the Sovereign Bank records justify a contempt sanction:

> (I) <u>Payments to the Gary Gitto Irrevocable Trust</u>. These payments are mandated by the Probate Court as part of defendant's child and spousal support obligation and are clearly permitted by the injunction. See Exhibit A.
>
> (ii) <u>Payment of $2,500 to Kandis White</u>. In June 2005, the plaintiff filed a trustee process action in state court and obtained an <u>ex parte</u> trustee attachment of the contents of defendant's bank account. The state court complaint contained significant misrepresentations of fact which, when pointed out to plaintiff's counsel, resulted in the immediate dismissal of that complaint.[1] In any event, the state court order caused the immediate freezing of defendant's account and his inability to access funds needed for ordinary living expenses. For this reason, he borrowed $2500 in cash from Ms. White and he returned the sum to her after he regained access to his account.
>
> (iii) <u>Payment of $3,250 to Henry Kelly</u>. Henry Kelly is an accountant and this payment was for preparation of defendant's tax returns. Defendant believed

---

[1] The circumstances of that action are set forth in detail in defendant's Opposition to Plaintiff's Protective Motion for Clarification (August 1, 2005). In brief, the plaintiff's papers implied that the separate judgment and execution issued by this Court on plaintiff's guarantee count were based, instead, on plaintiff's fraud allegations, and further, that plaintiff had contributed funds to his IRA in order to defeat this Court's attachment, when in fact the IRA funds had been contributed prior to plaintiff's lawsuit even being filed.

that the preliminary injunction prevented him from alienating any net funds he received as compensation, but did not prevent him from expending ordinary and necessary sums required in order to earn a lawful income, including services needed in order to compute and pay his taxes.

(iv) <u>Payments to credit card companies</u>. Defendant has used his credit cards to pay for his ordinary and necessary expenses. Nothing in the injunction requires defendant to pay expenses only by check and plaintiff has offered no evidence that the expenditures themselves were improper.

(v) <u>Funds for a plot survey and legal fees allegedly "to invest in a real estate transaction</u>." Defendant did not invest in a real estate transaction.

<u>The Plot Survey</u>. Defendant was employed temporarily as a construction supervisor at the construction of a house at in Acton. When the job took less time and work than anticipated, he had to reimburse the contractor for a portion of the advance payment he received. Instead, the contractor asked him to pay an outstanding invoice $1,000, for a plot survey. Defendant has no ownership interest in the project or property.

<u>Legal fees</u>. The legal fees paid by defendant had nothing to do with the construction project. All of the fees were related to this action, the criminal investigation, or defendant's divorce proceedings. The legal fees were expressly permitted by the preliminary injunction.

(vi) <u>Cash</u>. Plaintiff alleges that defendant has withdrawn cash "in order to hide his use of funds." There is absolutely no evidence that cash withdrawn by the defendant was used for any purpose not permitted by the order. The claim that he withdrew the money to "hide his use of the funds" is a wild and unsupported accusation.

3. It is apparent that plaintiff's motion is based on no investigation beyond the collection of records of the Sovereign Bank, and is founded on a series of unsupported inferences based on these documents. Accusations of contempt, however, are serious allegations and should not be so cavalierly made.

**Plaintiff's Wrongful Conduct**

4. Moreover, the Sovereign records were wrongfully obtained. In or about the first week of November 2005, according to the Security Department of the Sovereign Bank, "an individual

impersonating a Sovereign Employee was able to obtain information about [Gitto's] accounts" See Letter of Laura Boulay, Investigations Manager (November 3, 2005); and Acton Police Department Report (12/05/05)(Exhibit B).  Defendant believes that the person who impersonated the bank employee and obtained the information was an investigator employed by the plaintiff, and specifically, one Stephen Snyder (who made an affidavit in support of the plaintiff's motion for preliminary injunction).  Next, within a matter of weeks, the plaintiff issued a subpoena to the Sovereign Bank seeking account records for Gary Gitto and Triple G Enterprises. (Exhibit C)  Thereafter, Sovereign Bank produced the subpoenaed records, and it is these records which form the basis for plaintiff's Request for an Order to Show Cause.

     5.  The breach of security of defendant's account at Sovereign Bank by means of false pretenses was a serious violation of federal law, 15 U.S.C. §6821, indeed a felony, 18 U.S.C. §6823(a).  Section 6821(a) provides, in pertinent part, as follows:

> (a) Prohibition on obtaining customer information by false pretenses:
> It shall be a violation of this subchapter for any person to obtain or attempt to obtain, or cause to be disclosed or attempt to cause to be disclosed to any person, customer information of a financial institution relating to another person –
> (1) by making a false, fictitious, or fraudulent statement or representation to an officer, employee, or agent of a financial institution.

The plaintiff, itself a financial institution, could hardly have been ignorant of this law.

     6.  The subpoena issued by plaintiff to Sovereign Bank was the product of the information it had previously obtained in violation of the federal statute.  No finding of contempt may be based on evidence so obtained.  Cf. Gelbard v. United States, 408 U.S. 41 (1972). (invalidating contempt finding for refusal of witness to answer grand jury questions based on

information acquired through unlawful electronic surveillance).

7. This is not the only wrongful interference by plaintiff with defendant's bank account. Previously, as noted above, plaintiff obtained a state court ex parte attachment by making certain misrepresentations. This had the effect of freezing the funds defendant needed for basic living expenses, and caused defendant to have to borrow money in order to live. It is no small irony that plaintiff now seeks to hold defendant in contempt for the repayment of these very funds.

8. Furthermore, after its invasion of the Sovereign Bank accounts, the security department of that bank conducted an investigation. In the course of that investigation, defendant is informed, Sovereign contacted an employee or agent of the plaintiff, who provided derogatory information about the defendant. Contrary to the implication in plaintiff's motion, defendant did not terminate his account voluntarily. In fact, the account was terminated by Sovereign bank, (Exhibit D), as a result of whatever plaintiff communicated to defendant's bank.

9. It is a longstanding principle of equity that one who seeks equity "must come into court with clean hands." Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 244 (1933); Precision Instrument Mfg Co. v. Automotive Maintenance Machinery, 324 U.S. 806 (1945). Plaintiff has wreaked havoc with plaintiff's banking relationships, invading his privacy and making it impossible to maintain an account. Given this conduct, this Court should not entertain its contempt motion.

**The Need for Modification**

10. When the injunction was entered, defendant was either employed or about to be employed by a "third party, unaffiliated" employer. That job did not last. Since that time – in large part on account of the publicity generated by this lawsuit and by the Examiner's Report in

the bankruptcy case, see <u>In re Gitto Global Corp.</u>, 422 E.3di (2005), plaintiff has been unable to find employment with an independent employer. Under the circumstances, in order for plaintiff to earn a living, he needs the ability to make expenditures for the ordinary and necessary expenses of earning an income.

## **Conclusion**

For the reasons set forth above, the plaintiff's request for a Order to Show Cause should be denied and the preliminary injunction should be modified to permit the defendant to make expenditures for ordinary and necessary expenses of earning an income.

>Gary C. Gitto,
>
>By his attorneys,
>
>*/s/ Max. D. Stern*
>Max D. Stern, BBO #479560
>Stern, Shapiro, Weissberg & Garin, LLP
>90 Canal Street, 5th Floor
>Boston, MA 02114
>(617) 742-5800

Dated: March 3, 2006

G:\SSWG\GITTO\LaSalle Business Credit\LaSalle v. Gitto\Contempt opp.wpd