UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
LASALLE BUSINESS CREDIT, LLC, f/k/a,    )
LASALLE BUSINESS CREDIT, INC.            )
                                                    )
                        Plaintiff               )
                                                    )      Case No. 04-12227-DPW
            v.                                    )
                                                    )
GARY C. GITTO, et al.,                       )
                                                    )
                        Defendants          )
_____)

**RESPONSE OF DEFENDANT GARY GITTO TO PLAINTIFF'S STATEMENT OF
MATERIAL UNDISPUTED FACTS IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

      Pursuant to Local Rule 56.1, this is Defendant Gary Gitto's Response to Plaintiff's Statement of Material Undisputed Facts in Support of Its Motion for Summary Judgment. Any fact described as "not disputed" below is not disputed for purposes of this response only, and defendant does not admit any of those facts to be true except for purposes of this motion.

      **A.**    **Defendant's Response to Plaintiff's Statement of Material Undisputed Facts.**

1.      Not disputed.

2.      Not disputed.

3.      Not disputed.

4.      Not disputed.

5.      Not disputed.

6.      Defendant does not dispute the facts in the first sentence of Paragraph 6. The second sentence of Paragraph 6 is too vague for defendant to respond.

7.      It is not disputed that Defendant Gary Gitto has not filed an answer to the original complaint or any subsequent amended complaint. It is not disputed that Gary

Gitto would assert his Fifth Amendment privilege at any deposition concerning the instant case.

8.     Not disputed.

9.     Not disputed.

10.    Not disputed.

11.    Not disputed.

12.    Not disputed.

13.    Not disputed.

14.    Not disputed.

15.    Not disputed.

16.    Not disputed.

17.    Defendant does not dispute that an individual or individuals, purportedly acting on behalf of Gitto Global, deposited numerous checks into the Fleet Blocked Account during the period described.

18.    Not disputed.

19.     Not disputed

20.    Not disputed.

21.    Not disputed.

22.    Not disputed.

23.    Not disputed.

24.    Not disputed.

25.    Not disputed.

26.    Plaintiff's disputes LaSalle's conclusory statement that it's reliance on the fraudulent information it received was "reasonable."  The evidence establishes that at the time Gitto Global first received funding from LaSalle, it reported sales of approximately $120 million annually.  Furst dep., at 19.    Thus, in July of 2002 (according to plaintiff), Gitto Global reported sales of $1,278,810.  By October 2002, the reported sales had grown astronomically, to $12,557,44.  Pl. St. ¶ 46. By October 2003, reported sales were $55,968,861.  Id.  Reported sales had exceeded $80 million by March 2004.  Id.  On an annual basis, sales increased by 32% from fiscal year ("FY") 2002 to FY 2003.  Furst dep., at 57.  For a five month period ending in November 2003, sales increased by 277% compared to that same period in 2002.  Id. at 78.  This growth, and indeed almost 85% of all reported sales, was credited to fewer than ten customers.  Id. at 81-82.  Despite these facts, LaSalle never took any steps, other than field examinations which Frank Miller's scheme was designed to overcome, to investigate what the Examiner's Report referred to as "strikingly implausible sales increases."  Stern Affidavit, Exhibit 2; Furst dep., at 79-81.  LaSalle never attempted to contact Gary Gitto, who it understood to be in charge of sales, or take any other steps. Instead, LaSalle accepted Frank Miller's explanation for this astounding increase in sales, which was simply that Gitto Global's sales were being pushed by demand for Vitrotech's products.  Furst dep., at 78.  Joseph Costanza, LaSalle's Group Senior Vice President for the Northeast region, commented after Gitto Global's bankruptcy that he could not "believe how easy [it] would have been" to

-3-

discover the fraud being perpetrated on LaSalle, simply by doing research on the customers supposedly buying such large amounts. Furst dep., at 12, 104; Stern Affidavit, Exhibit 3. The other facts in Paragraph 26 are not disputed.

27.   Not disputed, with the exception that Paragraphs 54 and 56 of Plaintiff's Statement of Facts list more than one legitimate customer for which sales were overstated. Plaintiff does not explain this apparent contradiction.

28.   Defendant does not dispute that the fact in Paragraph 28 is literally true. It is, however, misleading, as it is undisputed that LaSalle advanced no more than $30 million on the revolving loan account at any one time. See Stern Affidavit, Exhibit 4 (Exh. D to Furst Depo).

29.    Not disputed.

30.   Paragraph 30 is disputed to the extent it fails to take into account recovery plaintiff is entitled to under its security interest. On December 10, 2004, the United States Bankruptcy Court for the District of Massachusetts approved the sale of the assets of Gitto Global for the sum of $8,977,500. See Stern Affidavit, Exhibit 5. Of that amount, $8,346,056.51 was to be paid to LaSalle, subject to any claim filed by Clinton Savings Bank. Id. LaSalle also moved to foreclose on approximately 1,452,158 pounds of Vitrolite, which LaSalle estimated to have a maximum value of $436,000. See Stern Affidavit, Exhibit 6. Thus, the figure in Paragraph 30 fails to account for some $8,782,056.51.

31.   Not disputed, except plaintiff presents no evidence as to when and why Frank Miller began the new scheme.

32.     It is not disputed that Gary Gitto, in 1997 organized a corporation called Direct

Wood & Paper Products ("Direct Wood").  Direct Wood was formed for the

purpose of selling wooden pallets, a business that the company engaged in.

Kozak dep., at 208.  Defendant denies that an account was opened at Fleet Bank

"to operate a check kite scheme."  Plaintiff fails to cite <u>any</u> testimony or

document to establish this "fact."  Indeed, the testimony cited by plaintiff, that of

Helen Kozak, reflects that "Gary [Gitto] was going into some venture with a

friend of the family having to do with pallets, and this account was opened up for

that purpose."  Kozak dep., at 107. Defendant denies that "[e]ither Frank Miller or

Gary Gitto signed these checks."  Plaintiff has failed to establish that Gary Gitto

ever signed such a check.  Indeed, the testimony cited by plaintiff establishes only

that Gary Gitto had the power to sign such a check, but the witness testified that

she did not know whether he had ever done so.  Chaisson dep. at 57.

33.     Disputed.  Plaintiff has failed to establish the facts in Paragraph 33.  Plaintiff

cites, as support for these facts, to pages 284 through 286 of William Deakin's

deposition.  Deakin does not testify to the facts alleged in Paragraph 33, and in

fact testified that he "really didn't have much to do with [the use of the Direct

Wood checking account]."  Deakin dep., at 285.

34.     Disputed.  Plaintiff has failed to establish these facts.  Kozak did not recall, she

testified, whether she had received a telephone call from Fleet Bank requesting

that the Direct Wood account be closed.  She surmised, however, that she "must

have."  Kozak dep., at 107.  Kozak also testified that the call had concerned

checks being deposited and there not being funds to cover them. Id. at 108. Deakin, in contrast, testified that Frank Miller had told him that Fleet had called Gary, informing him that Fleet had noticed that Gitto Global was depositing checks and issuing checks in the same amount to Direct Wood, and Gary then told Frank to close the account. Deakin dep. at 21:10-19. There is no evidence cited by plaintiff for the "fact" that Fleet requested the account be closed. The evidence is that Gary Gitto insisted that the account be closed. Kozak dep., at 208-13, Deakin dep., at 21.

35.    To the extent that Paragraph 35 purports to establish that Direct Wood was created as "vehicle for purportedly paying invoices," defendant denies same. Defendant otherwise does not dispute Paragraph 35. It is undisputed, however, that the $750,000 Gary Gitto borrowed was for Gitto Global's benefit. Deakin Dep., at 300. It is also undisputed that it was Frank Miller, not Gary Gitto, who directed where that $750,000 was deposited. Id.

36.    Not disputed.

37.    Not disputed.

38.    Not disputed.

39.    Not disputed.

40.    Not disputed.

41.    Not disputed.

42.    Not disputed.

43.    Not disputed.

44.    Not disputed.

45.    Not disputed.

46.    Not disputed.

47.    Not disputed.

48.    Not disputed.

49.    Not disputed.

50.    Not disputed.

51.    Not disputed.

52.    Defendant disputes that he "wire transferred the amount of $380,000 into J-Tan's bank account."  If such a wire transfer were made from an account controlled by Gary Gitto, such transfer was made by Helen Kozak at the direction of Frank Miller.   Kozak Dep. at 117-118.

53.    Not disputed.

54.    Not disputed.

55.    Not disputed.

56.    Not disputed.

57.    Not disputed.

58.    Not disputed.

59.    Not disputed.

60.    Not disputed.

61.    Not disputed.

62.    Not disputed.

63.    Not disputed.

64.    Defendant does not dispute that on May 24, 2002, June 4, 2002, June 5, 2002, and November 13, 2002, money was wire-transferred from accounts in his name to J&J Chemical.  It is also undisputed, that Helen Kozak actually performed the wire transfers, and that each of them was done at the direction of Frank Miller, who also told her the amount and recipient of the transfer.  Kozak dep. at 117:13 - 118:11.  To the extent that Paragraph 64 suggests that Gary Gitto transferred said amounts "in order for the check-kite scheme to be able to operate," such a suggestion is an unsupported conclusion and is denied.  Plaintiff provides no evidence as to Gary Gitto's intentions.

65.    Not disputed.

66.    Not disputed.

67.     Not disputed.

68.     Not disputed.

69.      Not disputed.

70.    Not disputed.

71.    Not disputed.

72.    Not disputed.

73.    Not disputed.

74.    It is undisputed that in August 2004 Gary Gitto executed and delivered an unlimited guaranty to Clinton Savings Bank.  Plaintiff fails to establish as an undisputed fact, however, that the reason for the guaranty was to continue a

check-kiting scheme.  Indeed, plaintiff can cite to no evidence whatsoever to support its conclusions as to Gary Gitto's motives or purpose.

75.    Not disputed.

76.    No facts cited by plaintiff supports the contention that Bartlett was ever "instructed by Frank Miller and Gary Gitto that invoices from large raw materials suppliers were not to be entered into the computer system, but instead, kept in a file cabinet drawer."  Bartlett testified, in fact, on numerous instances, that Frank Miller (and later, William Deakin) were the only ones who instructed her as to supplier invoices.  Bartlett Dep. at 18, 30, 41-42.  Bartlett further testified that while Gary Gitto sometimes signed checks for suppliers that came out of the file cabinet drawer, she "didn't know that he knew" that they were at all irregular. She testified that "[i]t was just a supplier to him."  Bartlett Dep. at 57.

77.    Not disputed.

78.    Not disputed.

79.    Not disputed.

80.    Not disputed.

81.    Not disputed.

82.    Not disputed except for the last sentence of Paragraph 82, which is a conclusion.

83.    Not disputed.

84.    Not disputed.

85.    Not disputed.

86.    Not disputed.

87.    Not disputed.

88.    Not disputed.

89.    Not disputed.

90.    Not disputed.

91.    Not disputed.

92.    Not disputed.

93.    Not disputed.

94.    Not disputed.

95.    Not disputed.

96.    Not disputed.

97.    Not disputed.

98.    Not disputed.

99.    Not disputed.

100.   Not disputed.

101.   Not disputed.

102.   Defendant disputes that Frank Miller made the statements attributed to him in the

       deposition testimony of Martin Miller.  Martin Miller is a witness of dubious

       credibility who a finder of fact would not be obligated to believe.  His brother,

       Frank, who is seeking to cooperate in the criminal case, sought his testimony.

       Martin Miller  claimed, during his deposition, that he, his brother, and Gary and

       Charles Gitto had an "open discussion" with Steven Elbaum, the President and

       Chief Executive Officer of the Alpine Group, "about the problems in the company

and the hole."  Miller dep., at 18.  Miller claimed that Elbaum was told "[t]hat the

overstatement of receivables and sales, I believe, would . . . present a problem

with the borrowing base that was being used to lend on by the bank."  Id.

Elbaum, in his deposition, denied having discussions with anyone from Gitto

Global about the "veracity of the financial figures" he had been given.  Elbaum

dep., at 23-24.  Elbaum denied having any specific discussion about receivables.

Id. at 26-27 Elbaum categorically denied being told of "financial improprieties"

or "improper financial treatment" or fraud.  Elbaum dep., at 43-44.

Further, the testimony of Martin Miller concerning what Frank Miller

might have told him is hearsay and would be inadmissible against Gary Gitto.  In

order to introduce such testimony, plaintiff would have to show to the Court's

satisfaction that Frank Miller was a co-conspirator with Gary Gitto at the time the

statements were made, and that the statements were in furtherance of the

conspiracy.  On the summary judgment record, that evidence is plainly

insufficient.

103.   Disputed for the reasons set forth in Paragraph 102, above.

104.   Disputed for the reasons set forth in Paragraph 102, above.

105.   Disputed for the reasons set forth in Paragraph 102, above.

106.   Not disputed.

107.   Defendant disputes the assertions in this paragraph on the grounds that the

hearsay statements relied upon are inadmissible against defendant.  In order to be

admissible against Gary Gitto, this Court would have to find that the statements

were made by a co-conspirator and were made in furtherance of the conspiracy.

Defendant disputes that there is any evidence that as of May 2003, he had joined a

conspiracy with Frank Miller and/or Charles Gitto.  Thus, the statements would

be inadmissible against him.

108.    Defendant disputes that he had the intent specified in Paragraph 108.  According

to Walter Carlson's deposition testimony, only Charles Gitto and Frank Miller

were present at the May 18, 2003 meeting.  Carlson dep., at 21.

109.    Not disputed.

110.    No response from this defendant is necessary.

111.    Disputed.  Plaintiff does not identify any evidence that the signature on the letter

in question is actually Gary Gitto's.  Indeed, there is ample testimony to establish

that Helen Kozak had authority to sign Gary Gitto's signature. Kozak dep., at 77,

106.  Further, Plaintiff's Statement of Facts makes clear that Frank Miller often

modified or forged documents for his own purposes.  See Pl. St. ¶¶ 38, 43, 78, 86.

112.    Plaintiff has produced no evidence as to Vitrotech's intentions or motivations.

Exhibit 14, cited by plaintiff as the basis for the remaining facts in Paragraph 112,

does not provide any evidence for those facts.

113.    Not disputed.

114.    Defendant does not dispute that Gary Gitto was "in charge of the sales side of

Gitto Global's business," although plaintiff fails to accurately identify any

testimony to that effect.  The remainder of the paragraph is disputed, as plaintiff

fails to establish the facts in this paragraph.  The citations provided by plaintiff do

not cite any of the "facts" listed.  There is no testimony identified by plaintiff establishing that Gary Gitto was the president of Gitto Global.  Indeed, such a "fact" contradicts Paragraphs 2 and 3 of this same Statement of Facts, which (accurately) set forth that Gary Gitto was the Chief Executive Officer of Gitto Global and Frank Miller was the President.  Further, Gary Gitto was a 40%, rather than 50%, shareholder in Gitto Global.  <u>See</u> Stern Affidavit, Exhibits 14, 2.  Frank Miller was a 50% shareholder, and Nancy Gitto-Panagiotes held the remaining 10%.  <u>Id</u>.  The citations provided by plaintiff in this paragraph do not establish, or even suggest, that Gary Gitto would participate in meetings when a new banking relationship was established.  Finally, Exhibit 17 to the Rein Affidavit, a memorandum from Charles Gitto with a handwritten note on it, establishes nothing about the process at Gitto Global for making payments to Charles Gitto or companies he controlled, and plaintiff cites to no testimony concerning that subject.

115.    Disputed.  The evidence cited by plaintiff fails to establish that Gary Gitto was "told" anything.  While it establishes that Deakin composed an email message, there is no evidence that Gary Gitto ever received such a message.  Further, there is no evidence that Deakin ever had a discussion with Gary Gitto about Clinton Savings Bank.

116.    Disputed.  William Deakin, a witness who admittedly committed fraud, was sued for, and struck a deal with LaSalle for his testimony, is a witness a finder of fact is not obligated to find credible.  There is no evidence, other than his own

testimony, that Deakin ever informed Gary Gitto of any aspect of the scheme.

There is certainly no evidence that Gary Gitto ever received any email Deakin

purportedly sent informing him of aspects of the scheme.

Even if Deakin's testimony were to be credited, however, it does not show

that Gary Gitto knew of or approved of the scheme.  According to Deakin's own

testimony, after Deakin purportedly told Gary that Frank was pre-billing and had

false inventory, Gary then had a meeting with Frank Miller.  There is no evidence

as to what took place at that meeting.  As Deakin expressed it, "As I said, I wasn't

there.  I don't know what Frank told him.  Maybe Frank told him I didn't know

what I was talking about and smoozed [sic] him over."  Deakin dep. at 56:16-19.

After Deakin claims he told Gary about these problems a second time,

according to Deakin, Gary again met with Frank Miller shortly thereafter.  Deakin

dep. at 57:4-10.  There is again no evidence as to what occurred in that purported

meeting.

Notably, Deakin testified that Gary Gitto seemed to be "surprised" that

this was taking place and was continuing.  Deakin dep. at 281-82.

Deakin also testified that in Novemeber 2003, he showed what was

referred to as an "aging report," a computer printout, to Gary Gitto.  Deakin

testified that he did not review the report with Gary at all, and did not recall

exactly what he had said to Gary, if anything, regarding that report.  Deakin dep.

at 287-88.  Plaintiff identifies no evidence to establish that "Deakin wanted to

convince Gary Gitto that the only way to stop the fraud was to complete the deal

with Vitrotech." This is not an undisputed fact, but a contention by the plaintiff. Deakin also claims that on June 8, 2004, he sent Gary Gitto an email stating that "J & J checks have increased by $414,000 since 5/27/04 and each day it is climbing because more money is going out than coming in." There is no evidence indicating that Gary Gitto received this email, and whether he read it if he did receive it. There is no evidence indicating what, if anything, Gary Gitto understood this email to mean. Deakin testified that he never had any other correspondence or conversation with Gary Gitto regarding J&J. Deakin dep. at 292-93.

Plaintiff provides no citations to the record to establish that Hitachi Cable called Gary Gitto regarding a fictitious invoice, and no citations to the record to establish Gary Gitto's supposed conversation with Janice Chaisson regarding such a telephone call. Indeed, plaintiff cites only to William Deakin, who testified that Hitachi never raised any complaints about fictitious invoices. Deakin dep. at 44-45.

Finally, even if Deakin's testimony is credited in its entirety, it establishes only that Deakin told Gary Gitto that Frank Miller was engaged in certain wrongdoing in relation to the financing of Gitto Global, that Gary Gitto was "surprised" by this news, and that Gary Gitto met with Frank Miller regarding Deakin's accusations. The record on summary judgment amply establishes that Frank Miller was adept at running a complicated, fraudulent scheme. There is no doubt that Frank Miller conceived and directed the entire scheme. <u>See</u>, e.g.,

-15-

Deakin dep., at 26-29.  Frank Miller was the principal contact with LaSalle. Deposition of Thomas Furst ("Furst dep."), at 31.  Miller was the principal contact with Clinton Savings Bank.  Deakin dep., at 19-21.  Indeed, when Clinton began questioning the activity in the Kingsdale account, Frank Miller had several conversations with officials of Clinton.  Clinton accepted Miller's explanations as to the activity in the Kingsdale account.  Deposition of Stephen Cash ("Cash dep."), at 48; Tenaglia dep., at 24-25; Williams dep., at 17-18.  Gary Gitto, in contrast, was described by his own assistant as  "not smart enough to be involved in defrauding the bank and he hated detail."  Kozak dep., at 214-15.

117.    Disputed.  Plaintiff fails to establish that Gary Gitto "knew that Moritz was using the computer in Frank Miller's office to scan an manipulate documents on behalf of Gitto Global."  Moritz testified "categorically" that he never discussed the alteration of Gitto Global documents with Gary Gitto.  Moritz dep. at 52-53. Kozak testified that Deakin, Frank Miller, and Maria Miller were involved in this activity.  Kozak dep., at 50.  Further, Helen Kozak did not testify that Gary Gitto requested that she ask Moritz to manipulate any documents concerning American Express.  Kozak testified that Gary Gitto asked <u>her</u> to manipulate certain checks, and that "maybe" she had approached Moritz regarding these checks.  Kozak dep. at 45.

118.    Not disputed.

119.    Disputed.  It is undisputed that in July, 2004, Helen Kozak forwarded an email to Gary Gitto from Frank Miller in which Miller said that the Gitto Global account

was overdrawn.  Plaintiff does not identify any evidence to support its conclusion that "Gary Gitto knew that Gitto Global was in serious financial distress."  This is a conclusion rather than a fact established by the record.

120.     Helen Kozak did not testify that Gary Gitto directed her to physically change invoices, or that he was aware of it.  When questioned whether Gary "knew" she was changing invoices, Kozak testified that "I think he probably did . . ."  Kozak also testified that she thought she had discussed "these things with him."  Kozak dep. at 34.  Kozak further testified that Gary was a "big entertainer," that he took customers out to dinner "frequently," that he entertained customers on his boat and would go on trips with them.  Kozak dep. at 197.  There is no evidence, and plaintiff does not cite any evidence, that Gary Gitto knew what steps Frank Miller, if any,  was taking to cover checks written on any Gitto Global accounts.

It is undisputed that Gitto Global was a privately-held company, and that Gary Gitto was a minority shareholder in that company.  See Stern Affidavit, Exhibits 2, 14**.**  It is also undisputed that Gary Gitto had put substantial sums of money into Gitto Global, far more than Frank Miller, and that checks were drawn on Gitto Global accounts to repay these sums.  Kozak dep. at 56-58, Deakin dep. at 299-300.  The comments quoted by plaintiff are in response to difficulties with those checks.

121.    The figure presented in Paragraph 121 does not account for contributions made by Gary Gitto to Gitto Global and is therefore, if not inaccurate, misleading.  According to Helen Kozak, there were ten or twelve occasions when Gary Gitto

-17-

put between $100,000 and $200,000 of his own money into the company. Kozak dep., at 215-16. She also testified that Gary paid company expenses with his personal American Express card. Id. at 216. William Deakin testified that five or six times, Gary Gitto loaned between $200,000 and $300,000 to Gitto Global. Deakin dep., at 76. Plaintiff itself cites numerous instances where Gary Gitto contributed funds to Gitto Global. See Pl. St. ¶¶ 35 (Gary borrowed $750,000, directed by Frank Miller to J&J), 52 (Gary contributed $380,000, directed by Frank Miller to J-Tan), 64 (Gary contributed a total of $640,000, directed by Frank Miller to J&J). Thus, even by plaintiff's own admission, Gary Gitto contributed more than $1.75 million to Gitto Global.

That the money contributed by Gary Gitto was directed to other entities, including J&J, was not Gary Gitto's doing. It was Helen Kozak who actually wired the funds, and the wiring instructions would come from Frank Miller. Kozak dep., at 117. After Gary Gitto would authorize a particular contribution to Gitto Global, he would tell Kozak that Miller would provide the wiring instructions. Id. at 216-17.

122.   No response from this defendant is necessary.

123.   No response from this defendant is necessary.

124.   No response from this defendant is necessary.

125.   No response from this defendant is necessary.

126.   No response from this defendant is necessary.

127.   No response from this defendant is necessary.

128.    No response from this defendant is necessary.

129.    No response from this defendant is necessary.

130.    No response from this defendant is necessary.

131.    No response from this defendant is necessary.

132.    No response from this defendant is necessary.

133.    No response from this defendant is necessary.

134.    No response from this defendant is necessary.

135.    Disputed.  Helen Kozak testified that she went to Charlie Gitto's house, but that
        she could not "remember specifically" what she said, nor did she "remember
        specifically what it was that made" her go talk to Charlie Gitto in the first place.
        Kozak dep., at 139-40.

136.    No response from this defendant is necessary.

137.    No response from this defendant is necessary.

138.    No response from this defendant is necessary.

139.    No response from this defendant is necessary.

140.    No response from this defendant is necessary.

141.    No response from this defendant is necessary.

142.    No response from this defendant is necessary.

143.    No response from this defendant is necessary.

144.    It is undisputed that Gary Gitto asked Helen Kozak to put certain documents into
        boxes, including personal papers of Gary Gitto.  Kozak dep., at 149, 225.
        Plaintiff cites no testimony that Gary Gitto directed Kozak to put those documents

in Charlie Gitto's garage.  Gary never asked Kozak to destroy any documents.  Id.

at 224.  Gary told Kozak that his attorney wanted documents, and this is the only

reason he ever gave her for retrieving documents.  Id. at 228.  Gary Gitto's

attorneys later offered those documents to the Office of the United States

Attorney.  See November 24, 2004 letter from Max D. Stern to Lori J. Holik,

attached to Stern affidavit at Exhibit 16.  Plaintiff disputes that any of the facts in

Paragraphs 144 and 145, as relating to Gary Gitto, can be described as "Efforts to

Conceal Fraud and Conspiracy."

145.    See Response to Paragraph 144.

146.    No response from this defendant is necessary.

147.    No response from this defendant is necessary.

**B.     Defendant's Additional Undisputed Facts in Support of His Opposition to
         Summary Judgment.**

1.      Helen Kozak was aware, at the time of her deposition, that she had originally

        been named as a defendant by LaSalle in this matter.  See Complaint; Kozak dep.,

        at 181-82, 238.  She understood that by virtue of her testifying at deposition, she

        would be "let out" of the case.  Id.  Kozak also met with the United States

        Attorney's Office at least twice prior to her deposition testimony, as well as with

        agents of the Federal Bureau of Investigation ("FBI") and Internal Revenue

        Service ("IRS").  Kozak dep., at 183-85.

2.      William Deakin also met with attorneys for LaSalle prior to his deposition.

        Deakin came to an agreement with LaSalle that they would drop the lawsuit

        against him in return for his deposition testimony.  Deakin dep., at 25-27.  Deakin

also met twice prior to his deposition testimony with the Assistant United States Attorney ("AUSA") assigned to this matter and an FBI agent.  Id., at 15-20.  He told them that he would like to cooperate in their investigation.  Id.

3. Janice Chaisson met with the AUSA and the FBI prior to her deposition. Chaisson dep., at 115-16.  Chaisson also reached an agreement with LaSalle that she would be dropped as a defendant in the instant matter in exchange for her deposition testimony.  Id., at 134.

4. Frank Miller owned 50% of the stock of Gitto Global, making him the majority shareholder.  See Stern Affidavit, Exhibit 14 (same as Gitto shares).  He was also the President of the Company.  Id.

5. Miller had exclusive control of the financial operations of Gitto Global.  Kozak dep., at 18, 197.  His operation of the finances was "secretive," and even "paranoid," he insisted that information concerning finances remain in a tight circle, which did not include Gitto.  Kozak dep., at 199-200, Deakin dep. 254.

6. Miller was the only person to substantively communicate with LaSalle Bank and/or Clinton Bank during the relevant time period.  Furst dep., at 29-31, 74; Guercio dep., at 16-17, Williams dep., at 16-19.  Miller was also the only person to communicate with John Tersigni regarding J-Tan.  Kozak dep., at 113-14, 202-203.

7. Gary Gitto was responsible for sales.  Pl. St. ¶ 114.  He was on the road at least 60% of the time, and was never present during LaSalle's audits.  Kozak dep., at 165, 196, 205.  Gitto had no access to the computer systems Miller and Deakin

used to carry out the fraud, nor did he have access to the reports used to determine daily needs.  Indeed, the only report Gitto received was a periodic report listing <u>actual</u> sales.  Deakin dep., at 270-71.

8.    Deakin never discussed phony invoices with Gitto.  Deakin dep., at 233.

9.    Helen Kozak, Gitto's former confidential assistant and a cooperating witness for LaSalle, testified that Gitto never said anything that indicated awareness of the fraud.  In her opinion, Gitto was "not smart enough to be defrauding the bank and he hated detail."  Kozak dep., at 205-207, 214-15.

10.    Kozak maintained, and had physical control of, checkbooks for Gitto's personal and business accounts, including Direct Wood.  Kozak dep. at 28-29.  She signed numerous documents with Gary Gitto's signature, including but not limited to checks.  <u>Id</u>. at 77, 106.

11.    During the relevant time period, there was tension between Gary Gitto and Frank Miller.  Indeed, during the period of the LaSalle loan, Miller refused to speak with Gitto directly.  Kozak de p., at 220.

12.    From time to time, however, Miller would communicate with Gitto in order to ask him to put up money for Gitto Global.  Miller would then communicate directly with Helen Kozak, providing her instructions as to when and where to wire the money.  Kozak dep., at 110, 116-17, 215-16.

13.    As of July 22 - 23, 2004, the loan balance on Gitto Global's revolving loan with LaSalle was $26,471,808, leaving availability of $78,831.  <u>See</u> Stern Affidavit, Exhibit 18.

Respectfully submitted,

Gary Gitto,

By his attorneys,

_____/s/ Max D. Stern_____
Max D. Stern, BBO No. 479560
Kenneth M. Resnik BBO No. 637527
Alexandra H. Deal, BBO No. 660645
Stern, Shapiro, Weissberg & Garin, LLP
90 Canal Street, 5th Floor
Boston, MA  02114-2022
(617) 742-5800

<u>Certificate of Service</u>

I hereby certify that this document(s) filed through the EFT system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 12, 2006.

<u>/s/ Kenneth M. Resnik</u>