IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LASALLE BUSINESS CREDIT, LLC, f/k/a) <br> LASALLE BUSINESS CREDIT, INC.,   ) <br>                                                                ) <br>                              Plaintiff,            ) <br>     v.                                                      )    Case No. 04-12227-DPW <br>                                                                ) <br> GARY C. GITTO, et al.,                       ) <br>                                                                ) <br>                              Defendants.      ) <br> _____ ) | |

**LaSALLE'S RESPONSE IN OPPOSITION
TO GARY GITTO'S MOTION TO STRIKE**

Gary Gitto ("Gary") seeks to have the Court strike as hearsay evidence against him on LaSalle's Motion for Summary Judgment: (i) the testimony of Martin Miller as to what his brother, Frank Miller, told him in 2002 to get him involved in an effort to find an investor or buyer for Gitto Global (Pl. Stmt. Fact ¶s 102, 103); (ii) what Gary, Charles Gitto ("Charles"), Frank Miller, and Martin Miller discussed during two automobile trips to New Jersey to meet with representatives of the Alpine Group (Pl. Stmt. Facts ¶s 104, 105); (iii) Charles' discussions in 2003 with representatives of Vitrotech in California as to how Gitto Global could increase the loan amount from LaSalle by Gitto Global purchasing inventory from Vitrotech (Pl. Stmt. Facts, ¶107); (iv) Dr. Alfred Arcidi's testimony that when Charles approached him to invest money in Gitto Global, Charles told Dr. Arcidi that he did not want Gary to go to jail because he was using funds borrowed by Gitto Global to purchase extravagant personal items (Pl. Stmt. Facts ¶136); and (v) the testimony of Helen Kozak, the administrative assistant to both Charles and Gary, that in March, 2002, she told Charles she was concerned about Gary's activities at Gitto

*386247.1 042314-34311*

Global because it might land him in some trouble. (Pl. Stmt. Facts, ¶135)  Each of the statements challenged by Gary is admissible.

**Martin Miller's Testimony**

An essential part of a conspiracy to defraud is to get the funds without getting caught.  In 2002, Defendant Frank Miller, Gitto Global's COO and president who Gary concedes played a major role in the execution of the fraud at Gitto Global, approached his brother, Martin Miller.  Martin had 36 years of experience in corporate finance and had significant contacts with potential investors.  (Pl. Stmt. Facts ¶ 102)  Frank Miller was candid with his brother.  Frank Miller explained that Gary, Charles, and he had engaged in reckless spending at Gitto Global in which funds were used for lavish personal expenses and that Gitto Global had been overborrowing from its bank through overstated receivables and sales.  Martin Miller agreed to try to find a buyer for Gitto Global who could make up the "hole" in Gitto Global's financial situation and thereby get Frank and Defendants out of a situation that could put them in jail.  (Pl. Stmt. Facts ¶s 102-103)

Martin Miller thereafter identified The Alpine Group, located in New Jersey, as a potential purchaser of Gitto Global.  Martin Miller accompanied his brother, Charles, and Gary on two automobile trips to New Jersey to pursue a possible purchase by the Alpine Group.  During these trips, Frank Miller, Charles and Gary discussed Gitto Global having $17 million in overstated receivables and inventory and the triangulation of funds through the J&J Chemical Account.  (Pl. Stmt. Facts ¶s 104-105)

The statements made by Gary during the two trips to New Jersey constitute admissions by him and are excepted from the hearsay rule.  F.R. Ev. 801 (d)(2)(A).  The statements made by the other individuals in the automobile are admissible against Gary to place his statements in

- 2 -

- 3 -

context. *U.S. v. McDowell*, 918 F.2d 1004, 1007 (1st Cir. 1990); *U.S. v. Dixon*, 132 F.3d 192, 198 n. 7 (5th Cir. 1997).

Federal Rule of Evidence 801(d)(2)(E) provides that a statement by a co-conspirator of a party during the course of and in furtherance of the conspiracy is admissible against that party. In determining whether a statement is in furtherance of a conspiracy, the court may consider the statement itself. *Bourjaily v. U.S.*, 483 U.S. 171, 181 (1987); F.R. Ev. 801(d)(2). Gary's participation in the two automobile trips to New Jersey during which the manipulation of Gitto Global's sales and inventory were discussed, plus the $1 million of financial assistance he provided in support of the J&J Chemical Account used for the check-kite, is ample proof of Gary's participation in the conspiracy.

Frank Miller's statements to his brother were in furtherance of the conspiracy because they were designed to induce his brother to find someone who would purchase Gitto Global and keep Frank Miller and the Defendants from going to jail. *U.S. v. Martinez-Medina*, 279 F.3d 105, 117 (1st Cir. 2002) (a statement in furtherance of a conspiracy "need not be necessary or even important to the conspiracy, or even made to a co-conspirator, as long as it can be said to advance the conspiracy in some way"); *U.S. v. Smith*, 441 F.3d 254, 262 (4th Cir. 2006) ("A statement by a co-conspirator is made 'in furtherance' of a conspiracy if it was intended to promote the conspiracy's objectives, whether or not it actually has that effect"); *U.S. v. Snyder*, 930 F.2d 1090, 1095 (5th Cir. 1991) ("A statement is made in furtherance of the conspiracy if it advances the ultimate objectives of the conspiracy.").

If Frank Miller's statements to his brother are not admissible as being in furtherance of the conspiracy, they are admissible to explain as background how Martin Miller came to be

involved with locating The Alpine Group and traveling to New Jersey with his brother, Charles and Gary.

**Charles' Discussions with Vitrotech**

Charles' discussions in 2003 with representatives of Vitrotech about increasing the LaSalle loan balance by purchasing inventory from Vitrotech without paying for it are admissible against Gary because they are part of the execution of the conspiracy. The significance of the statements is not their truth, but that they were made. These are deemed "verbal acts" and do not fall under the hearsay rule. *U.S. v. Faulkner*, 439 F.3d 1221, 1226-27 (10th Cir. 2006); *U.S. v. Hicks,* 848 F.2d 1,3 (1st Cir. 1988).

**Charles Statement to Dr. Arcidi**

Charles approached Dr. Arcidi in an effort to have him bail out Gitto Global and save Gary from going to jail. As with Frank Miller's approach to his brother, Charles came to Dr. Arcidi in an effort to have the fraud exposed to LaSalle and the authorities. This was certainly in furtherance of the conspiracy.

The statement is also admissible against Charles to show Charles knew what was going on at Gitto Global. As such, the statement is not offered for its truth and is not within the hearsay rule. F.R. Ev. 801(c) (hearsay is an out-of-court statement offered for its truth); *Anderson v. U.S.,* 417 U.S. 211, 219 (1974) ("Out-of-court statements constitute hearsay only when offered in evidence to prove the truth of the matter asserted."). Alternatively, Charles' statement is a statement of Charles' then existing state of mind admissible under F.R. Ev. 803(3).

**Helen Kozak's Statement**

Helen Kozak's statement to Charles that she believed Gary's activities at Gitto Global would get him in trouble is admissible against Charles to show that he had notice that things

- 4 -

- 5 -

were amiss at Gitto Global. Again, because the statements is being offered for something other than its truth, it is admissible. *Anderson*, 417 U.S. at 219.


Dated: September 25, 2006                                  Respectfully submitted,

                                                               LASALLE BUSINESS CREDIT, LLC


                                                              By:          Richard A. Sugarman
                                                                          One of its attorneys

Christopher J. Panos (BBO #555273)
Richard A. Sugarman (BBO #646791)
Craig and MacCauley P.C.
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA  02210
Phone:  (617) 367-9500
Fax:  (617) 742-1788

Eric S. Rein
John L. Conlon
Bethany N. Schols
Schwartz, Cooper Chartered
180 N. LaSalle Street, Suite 2700
Chicago, IL  60601
Phone:  (312) 346-1300
Fax:  (312) 782-8416


<u>Certificate of Service</u>

     I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 25, 2006.

                                                                        /s/ Richard A. Sugarman

*386247.1 042314-34311*