UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LASALLE BUSINESS CREDIT, LLC f/k/a <br> LASALLE BUSINESS CREDIT, INC., <br><br> Plaintiff, <br><br> v. <br><br> GARY GITTO, et al., <br><br> Defendants, <br><br> v. <br><br> CITIGROUP GLOBAL MARKETS, INC., <br> f/k/a LEGG MASON WOOD WALKER, INC.. <br><br> Trustee. | C.A. No. <br> 04-12227-DPW |

**TRUSTEE CITIGROUP GLOBAL MARKETS, INC.'S
OPPOSITION TO PLAINTIFF'S MOTION FOR CIVIL CONTEMPT**

Trustee, Citigroup Global Markets, Inc., f/k/a Legg Mason Wood Walker, Inc. ("Citigroup") hereby opposes the Motion For Contempt of Plaintiff, LaSalle Business Credit LLC ("LaSalle").

Citigroup is a third-party trustee in this case. It holds two brokerage accounts in the name of Defendant, Charles Gitto, Jr. ("Mr. Gitto"), an IRA account, account no. 382-2556A (the "IRA Account") and a personal account, account no. 382-1386A (the "Personal Account"). The Personal Account is presently restricted pursuant to the order of this Court. The IRA Account was previously restricted but is no longer, again, pursuant to order of this Court.

LaSalle requests that Citigroup be placed in civil contempt for allegedly violating three court orders concerning the Personal Account. However, Citigroup was not even subject to the first two orders that are the subject of LaSalle's Motion -- the Court's February 15, 2005 Order, and the Stipulated

Seventh Modification to Preliminary Injunction Preserving the Status Quo and Order dated April 15, 2005 (the "Seventh Stipulation"). Those orders directed action by other parties.

The third order, the Stipulation and Order Regarding Payment of Living Expenses dated November 21, 2005 (the "Eleventh Stipulation"), is the only order that Citigroup inadvertently violated. That order lifted the freeze on the IRA account and terminated the $9000 monthly withdrawals from the Personal Account previously allowed to Mr. Gitto by the Ninth Stipulation to Preliminary Injunction Preserving the Status Quo dated June 20, 2005 (the "Ninth Stipulation"). Citigroup did attempt in good faith to comply with this order, however, its ability to do so was hindered by a confluence of factors. Specifically:

- Mr. Gitto misrepresented to Citigroup that the Ninth Stipulation was still in effect after that order had been superseded by the Eleventh Stipulation.

- Citigroup is a disinterested third-party trustee. It did not have the intimate and ready familiarity with the procedural posture of this case that the real parties in interest possess to readily recognize that Mr. Gitto's representation was false.

- Citigroup had no reason to suspect that Mr. Gitto's representation was false. At the same time, it did not take his representation at face value but rather first confirmed the existence of the order Mr. Gitto was referring to, the Ninth Stipulation, before releasing funds. Through inadvertence, it overlooked the Eleventh Stipulation when it considered Mr. Gitto's request.

- The Eleventh Stipulation was the latest of no less than eleven revisions to the Preliminary Injunction Order Preserving the Status Quo dated November 5, 2004 (the "Preliminary Injunction Order") against Mr. Gitto in this case. It is the three hundred and third entry on the docket. This frequent revision of the directive to Citigroup and onslaught of paper added confusion and complicated the task of compliance.

- LaSalle's counsel and/or Mr. Gitto's counsel drafted the Eleventh Stipulation, and both such counsel signed it. They did not consult Citigroup in this process or seek Citigroup's signature, even though Citigroup was affected by the order.

- Once the order was entered, the interested parties in this case also did not flag for Citigroup that the order against it had been amended for the eleventh time. They did not send a letter, for instance, stating that the $9000 monthly withdrawals were no longer allowed. Rather, they left it to Citigroup to decipher which of the documents served upon it in the case altered its responsibilities as trustee.

As a result of these factors, Citigroup understood the Ninth Supplement to be in effect in relation to the Personal Account after it had been superseded and released money to Mr. Gitto in response to his

requests. While Citigroup believes it acted reasonably in view of what it understood at the time, it also acknowledges that it made a mistake. In hindsight, it recognizes that a more careful review could have prevented the release of funds.

Despite Citigroup's mistake, under the circumstances of this case Citigroup is not deserving of the severe punishment of civil contempt. The standard for contempt is not one of strict liability, where any and all mistakes are punished. Rather, where a party reasonably and diligently attempted to comply with an order, as Citigroup did here, contempt will not issue.

Fairness considerations are also relevant. The responsibilities of a third party trustee, while critical and warranting diligence, are and should be much more limited than the responsibilities of the interested parties to a case. As a matter of policy, a civil contempt order should not issue against a mere stakeholder in a litigation who has acted diligently, where the interested parties have not also done their part to facilitate and ensure that stakeholder's compliance. Indeed, the burden of a third party trustee to stay apprised of the procedural posture in a complex case such as this one can be difficult and confusing. The burden to an interested party, on the other hand, to focus the trustee on when and how its rights and responsibilities are affected is small. Here, Citigroup received no such helpful direction and in the face of a thick docket and a misrepresentation, it made a mistake.

A civil contempt order would place the blame entirely on Citigroup, when other factors outside of Citigroup's control -- and within the interested parties' control -- complicated Citigroup's ability to comply. Most inequitably, it would make a disinterested trustee the indemnitor of the defendant's knowing fraud.

The Motion For Contempt against Citigroup must accordingly fail.

## FACTS

### The Court's February 15, 2005 Order

1. LaSalle's Motion asserts that Citigroup should be held in contempt for violating the Court's February 15, 2005 Order "that Charles Gitto escrow $30,000 with Perkins, Smith & Cohen . . . and that the parties coordinate the return to the Brokerage Account of funds transferred by Charles Gitto from the Brokerage Account to [Mr. Gitto's wife,] Christa Gitto." *Motion For Contempt,* ¶8.

**2. The Court's February 15, 2005 Order directed action by Mr. Gitto, his wife and LaSalle, not Citigroup. Citigroup was not even a party to the case as of February 15, 2005. As the docket reflects, the Summons to Citigroup's predecessor-in-interest, Legg Mason Wood Walker, Inc. ("Legg Mason"), did not issue until March 7, 2005.**

3. In accordance with the order, Christa Gitto escrowed $30,000 by check made payable to Perkins, Smith & Cohen dated March 9, 2005 from her Legg Mason account, account no. 396-00898. *Motion For Contempt,* at Ex. E; *Affidavit of Stephanie Ketchum* ("Ketchum Aff."), filed herewith, at Ex. A (attaching *March 2005 Account Statement, Account No. 396-00898*). Mrs. Gitto's account statement reflects that Perkins, Smith & Cohen cashed the check on March 15, 2005. *Id*.

4. Mr. Gitto and his wife further transferred securities then valued at $384,975.12 from Mrs. Gitto's Legg Mason account, account number 396-00898 to Mr. Gitto's Personal Account in February 2005. *Motion For Contempt,* at Ex. E; *Ketchum Aff.* at Ex. B (attaching *February 2007 Account Statement, Account No. 396-02621*).

### The Stipulated Seventh Modification to Preliminary Injunction Preserving the Status Quo and Order dated April 15, 2005

7. LaSalle's Motion asserts that Citigroup should be held in contempt for violating the Seventh Stipulation.

8. The Seventh Stipulation provides, in relevant part, "Christa Gitto shall execute all documents necessary to transfer cash and/or securities totaling $269,742.00 in value from Legg Mason

Account Number 396-00898 to Legg Mason Account Number 396-02621." *Seventh Stipulation,* ¶3. (Docket No. 248).

9. In this regard, the order appears to be the same in substance as the directive in the Court's February 15, 2005 Order that Mrs. Gitto return the funds previously transferred to her account back to Mr. Gitto's Personal Account.

10. LaSalle alleges that the February 2005 transfer of securities then valued at $384,975.12 to Mr. Gitto's Personal Account only constituted a partial return of the funds Mr. Gitto had transferred to his wife's account, and that the transfer of an additional $269,742.00, as directed by the Seventh Stipulation was necessary to complete the return.[1]

11. Whatever the total amount Mr. Gitto and his wife were required to transfer back to Mr. Gitto's Personal Account is irrelevant for purposes of the present Motion *vis a vis* Citigroup. **Like the Court's February 15, 2005 Order, Citigroup was not subject to this aspect of the Seventh Stipulation. Rather, it directed action by Mr. and Mrs. Gitto only.**

**Stipulation and Order Regarding Payment of Living Expenses dated November 21, 2005**

12. LaSalle's Motion further asserts that Citigroup should be held in contempt for violating the Eleventh Stipulation.

---

[1] Separately, LaSalle alleges that Mr. Gitto should have caused the transfer of $849,767 in cash and securities (*Motion For Contempt,* ¶30). The basis for that figure is unclear, and the amount lacks support in the Court's February 15, 2005 Order, the Seventh Stipulation, and the documentation attached to LaSalle's Motion.

13. The Eleventh Stipulation was drafted by LaSalle's and/or Mr. Gitto's counsel. LaSalle's and Mr. Gitto's respective counsel both signed the Eleventh Stipulation, but did not consult Citigroup in its preparation or request or obtain Citigroup's signature.

14. Once the Court entered the Eleventh Stipulation, the interested parties also did nothing to highlight for Citigroup how the stipulation affected Citigroup's responsibilities.

15. The Eleventh Stipulation was the eleventh revision to the Preliminary Injunction Order against Mr. Gitto.

16. The Eleventh Stipulation was preceded by -- among several other orders -- the Ninth Stipulation. (Docket 272).

17. The Ninth Stipulation authorized Citigroup to release nine thousand dollars per month, commencing on June 1, 2005, with back payments for April and May 2005, to Mr. Gitto from his Personal Account to be used for the payment of ordinary and necessary living expenses.

18. In accordance with the Ninth Stipulation, Citigroup released to Mr. Gitto twenty seven thousand dollars ($27,000.00) on June 29, 2005 (for the months of April, May and June); eighteen thousand dollars ($18,000.00) on July 28, 2005 (for the months of July and August); nine thousand dollars ($9000.00) on September 1, 2005 (for the month of September); nine thousand dollars ($9000.00) on October 3, 2005 (for the month of October); and nine thousand dollars ($9000.00) on November 1, 2005 (for the month of November).[2]

---

[2] LaSalle's Motion states that Citigroup "admits" that "it released to Charles Gitto $9,000 per month for the months of April through November, 2005, totaling $72,000." *Motion For Contempt,* ¶27(ii)). To the extent this allegation gives the impression that this release of funds was improper, it is misleading. The release of funds was authorized by and in accordance with the Ninth Stipulation.

A/72289629.5/0442531-0000327921

19. The Eleventh Stipulation modified the Ninth Stipulation so that the restriction then in place on Mr. Gitto's IRA Account was to be lifted and Mr. Gitto agreed not to expend any funds or assets other than those in his IRA Account.

20. Despite this agreement, Mr. Gitto subsequently requested the release of funds from the Personal Account made payable to him, and represented to Citigroup that the Ninth Supplement was still in effect.

21. Specifically, thirteen months after the Eleventh Stipulation took effect, on December 21, 2006, Mr. Gitto sent a letter to Citigroup requesting the release of funds from the Personal Account. In that letter, he referred to "the court order you have on file, which allows me to $9,000.00 monthly withdrawal[s]. . . ." *Ketchum Aff.* at Ex. C. Mr. Gitto thereby misrepresented to Citigroup that the Ninth Stipulation was still in effect, after it had already been superseded by the Eleventh Stipulation.[3]

22. Based on the misunderstanding that the Ninth Supplement was still in effect, Citigroup released a total of $119,000 to Mr. Gitto between December 22, 2006 and August 2, 2007.

## STANDARD OF REVIEW

In a civil contempt proceeding, proof of the violation must be clear and convincing; a bare preponderance of the evidence will not suffice. *Nextel Communications of Mid-Atlantic, Inc. v. Town of Hanson,* 311 F.Supp.2d 142 (D. Mass. 2004) (motion for contempt will be granted only if the complainant can offer clear and convincing evidence that a lucid and unambiguous order has been violated). In addition, the court must find that the order violated is clear and unambiguous and that,

---

[3] His misrepresentation can only be construed as fraudulent, since his lawyer signed the Eleventh Stipulation on his behalf. (Docket No. 303). Mr. Gitto attempts to deny his obvious fraud by claiming that Citigroup dictated this letter to him. *Opposition of Charles N. Gitto, Jr. to LaSalle Business Credit, LLC's Contempt Motion dated October 9, 2007*, ¶4. The Affidavit of Joseph DeNicola, filed herewith, refutes this unsupported allegation.

although the party to be charged had notice of the order, it has not diligently attempted in a reasonable manner to comply. *Cipes v. Mikasa, Inc.,* 404 F. Supp.2d 367 (D. Mass. 2005) (civil contempt may be found only where the order allegedy violated is clear and unambiguous, and ambiguities are to be resolved in favor of alleged contemnor). When the court's order is unclear, or the alleged contemnor has made an effort to comply, the court will not find contempt. *Devine v. Rhode Island,* 827 F.Supp. 852 (D.C.R.I. 1993); *U.S. v. Richlyn Labs, Inc.,* 817 F.Supp. 26 (D.C.Pa. 1993); *Bourgal v. Lakewood Haulage, Inc.,* 827 F.Supp. 126 (D.C.N.Y. 1993).

**ARGUMENT**

**A.  Citigroup Should Not Be Held In Contempt For Violating The February 15th Order And The  Seventh Stipulation Because It Was Not Subject To Those Orders.**

Facile reference to the February 15th Order and the Seventh Stipulation shows that Citigroup was not subject to those aspects of the orders that were allegedly violated. As noted, Citigroup was not even a party to the case as of February 15, 2005. Nor was Citigroup somehow charged with the task of ensuring that Mr. Gitto and his wife complied with these orders. LaSalle's Motion with respect to Citigroup's alleged noncompliance with these orders should be denied.

**B.  A Contempt Order Against Citigroup Would Be Unfair.**

Citigroup's noncompliance with the Eleventh Stipulation was unintentional, and there is no allegation otherwise. Moreover, as the Affidavit of Stephanie Ketchum, filed herewith, demonstrates, Citigroup followed reasonable procedures with respect to the reach and apply orders in this case. Thus, in an effort to enforce the order it understood to be in effect at any given time, Citigroup placed the Personal Account under restriction as of the date it received the Summons, and it has remained restricted since that time, requiring counsel's approval for each and every request for the release of funds. Citigroup did not carelessly take Mr. Gitto at his word that there was an order on file authorizing the release of funds. Rather, in response to Mr. Gitto's request, Citigroup attempted to identify the order Mr. Gitto described in his letter. The Ninth Stipulation matched up with that description since it provided for $9000 monthly

8

withdrawals from the Personal Account. Prior to granting its approval for each release of funds, Citigroup confirmed that Mr. Gitto had accrued sufficient funds, pursuant to the $9000 per month allotment under the Ninth Stipulation that Citigroup understood to be in effect, to withdraw the amount he requested. *See Ketchum Aff.* Thus, even with respect to the funds that were improperly withdrawn, Citigroup's actions reflect diligence. Although Citigroup overlooked the Eleventh Stipulation and therefore was not alerted to Mr. Gitto's fraud, that oversight was not due to any lack of diligence but rather inadvertence. Here, where Citigroup took diligent steps in a good faith effort to follow the directives of the Court, but made a reasonable mistake in doing so, the severe punishment of contempt would be unfair.

In assessing Citigroup's diligence, Citigroup's status as a third party trustee must be kept in mind. A third party trustee should not be required to have the same intimate familiarity with the procedural posture of a case that the interested parties possess. Instead, fairness requires that its limited interest in the litigation allow it to also maintain a limited level of involvement in a case, while still satisfying its obligations as trustee. Thus, it should be able to receive clear directives and limit its involvement to following those directives. Moreover, to the extent the interested parties in a case can facilitate the trustee maintaining such a limited role, they should do so to protect their own interests.

In a complicated case such as this one, such assistance from the interested parties could have been critical. This is not a case where the Court ordered a straightforward restriction on a brokerage account. Rather, the initial Preliminary Injunction Order against Mr. Gitto was revised **eleven times**, to release funds to various third parties and to Mr. Gitto himself.[4] Such repeated revisions can naturally lead to

---

[4] *First Supplement To Preliminary Injunction Preserving The Status Quo dated November 10, 2004* (Docket No. 61); *Second Supplement To Preliminary Injunction Preserving The Status Quo dated November 23, 2004* (Docket No. 121); *Third Supplement To Preliminary Injunction Preserving The Status Quo dated December 20, 2004* (Docket No. 158); *Fourth Supplement To Preliminary Injunction Preserving The Status Quo dated February 8, 2005* (Docket No. 201); *Order Grating Motion For Order For Entry Of A Fifth Order Supplementing The Preliminary Injunction Preserving The Status Quo dated January 10, 2005* (Docket No.

(footnote continued to next page)

confusion. Confounding the potential for confusion is the fact that the Eleventh Stipulation is the **three-hundred and third** docket entry in this case. To help focus the third party trustee in the face of such confusion and thereby prevent mistakes, a simple telephone call from plaintiff's counsel, a cover letter, or an email, letting the trustee know when and how its obligations are changed, can often be sufficient. In this case, it is possible that such a gesture, alerting Citigroup that the Eleventh Stipulation terminated the $9000 monthly withdrawals, would have given Citigroup the ready knowledge it needed to recall the Eleventh Stipulation in the face of Mr. Gitto's fraud. Surely had the interested parties actually consulted Citigroup on the stipulation or sought its signature, the present situation could have been averted.

Under these circumstances, a contempt order would unfairly punish Citigroup and would be contrary to the respective responsibilities of a third party trustee versus the interested parties in a case. It would unfairly place the burden of the inadvertent release of funds entirely on Citigroup, when other factors outside of Citigroup's control -- and within the interested parties' control -- complicated its ability to comply with Eleventh Stipulation. A contempt order would be particularly unfair since it would effectively make Citigroup -- a trustee that at all times acted in good faith -- the indemnitor of Mr. Gitto, while rewarding Mr. Gitto for his fraud. On this ground alone, the motion should be denied.

C.   **The Eleventh Stipulation Is Not Clear On Its Face.**

Review of the Eleventh Stipulation itself is also pertinent to whether contempt should issue. Rather than clearly state that the order terminates the Ninth Stipulation's allowance of $9000 monthly

---

(footnote continued from previous page)

172); *Stipulated Sixth Modification of Injunction Preserving The Status Quo And Order dated March 29, 2005* (Docket No. 229); *Seventh Modification to Preliminary Injunction Preserving The Status Quo and Order dated April 15, 2005* (Docket No. 248); *Eighth Supplemental To Preliminary Injunction Preserving The Status Quo dated April 19, 2005* (Docket No. 252); *Ninth Supplement To Preliminary Injunction Preserving The Status Quo dated June 21,* 2005 (Docket No. 272); *Order Grating Joint Motion To Amend Or For Entry of A Tenth Order Supplementing The Preliminary Injunction Preserving The Status Quo dated August 4, 2005* (Docket No. 285). The last five of these orders were issued after Citigroup was named a Trustee in this case.

withdrawals from the Personal Account, the Eleventh Stipulation expresses this point in a round-about manner:

> 3. Mr. Gitto agrees that he will not expend any funds or assets, other than funds presently in the IRA Account, without written permission of LaSalle or further order of the court. The Preliminary Injunction Preserving the Status Quo, as amended by, among other amendments, the First Supplement to Preliminary Injunction Preserving the Status Quo date[d] November 10, 2004, the Stipulated Seventh Modification to Preliminary Injunction Preserving the Status Quo and Order [as to Charles Gitto] dated April 15, 2005, and the Ninth Supplement to Preliminary Injunction Preserving the Status Quo dated June 20, 2005, is hereby modified such that Charles N. Gitto, Jr. and any of his agents, servants, employees, attorneys, beneficiaries and all persons in active concert or participating with him who receive actual notice of this Order, by personal service or otherwise, are restrained from assigning, alienating, selling, transferring, pleding, encumbering, concealing, hypothecating or disposing of any of his assets, other than funds presently held in Individual Retirement Account (No. 396-76629) maintained with Legg Mason Wood Walker, Inc., or its affiliates, and interest and investment returns earned from funds in that account, pending further order of this Court.

*Eleventh Stipulation,* ¶3.[5]

Here, in the very paragraph that was designed to restrict the Personal Account, there is no reference to the Personal Account whatsoever. This is in contrast to the Eleventh Stipulation's repeated reference to the IRA Account.[6] Morever, rather than explain how that the Eleventh Stipulation modifies the Ninth Supplement, it incorporates that and other orders by reference. While an interested party might understand those references without further inquiry, a third party trustee frequently would not.

---

[5] Comparison to hypothetical clear language is illustrative. Had the Eleventh Stipulation simply stated, "The Ninth Supplement to Preliminary Injunction Preserving the Status Quo dated June 20, 2005 is hereby modified so that Citigroup is ordered to restrict Charles Gitto's personal brokerage account (Account No. 382-1386A) so that Mr. Gitto is no longer allowed to withdraw $9000 per month from such account" the present situation may have been averted.

[6] The paragraph further describes an undertaking by Mr. Gitto only, rather than direct action by Citigroup, and the object of that undertaking is the IRA Account, not the Personal Account ("Mr. Gitto agrees that he will not expend any funds or assets, other than funds presently in the IRA Account. . . .").

While Citigroup acknowledges that it overlooked the Eleventh Stipulation when it reviewed Mr. Gitto's fraudulent request for the release of funds, it believes that the order's lack of facial clarity remains relevant to the Court's decision. It shows that the interested parties who drafted the order did not do their part to facilitate the burden on the disinterested third party trustee and protect their own interests. Relatedly, as noted above, the interested parties also did not seek Citigroup's signature to the stipulation, or flag for Citigroup that this *eleventh* change to the status quo affected Citigroup. Formal notice by virtue of service of process may have occurred, but fair notice under the circumstances of this case did not.

## CONCLUSION

For all of the foregoing reasons, Citigroup respectfully requests that LaSalle's Motion For Contempt against Citigroup be denied.

Respectfully Submitted,

CITIGROUP GLOBAL MARKETS, INC.,

By its attorneys,

/s/ Christina N. Davilas
David C. Boch, BBO # 047540
Christina N. Davilas, BBO # 655477
Bingham McCutchen LLP
150 Federal Street
Boston, Massachusetts 02110
(617) 951-8000

Dated: November 13, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon counsel of record via the ECF/CM system on November 13, 2007.

/s/ Christina N. Davilas