# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LASALLE BUSINESS CREDIT, LLC f/k/a ) | |
| LASALLE BUSINESS CREDIT, INC.,    ) | |
|                                   ) | |
|            Plaintiff,             ) | |
|                                   ) | |
| v.                                ) | Case No. 04-12227-DPW |
|                                   ) | |
| GARY C. GITTO, et al.,            ) | |
|                                   ) | |
|                                   ) | |
|            Defendants.            ) | |
| _____) | |

**LASALLE BUSINESS CREDIT'S REPLY TO**
**TRUSTEE CITIGROUP GLOBAL MARKETS, INC.'S**
**OPPOSITION TO PLAINTIFF'S MOTION FOR CIVIL CONTEMPT**

Plaintiff, LaSalle Business Credit, LLC ("LaSalle"), for its Reply to the Opposition to LaSalle's Motion for Order to Show Cause Why Citigroup Should Not Be Held In Contempt filed by Trustee Process Defendant Citigroup Global Markets, Inc., f/k/a Legg Mason Wood Walker, Inc. ("Citigroup"), states:

**Introduction**

On November 21, 2005, Charles Gitto was ordered not to touch the funds in his personal account at Citigroup. Citigroup acknowledges that it received a copy of that order "on or around November 30, 2005." (DeNicola aff., ¶ 3) Nevertheless, a year later, at Charles Gitto's request, Citigroup permitted Mr. Gitto to withdraw a total of $119,000 from his personal account. This prompted LaSalle to seek to have both Charles Gitto and Citigroup held in contempt for violating the Court's order.

Citigroup has filed a response in which it does not accurately state the applicable legal standard and mischaracterizes a rather straightforward issue. LaSalle seeks to reply to correct any misconceptions.

The Court's determination of LaSalle's motion does not have to go beyond the Stipulation and Order Regarding Payment of Living Expenses dated November 21, 2005 (the "Order") (Docket No. 303) in which the Court ordered that Charles Gitto was prohibited from transferring any assets other than funds in his Citigroup IRA. Citigroup acknowledges that it received a copy of the Order shortly after it was entered and that it thereafter violated the Order in allowing Charles Gitto to withdraw money from his personal account. Citigroup contends it should nevertheless not be held in contempt because (i) the Order lacks clarity, and (ii) Citigroup acted reasonably, in light of what it claims was a confusing state of affairs, and transferred the funds through an inadvertent mistake.

Both of Citigroup's arguments must be rejected. The Order was clear. It prohibited a transfer from any Charles Gitto account other than his IRA. Citigroup knew that the Order applied to the personal account from which Charles Gitto was allowed to withdraw funds. While Citigroup seeks to minimize its decision to permit Charles Gitto to transfer funds as a reasonable "mistake," that is not an excuse. The facts show that Citigroup was grossly incompetent in its handling of the Order and Charles Gitto's request for payment. To accept Citigroup's explanation as a valid excuse would create an enormous loophole that would destroy the effectiveness of reach and apply orders.

## The Applicable Legal Standard

Citigroup is correct that for it to be held in civil contempt, the Order must have clearly and unambiguously informed Citigroup precisely what was forbidden under the Order. Proof of a violation must be clear and convincing. *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 17 (1st Cir. 1991); *Hoult v. Hoult*, 2003 U.S. Dist. LEXIS 5017, *16 (D. Mass. March 13, 2003).

"[G]ood faith, or the absence of willfulness, does not relieve a party from civil contempt in the face of a clear order." *Star Financial Services, Inc. v. Aastar Mortgage Corp.*, 89 F.3d 5, 14 (1st Cir. 1996); *Goya Foods, Inc. v. Wallack Management Co.*, 290 F.3d 63, 75 (1st Cir. 2002).

A finding of contempt may be averted through diligent effort to comply where the diligent effort resulted in substantial compliance with the order. *Accusoft Corp. v. Palo*, 237 F.3d 31, 47 (1st Cir. 2001); *Cipes v. Mikasa, Inc.*, 404 F. Supp. 2d 367, 372 (D. Mass. 2005).

## The Order is Clear on its Face

Citigroup's claim that the Order lacks facial clarity cannot withstand analysis. In considering this argument, "[t]he test is whether the putative contemnor, 'is able to ascertain from the four corners of the Order precisely what acts are forbidden.'" *Goya*, 290 F.3d at 76. The Order meets this test.

The relevant paragraph of the Order provides:

3.      Mr. Gitto agrees that he will not expend any funds or assets, other than funds presently in the IRA Account, without written permission of LaSalle or further order of the court. The Preliminary Injunction Preserving the Status Quo, as amended by, among other amendments … [listing amendments] is hereby modified such that Charles N. Gitto, Jr. and any of his agents, servants, employees, attorneys, beneficiaries and all persons in active concert or participating with him who receive actual notice of this Order, by personal service or otherwise, are restrained from assigning, alienating, selling, transferring, pleading, encumbering, concealing, hypothecating or disposing of any of his assets, other than funds presently held in Individual Retirement Account (No.

396-76629) maintained with Legg Mason Wood Walker, Inc., or its affiliates, and interest and investment returns earned from funds in that account, pending further order of this Court.

Citigroup complains that the Order lacks clarity because there is "no reference to the Personal Account whatsoever" in the Order. (Citigroup Memo., p. 14) The Order leaves no doubt that it prohibits any transfer from any of Charles Gitto's accounts "other than funds presently held in Individual Retirement Account (No. 396-76629) maintained with Legg Mason ..." The predicate for the prohibition recited in the Order is that Charles Gitto had agreed "he will not expend any funds or assets, other than funds presently in the IRA account, without written permission of LaSalle or further order of the court." Charles Gitto's Personal Account is surely not his IRA account. Transfer from any account of Charles Gitto other than the specified IRA account is clearly prohibited.

Most importantly, Mr. DeNicola, the Citigroup representative who handled Charles Gitto's accounts and received the copy of the Order, does not state in his Affidavit submitted by Citigroup with its Opposition that he did not understand the Order when he received it or that he received any legal advice from Citigroup's counsel that caused him to be confused about what the Order prohibited.

## Citigroup Did Not Act with Appropriate Diligence

On December 31, 2004, LaSalle filed an Amended Complaint, adding Citigroup as a trustee process and reach-and-apply defendant. (Docket No. 164) On January 28, 2005, LaSalle filed a Motion for Equitable Attachments in the Form of Reach-and-Apply Injunctions regarding the interests of Charles Gitto at Citigroup. (Docket No. 182) On February 25, 2005, an Order Approving Equitable Attachments in the Form of Reach-and-Apply Injunctions was entered. The Order provided, in part, that Citigroup was enjoined from selling, transferring, etc. any

money, property, interests or payments belonging to Charles Gitto. (Docket No. 206) Citigroup knew about this Injunction because associate general counsel stated in the letter to LaSalle's counsel on March 16, 2005 that "the assets in the above-referenced accounts, which consist of securities, will remain in a frozen status until we receive further written instructions from the Court." (Exhibit D to Motion)

Citigroup received a copy of the Order shortly after it was entered. The individual responsible for Charles Gitto's accounts received it and does not claim in his Affidavit that he did not understand what it required. (DeNicola Aff. ¶ 3) Citigroup is a sophisticated financial firm and certainly should have had reasonable measures in place to ensure its compliance with the Order. Due diligence required that some notation or record of the terms of the Order have been made. Neither one of Citigroup's two affiants, however, explains what was done with Citigroup's copy of the Order or what measures Citigroup took internally to record that Charles Gitto could only make withdrawals from his IRA account. It can only be presumed from such silence that either such a record was not made and kept or Ms. Ketchum never checked the records she should have.

In December, 2006, Charles Gitto, who Citigroup knew was being charged by LaSalle with fraud, gave Citigroup a letter requesting payment based upon an order for living expenses that was more than 18 months old. Citigroup was asked to believe that Charles Gitto had forgone any authorized reimbursement for living expenses and was by the letter asking for substantial back payments.

Mr. DeNicola received Charles Gitto's payment request letter. (DeNicola Aff., ¶ 7; Ketchum Aff., ¶ 15) No claim is made that Mr. DeNicola did not remember that Charles Gitto

was prohibited from making any transfers from his personal account. Consistent with the Order, there had not been a single transfer from Charles Gitto's personal account during that time period. Presumably, not many of Mr. DeNicola's clients have had their accounts impounded pending litigation over fraud charges. The fact that there had not been a single transfer from the account for over a year should have been a strong indication that the "court order you have on file" would have to have been entered recently because it was altering what had been a long accepted freeze on Charles Gitto's personal account.

Any reasonable person in Mr. DeNicola's position would have asked Charles Gitto for a copy of the order to which he was referring. Instead, Mr. DeNicola forwarded the payment request letter to a Citigroup's First Vice President and attorney, Stehanie Ketchum. **THAT VERY SAME MORNING**[1], Ms. Ketchum with incredible efficiency "attempted to locate the court order Mr. Gitto referred to in his letter authorizing the release of funds, and identified the Ninth Stipulation as the applicable order." (Ketchum Aff., ¶ 16) Ms. Ketchum at the same time also "reviewed the monthly statements to confirm that he has not taken the $9,000 withdrawals since his last one in November, 2005." (Ketchum Aff., Ex. D)

Ms. Ketchum does not provide any details as what she did to locate the Ninth Supplement to Preliminary Injunction entered June 1, 2005 she relied upon, where she located a copy of that order, why she overlooked or could not find the Order, or what she did to determine that the 18-month order she was going to rely upon was still in effect. Most certainly, Ms. Ketchum's attention should have focused on the period around November, 2005 when Charles Gitto made

---

[1] Mr. Gitto's letter was received on December 21, 2006. (Ketchum Aff., ¶ 15) At 10:01 a.m. on December 21, 2006 Ms. Ketchum sent an e-mail authorizing the requested release of funds. (Ketchum Aff., Ex. D)

his last withdrawal. As Citigroup concedes, "a more careful review could have prevented the release of funds." (Citigroup Mem., p. 3)

The principle applicable here is "[w]hen a legitimate question exists as to the scope or effectiveness of a court's order, those who know of the decree, yet act unilaterally, assume the risk of mistaken judgment." *Goya*, 290 F.3d at 75. As the court noted in *Goya*, when someone makes such a unilateral assumption, they are deemed to have "acted at their peril." 290 F3d at 76.

Citigroup also seeks a free pass for its incompetency by arguing that "fairness requires that its limited interest in the litigation allow it to also maintain a limited level of involvement in the case, while still satisfying its obligations as trustee." Citigroup concludes "it should be able to receive clear directives and limit its involvement to following those directives." (Citigroup Memo., p. 9) But, Citigroup did receive a clear directive in the Order—Charles Gitto was to have access to only his IRA account.

Citigroup's status as a bystander to the underlying claims in the case does not relieve it of its obligation to obey the Order. Citigroup's status as a trustee for Charles Gitto was superseded by the Order. Its primary obligation was to preserve the funds in Charles Gitto's personal account so that they would be available to satisfy any judgment LaSalle obtained against Charles Gitto. By making a unilateral assumption of the applicability of the Ninth Supplement Preliminary Injunction, Citigroup acted at its peril and now must suffer the consequences.

**Conclusion**

Citigroup must be held responsible for violating a clear and unambiguous Order that could not have left any doubt in Citigroup's mind as to the behavior that was expected. The

release of funds by Citigroup was not inadvertent, but grossly negligent. Such negligent conduct calls for a fair punishment, and civil contempt is warranted under those circumstances. The sanction for such contempt should be the replenishment of Charles Gitto's personal account with the total amount Citigroup allowed him to withdraw, plus interest. In addition, LaSalle should be awarded its reasonable attorney's fees for having to pursue this Contempt Motion.

Dated: November 21, 2007

Respectfully submitted,

LASALLE BUSINESS CREDIT LLC

By: /s/ Joseph J. Koltun
One of its attorneys

Christopher J. Panos (BBO No. 555273)
Kathleen A. Rahbany (BBO No. 654322)
Joseph J. Koltun (BBO No. 641117)
Craig and Macauley Professional Corporation
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
Phone: (617) 367-9500
Fax: (617) 742-1788

Eric S. Rein
John L. Conlon
Bethany N. Schols
Schwartz Cooper Chartered
180 N. LaSalle Street, Suite 2700
Chicago, IL 60601
Phone: (312) 346-1300
Fax: (312) 782-8416

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing documents was filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 21, 2007

/s/ Joseph J. Koltun
Joseph J. Koltun